FILED

UNITED STATES DISTRICT COURT   2003 NOV -5  A 11: 58
DISTRICT OF CONNECTICUT   US DISTRICT COURT
BRIDGEPORT CT

|  |  |  |
|---|---|---|
| KEITH BARILE | : | |
| | : | PRISONER CASE NO. |
| v. | : | 3:00-cv-2253(JCH)(HBF) |
| | : | |
| C/O DRUMMOND, et al.[1] | : | NOVEMBER 4, 2003 |

## RULING ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT [Dkt. No. 64]

The plaintiff, Keith Barile ("Barile"), is an inmate currently confined at the

MacDougall Correctional Institution in Suffield, Connecticut. He filed this civil rights

action pro se pursuant to 28 U.S.C. § 1915. Barile alleges that defendant Drummond

failed to protect him from assault by another inmate when he was confined at the Hartford

Correctional Center and that all defendants failed to ensure that he received proper medical

attention for a broken arm suffered in the assault. Pending is the defendants' motion for

summary judgment. For the reasons that follow, the defendants' motion is granted in part

and denied in part.

## I.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish

that there are no genuine issues of material fact in dispute and that it is entitled to judgment

---

[1]   The named defendants are Correctional Officer Drummond; Correctional Officer
Channer; Nurse Jennifer Johnson, now known as Jennifer Benjamin-Gavin; Nurse Robin; Nurse
Tony; Lieutenant Olszta, incorrectly named as Lieutenant Olzata; Lieutenant Coutant, incorrectly
named as Lieutenant Coutan; and Counselor Kurtz. All defendants are named in their individual
capacities only.

as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986); White v. ABCO Eng'. Corp., 221 F.3d 293, 300 (2d Cir. 2000). A

court must grant summary judgment "'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact. . . .'" Weinstock v. Columbia Univ., 224 F.3d 33, 41

(2d Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). A dispute regarding a material fact is

genuine if "'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" Konikoff v. Prudential Ins. Co., 234 F.3d 92, 97 (2d Cir. 2000)

(quoting Anderson, 477 U.S. at 248).

     The court "must first resolve all ambiguities and draw all inferences in favor of the

non-moving party, and then determine whether a rational jury could find for that party."

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "If reasonable minds could

differ as to the import of the evidence, . . . and [i]f . . . there is any evidence in the record

from any source from which a reasonable inference in the [nonmoving party's] favor may be

drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd.

v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation marks and citation omitted).

In addition, where one party is proceeding pro se, the "court[] must construe pro se

pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'"

Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)(quoting Graham v. Henderson, 89 F.3d

75, 79 (2d Cir. 1996)).

"At the same time, the non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor. . . ." Graham, 230 F.3d at 38.  Even a pro se party may not create a genuine issue of material fact by presenting unsupported statements, conjecture or "sweeping allegations." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997).  The non-moving party "cannot defeat a motion for summary judgment by relying on the allegations in his pleading, or conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted); see also Fed. R. Civ. P. 56(e) (a non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleading").  Accord Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") (citations omitted).  Thus, when a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present evidence to demonstrate the existence of a genuine issue of material fact.  See Bayway Ref. Co. v. Oxygenated Mktg. & Trading, A.G., 215 F.3d 219, 224 (2d Cir. 2000).

## II.    Facts[2]

The incidents giving rise to this action occurred in March 1999, while Barile was confined at the Hartford Correctional Center.  During the morning of Saturday, March 13, 1999, defendant Correctional Officer Drummond was called to the cell of inmate George Streeter ("Streeter").  Streeter told defendant Drummond that the toilet in his cell overflowed when the toilet in the next cell was flushed.  The next cell was occupied by Barile.  Prior to March 13, 1999, Barile was not acquainted with Streeter and did not even know his name.  Barile had never been involved in an altercation with any inmate prior to March 13, 1999.

Defendant Drummond completed a work request form to have both toilets checked and notified the shift commander of the problem.  Streeter sought permission to get cleaning materials and clean his cell.  Streeter appeared agitated because various possessions on the floor of his cell had gotten wet when the toilet overflowed.  Defendant Drummond permitted Streeter to leave his cell to get cleaning materials.  Defendant Drummond observed Streeter speaking to Barile through Barile's cell door at this time.

---

[2]    The facts are taken from defendants' Local Rule 9(c)1 Statement of Material Facts Not in Dispute [Dkt. No. 65] and Corrected Local Rule 9(c)1 Statement of Material Facts Not in Dispute [Dkt. No. 74] supported by the affidavits of Barry Drummond [Dkt. No. 67], Kenneth Olszta [Dkt. No. 68], Counselor Fred Kurtz [Dkt. No. 69], Ossie R. Channer [Dkt. No. 70], Christopher Coutant [Dkt. No. 71] and Jennifer Benjamin-Gavin [Dkt. No. 72] and plaintiff's deposition testimony [Dkt. No. 73] as well as plaintiff's Local Rule 56(c)2 Statement [Dkt. No. 82] and plaintiff's affidavit [Dkt. No. 84].

While Streeter was cleaning his cell, Barile summoned defendant Drummond, informed him that the toilet in Barile's cell also had overflowed and asked to be released from his cell to obtain cleaning supplies and clean the cell. Barile did not tell defendant Drummond that Streeter had threatened him at the cell door, or that he feared for his safety. Defendant Drummond did not release Barile to clean the cell until after Streeter finished cleaning and had been secured in his cell. Barile states that defendant Drummond refused to release him from his cell while Streeter also was out because he feared for Barile's safety. Defendant Drummond states only that unit rules provided that only one inmate may be out of his cell at a time.

The unit log book, submitted by the defendants, indicates that defendant Olszta and Correctional Officer Richardson toured the unit between the time of the toilet overflow and the assault. The log book does not reflect that Barile reported any concerns for his safety to defendant Olszta, Correctional Officer Richardson, or to defendant Coutant who was on duty during this period. Barile does not identify any issue of material fact regarding the lack of knowledge of defendant Olszta or Coutant. Barile agrees that he did not tell any correctional official that he was in danger from Streeter and admitted in his deposition that he did not feel threatened or believe he was in any danger. See Pl.'s Local Rule 56(c)(2) Statement [Dkt. No. 83]. In addition, Barile had no conflicts with any of the correctional officers or supervisory staff and had no reason to think that any correctional official bore

him ill will.

At approximately noon, the inmates were released from their cells to go to the dayroom to eat lunch. Barile believed that Streeter had calmed down and was not concerned for his safety when he went to the dayroom. Defendant Drummond secured the door to the dayroom after all inmates had entered and left to tour the unit. When he returned at 12:02 p.m., defendant Drummond observed Barile getting off the floor. Defendant Drummond did not observe any contact between Barile and another inmate. When defendant Drummond asked Barile what had happened, Barile responded, "You know what happened." Barile also told defendant Drummond that he was "not going to start any trouble up here." Barile contends that other inmates reported to him that defendant Drummond was aware that Streeter intended to assault Barile and that he sanctioned the attack by telling Streeter that he had no control over anything that happened when he was away from the area. Defendant Drummond denies these allegations.

Barile was sent to the lieutenant's office. The parties disagree whether Barile received medical attention before or after he was interviewed by defendants Olszta and Coutant. During the interview, defendant Olszta told Barile that the inmate who assaulted him could not be charged with the attack unless Barile identified him. Barile indicated that he knew the identify of the inmate but refused to identify him to defendant Olszta. After interviewing Barile, defendant Olszta spoke with defendant Drummond who said he

suspected that Streeter had assaulted Barile. Outside charges were not pursued because there were no witnesses and Barile refused to identify his attacker. Streeter was issued a disciplinary report, however, as a result of defendant Olszta's investigation. After the assault, Barile was transferred to another housing unit.

At 12:22 p.m., Barile reported to the medical unit for treatment. The medical incident report completed by defendant Johnson reveals that Barile's left arm was swollen and, although he could move his arm, Barile complained of pain, at a level of 8 out of 10, when the area was palpated. There was no bleeding or protruding bone. Defendant Johnson beeped the on-call physician and described Barile's condition to him. As instructed, defendant Johnson applied ice to the arm for fifteen minutes, wrapped the arm in an ace bandage and placed it in a sling. She gave Barile a 600 mg Motrin tablet and informed him that he was scheduled for an x-ray on Monday, March 15, 1999. Before sending Barile back to the lieutenant's office, defendant Johnson told him to sign up for sick call if he needed further medical attention.

Barile was not called for the x-ray on March 15, 1999. Defendant Channer was assigned to Barile's housing unit on March 15 and 16, 1999. Barile states that defendant Channer twice refused his requests to be sent to the medical unit because he was experiencing severe pain. Defendant Channer denies that Barile made any requests. Defendant Counselor Kurtz toured Barile's housing unit on March 15 and 17, 1999. Barile

7

states that defendant Kurtz also ignored his requests to be sent to the medical unit and told

him to sign up for sick call.  Defendant Kurtz denies that Barile requested medical attention

and indicates that he has no authority to send any inmate to the medical unit.

On March 18, 1999, Barile was sent to the medical unit where his arm was x-rayed

and placed in a cast.

## III. Discussion

The defendants assert six grounds in support of their motion for summary judgment:

(1) Barile's failure-to-protect claim is deficient because he cannot satisfy the subjective

prong of the deliberate indifference standard; (2) supervisory defendants Coutant and

Olszta lacked knowledge of the potential threat and/or were not personally involved in the

incident; (3) Barile fails to demonstrate the personal involvement of defendants Johnson,

Kurtz, Olszta and Coutant in the denial of medical care; (4) Barile's medical claim fails as a

matter of law; (5) the court lacks personal jurisdiction over defendants Nurse Robin and

Nurse Tony; and (6) the defendants are entitled to qualified immunity with regard to the

failure to protect claim.  In the motion for summary judgment, the defendants did not

address the Eighth Amendment claim against defendant Drummond for making Barile carry

all of his property when he was transferred to a different unit on March 13, 1999.  Thus,

this ruling does not consider that claim.

Barile's initial response to the motion failed to comply with court rules. On August 1, 2003, the court issued a notice informing Barile of the rules and the requirements of a proper response to a motion for summary judgment. Barile filed a supplemental response to the motion on September 22, 2003.

### A. Failure to Protect

Barile claims that defendant Drummond sanctioned the assault by Streeter thereby failing to protect him from harm at the hands of other inmates. In addition, Barile contends that defendants Olszta and Coutant failed to investigate the incident properly and discouraged him from pressing charges against Streeter.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "take reasonable measures to guarantee safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This duty includes protecting inmates from harm at the hands of other inmates. See id. at 833; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). Although prison conditions may be harsh, being violently assaulted in prison simply is not "part of the penalty that criminal offenders pay for their offenses against society." Farmer, 511 U.S. at 833. "Having stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Id.

9

Not every assault by a fellow prisoner, however, rises to the level of a constitutional violation. See id. at 834. To establish a constitutional violation, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," id. at 827, and that the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. See Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."). The inmate must demonstrate that the deprivation is "sufficiently serious" under an objective standard, and that the prison official acted with a culpable state of mind. See Farmer, 511 U.S. at 834.

Regarding the objective component of the deliberate indifference test, courts have held that an inmate attacked by another inmate satisfies the test. See, e.g., Knowles v. New York City Dep't of Corrections, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (holding that inmate assaulted by a fellow inmate using a sharp object to cut the plaintiff's face and who subsequently received sixty stitches, easily met the objective requirement of the Eighth

Amendment).

Here, Barile was attacked by Streeter and suffered a broken arm and abrasions. The defendants do not argue that Barile fails to satisfy the objective component of the deliberate indifference test. Thus, for the purposes of deciding this motion, the court assumes that Barile was confined under conditions posing a substantial risk of serious harm.

The controversy here rests with the subjective prong of the deliberate indifference test. The defendants base their argument on the fact that courts routinely deny failure to protect claims based on a surprise attack or the simple fact that two inmates engaged in an argument. See e.g., Zimmerman v. Macomber, No. 95 CIV 882(DAB), 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001)(citing cases). The defendants argue that Barile failed to complain, even once, that he had been threatened by Streeter or indicate that he feared for his safety. Thus, defendant Drummond could not possibly have been aware of any problem between Barile and Streeter.

Barile states that he was not concerned for his safety because he thought that defendant Drummond had the situation under control and felt safe when defendant Drummond was present. As support for his confidence in defendant Drummond, Barile references the fact that defendant Drummond refused to let him out of his cell at the same time as Streeter, presumably out of concern for his safety. Barile's claim, that instead of protecting him, defendant Drummond sanctioned the assault, is premised on information

from two other inmates. The other inmates told Barile that, following the toilet overflow, defendant Drummond remarked to them that he did not know what he was going to do when all inmates were released for the noon meal. In addition, these inmates overheard defendant Drummond tell Streeter that he did not care what Streeter did as long as he was not present. Drummond denies making either statement. Barile references these statements in his complaint, deposition testimony and affidavit. If these statements are true, Barile could demonstrate that defendant Drummond possessed a culpable state of mind regarding the assault.

Barile has not provided a statement from either inmate in opposition to the defendants' motion for summary judgment. He states at his deposition that Inmates' Legal Assistance Program was unable to locate inmate Crump, who has been discharged from custody. Inmates' Legal Assistance Program sent a letter to inmate Goodwin, but did not receive a response. There is no indication in the record whether there was any follow-up to determine whether the letter was received or any attempt to meet with inmate Goodwin to determine whether he would provide a sworn statement. Because Barile is incarcerated, he is unable to contact inmate Goodwin directly and must rely on Inmates' Legal Assistance Program to contact inmate Goodwin on his behalf. In addition, after the defendants filed their motion for summary judgment, Barile sought court assistance in scheduling depositions of inmates Goodwin and Streeter and former inmate Crump. The court denied

this motion, in part, because *in forma pauperis* status does not encompass deposition expenses and Barile indicated that he lacked funds to pay the associated costs.

The current evidence of record consists of the contradictory affidavits of Barile and defendant Drummond. Barile's affidavit, which is consistent with his deposition testimony, includes detailed statements, but contains hearsay rather than information of which Barile has personal knowledge. The court has granted Barile's motion for appointment of counsel and currently is seeking *pro bono* counsel to represent him at trial. If trial counsel were able to locate any of these inmates, he would be able to obtain admissible evidence regarding the assault. As noted above, the defendants have not addressed in their motion for summary judgment all of the claims asserted against defendant Drummond. Thus, a trial must be held regardless of the disposition of this motion. The court construes Barile's motion seeking to depose the inmates and his contention that the depositions are necessary to oppose the motion for summary judgment as a response pursuant to Rule 56(f), Fed. R. Civ. P. Accordingly, the defendants' motion for summary judgment is denied without prejudice as to the failure to protect claim against defendant Drummond. The defendants may reassert this claim at the pretrial if Barile is then unable to present any admissible evidence regarding defendant Drummond's intent.

Barile also claims that defendants Olszta and Coutant failed to investigate the incident seriously and discouraged him from pressing outside charges against Streeter. The

13

defendants argue that these allegations are insufficient to state a claim against defendants Olszta or Coutant for failing to protect him from harm.

Defendants Olszta and Coutant are supervisory officials. "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

Poe, 282 F.3d at 140. Barile neither alleges nor provides any evidence to show that defendants Olszta and Coutant were present during the toilet overflow incident or that he made either of them aware of the incident before the assault. Thus, there is no factual basis for a claim that defendants Olszta or Coutant failed to protect Barile from the assault.

Once they learned of the assault, defendant Olszta conducted an investigation. Barile stated at his deposition that he did not know Streeter's name when he was interviewed. When Barile could not identify his assailant, defendant Olszta investigated further,

14

determined that Streeter had attacked Barile and charged Streeter with a disciplinary infraction. Barile has presented no facts suggesting that this investigation was deficient.

Barile also argues that defendants Olszta and Coutant improperly discouraged him from pressing outside charges against Streeter. At his deposition, Barile stated that defendant Olszta conducted the interview and defendant Coutant was standing behind defendant Olszta. When defendant Olszta asked Barile whether he wanted to press charges, defendant Coutant shook his head. Barile inferred that defendant Coutant was telling him not to press charges and responded negatively. He admitted, however, that no one told him not to press charges or refused to press charges after Barile indicated that he wanted to do so. Barile's inference that he should not press charges is insufficient to demonstrate any violation of any constitutionally protected rights.

The court concludes that Barile fails to meet his burden of demonstrating a genuine issue of material fact regarding his claims that defendants Olszta and Coutant failed to protect him from assault by Streeter or failed to properly investigate the incident once it was brought to their attention. The defendants' motion for summary judgment is granted as to these claims against these defendants.

**B.  Denial of Medical Care**

Barile claims that defendant Johnson provided inadequate medical care and that defendants Channer, Kurtz, Nurse Tony and Nurse Robin were deliberately indifferent to

15

his serious medical needs when they failed to send him to the medical unit or provide medication for his severe pain. The defendants contend that defendant Johnson was not deliberately indifferent to a serious medical need and that defendants Olszta, Coutant and Kurtz were not personally involved in the denial of medical care. They argue that Barile's claim against defendant Channer "belie[s] common sense and def[ies] credulity." The defendants do not address the merits of this claim as to defendants Nurse Tony or Nurse Robin.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need. Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A treating physician will be liable under the

16

Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).   Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).   Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir. 1992).

As discussed above, there are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

17

Not all medical conditions, however, satisfy this component of the standard.  See, e.g., Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) (symptoms including nausea, shakes, headache and depressed appetite); Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Sonds v. St. Barnabas Hosp. Correctional Health Servs., 151 F. Supp. 2d 308, 311 (S.D.N.Y. 2001) ("cut finger, even where skin is 'ripped off,'. . . does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief"); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot condition involving a fracture fragment, bone cyst and degenerative arthritis).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer, 511 U.S. at 837).

The defendants assume for purposes of their argument that Barile's medical condition satisfied the objective component of the deliberate indifference standard.  Thus, the court makes this same assumption for purposes of this decision only.

18

Barile's claims against defendant Johnson concern his treatment on March 13, 1999. Barile neither presents evidence nor alleges that defendant Johnson treated or spoke with him after that date. Barile was seen by defendant Johnson in the medical unit at 12:22 p.m., twenty minutes after defendant Drummond observed Barile getting up off the dayroom floor. Defendant Johnson beeped the on-call physician and described Barile's condition. The physician provided instructions and directed defendant Johnson to schedule Barile for an x-ray on Monday, March 15, 1999. Barile agrees that defendant Johnson applied ice to his arm, wrapped it in an ace bandage, provided a sling, and gave him a 600 mg Motrin tablet. Defendant Johnson also observed that Barile's arm was painful and swollen, but that he could move it. Before sending Barile back to the lieutenant's office, defendant Johnson told him about the scheduled x-ray and advised him to sign up for sick call if he needed further medical attention. Barile does not allege that defendant Johnson treated or refused to treat him on any other day.

The actions taken by defendant Johnson appear reasonable. She contacted the on-call physician and followed his orders. Barile alleges in his complaint that his arm should have been x-rayed immediately. Defendant Johnson states, and Barile provides no evidence to refute, that she lacked authority to order an x-ray or any other emergency treatment. The decision not to send Barile to a hospital for emergency treatment was made by the on-call physician, who was not named as a defendant in this case. Thus, Barile fails to produce any

19

evidence in opposition to the motion for summary judgment to demonstrate a genuine issue of material fact regarding his claim that defendant Johnson was deliberately indifferent to a serious medical need.

Barile argues that it was defendant Johnson's responsibility to ensure that the x-rays were taken. He states in opposition to the motion for summary judgment that defendant Johnson noted the x-ray order on the medical incident report but failed to do so in his medical records, and concludes that this action was the reason that the x-rays were not taken on March 15, 1999. Barile has provided no evidence concerning the manner in which x-rays were scheduled or whether a recommendation, such as an x-ray, that the treating nurse did not actually perform normally is recorded in the medical file. Thus, there is no support in the record for his assumption that recording the physician's order in the medical incident report but not in Barile's medical file resulted in the x-ray not being scheduled and taken. However, even if the customary practice were to include this information in an inmate's medical file, defendant Johnson's failure to do so could constitute negligence. As indicated above, however, negligence is insufficient to support a section 1983 claim for deliberate indifference to a serious medical need. Thus, the defendants' motion for summary judgment is granted as to the claims against defendant Johnson.

The defendants also argue that defendants Olszta, Coutant and Kurtz were not personally involved in the alleged deliberate indifference to a serious medical need. Barile

20

alleges that, when he was in the lieutenant's office, defendant Olszta indicated that he did

not believe that Barile's arm was broken. Barile appears to allege that defendants Olszta and

Coutant were deliberately indifferent to his serious medical need because they interviewed

him before permitting him to obtain medical treatment. The incident report indicates that

the assault occurred at approximately 12:02 p.m. The medical incident report states that

Barile was at the medical unit at 12:22 p.m., treated and returned to the lieutenant's office.

Despite the fact that defendant Olszta did not believe that Barile's arm was broken, he

ensured that Barile received medical treatment within twenty minutes. Considering that

Barile had to walk from the dayroom to the lieutenant's office and then to the medical unit,

a twenty-minute period from the incident to the time of treatment does not shock the

conscience. Thus, the court concludes that this brief delay in receiving medical treatment

fails to rise to the level of an Eighth Amendment violation. The defendants' motion for

summary judgment is granted as to the deliberate indifference to a serious medical need

claim against defendants Olszta and Coutant.

Barile alleges that, on March 17, 1999, he asked defendant Kurtz to call the medical

department or immediately escort him to the medical unit. Defendant Kurtz did not

believe that Barile's pain was a medical emergency and told him to sign up for sick call.

Barile contends that this demonstrates deliberate indifference to his serious medical need.

The defendants argue that defendant Kurtz had no authority to summon medical assistance

or order that Barile be taken immediately to the medical unit. That responsibility rests solely with the correctional officer in charge of the unit.

Even assuming that Barile could prove his allegations against defendant Kurtz, the allegations do not rise to the level of an Eighth Amendment violation. Barile alleges that defendant Kurtz did not believe that he suffered from pain to the extent alleged. Thus, Barile fails to allege facts to satisfy the subjective prong of the deliberate indifference test. Accordingly, the defendants' motion for summary judgment is granted as to the claim against defendant Kurtz.

Finally, Barile alleges that he asked defendant Channer to send him to the medical department on March 15, 1999, and again on March 16, 1999. Both times, defendant Channer refused. The defendants urge the court to dismiss this claim as frivolous. They argue that Barile's allegations are meritless because Barile failed to allege that he asked any other correctional officer, supervisory official or nurse for medical attention and because the unit log does not contain any reference to Barile's complaints of pain. Contrary to the defendants' characterization of the complaint, Barile alleges that he sought medical treatment once from defendant Kurtz, twice from Nurse Robin and once from Nurse Tony. The nurses took down his name and said that they would check to obtain pain medication. The fact that Barile's affidavit and deposition testimony contradict defendant Channer's affidavit indicates that a credibility determination is required to resolve this issue. The

22

absence of notations in the log book and the fact that Barile may not have sought medical treatment from every available correctional official are factors to be considered in conjunction with the credibility determination. However, because there is an issue of material fact regarding the claim against defendant Channer, the defendants' motion for summary judgment is denied as to this claim.

### C. Personal Jurisdiction

The defendants next argue that the court lacks personal jurisdiction over defendants Nurse Tony and Nurse Robin. They contend that neither defendant was properly served and, thus, have no notice of this action.

A review of the court file reveals that both defendants have returned signed waiver of service of summons forms to the court, Nurse Robin signed her form on February 22, 2001, and Nurse Tony signed his form on March 7, 2001. Thus, both defendants waived service of summons in accordance with court rules and have notice of this action. The defendants' motion for summary judgment is denied as to all claims against defendants Nurse Robin and Nurse Tony.[3]

### D. Qualified Immunity

Finally, the defendants argue that summary judgment should enter in their favor on

---

[3]    The defendants do not address the merits of Barile's claims against Nurse Tony and Nurse Robin in their motion. Thus, these claims remain pending.

23

the failure to protect claims because they are protected by qualified immunity. The only remaining failure to protect claim is asserted against defendant Drummond.

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id. A government official sued in his individual capacity is entitled to qualified immunity if his conduct is prohibited and if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, or if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken. X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999) (internal quotations and citations omitted). The question is "what a reasonable

24

person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted).  In other words, "the unlawfulness must be apparent." Id.

The court has concluded above that Barile must be permitted to present evidence at trial regarding defendant Drummond sanctioning of the assault by his comment to Streeter. If this evidence is presented and credited by the jury, a violation of Barile's constitutional rights would be established.  The right of an inmate to be free from assault by another inmate was clearly established at the time of the incident.  See, e.g., Hayes, 84 F.3d at 620 (holding that prison official possessed requisite culpable intent to satisfy subjective prong of deliberate indifference standard where he knew that an inmate faces a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the harm).  This right certainly encompassed the right to be free from assault by another inmate, orchestrated or sanctioned by correctional staff.  See, e.g., Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002) (deliberate indifference on the part of correctional officers in an Eighth Amendment failure to protect case is "satisfied by something less than acts or omissions for the very purpose of causing harm") (quoting Farmer, 511 U.S. at 835); see also Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002) (material issue of fact shown where plaintiff's witness claimed that defendant guard told plaintiff's attacker to be sure not to get caught because "I don't know if I could cover for

25

you.")  In addition, no reasonable officer would believe that it would be permissible for him to, with a wink and a nod, condone an attack as Barile alleges Drummond did here by telling Streeter that he had no control over what happened when he was away from an area.

The court concludes that, if proven, defendant Drummond's purported conduct would violate Barile's clearly established rights.  Thus, the defendants' motion for summary judgment on the ground that defendant Drummond is protected by qualified immunity is denied .

## IV.    Conclusion

The defendants' Motion for Summary Judgment [**Dkt. No. 64**] is **GRANTED** as to the claims against defendants Olszta, Coutant, Johnson and Kurtz and **DENIED** in all other respects.  This case will proceed to trial on the claims against defendants Drummond, Channer, Nurse Tony and Nurse Robin.

**SO ORDERED.**

Dated in Bridgeport, Connecticut, this 4th day of November, 2003.

Janet C. Hall
United States District Judge