WILLIAM GREGORY, Plaintiff, v. PHS INC., MR. FISH, (DIR. MPCJF), DR. IVENS,(MED. DIR.), STANLEY TAYLOR (COMM. DOC), and WARDEN WILLIAMS (MPCJF), ET AL, Defendants.

Civil Action No. 00-467-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2001 U.S. Dist. LEXIS 15765

September 21, 2001, Decided

DISPOSITION: [*1] Defendants' motions to dismiss (D.I. 13, D.I. 16) granted. Plaintiff's motion for appointment of counsel (D.I. 15) denied.

CASE SUMMARY

PROCEDURAL POSTURE:  In a 42 U.S.C.S. @ 1983 action, pro se plaintiff inmate sued defendants alleging they violated his constitutional rights by (1) failing to properly treat a cut on his elbow caused by the teeth of another inmate, and (2) failing to administer a human immunodeficiency virus test. He

moved for appointment of counsel. The defendants moved to dismiss.

OVERVIEW:  The inmate's wound was washed and steri-strips were applied to close the wound. However, it was not sutured. The inmate alleged he did not receive proper treatment and a human immunodeficiency virus test was not administered. Since he filed a grievance which was not answered, the court refused to grant the defendants' motions to dismiss for failure to exhaust administrative remedies. The inmate's claim against the medical defendant did not rise to a constitutional violation. It was a disagreement about medical treatment and the record did not show that the medical defendant acted with deliberate indifference to a serious medical condition. The inmate's theory of liability against the corporate defendant was premised on the doctrine of respondeat superior since all of the defendants held a supervisory position and were not addressed with particularity in the complaint. Absent a showing of a policy of custom demonstrating deliberate indifference, respondeat superior was not recognized as a theory of liability under 42 U.S.C.S. @ 1983. The remaining three defendants could not be held liable for their actions conducted in their supervisory roles.

OUTCOME:  Plaintiff inmate's motion for appointment of counsel was denied. The defendants' motions to dismiss were granted.

2

CORE TERMS:  grievance, administrative remedies, prison, inmate, prisoner, deliberate indifference, appointment of counsel, affirmative defense, summary judgment, failure to exhaust, custom, medical treatment, prison official, prison authorities, exhaustion requirement, condition precedent, motion to dismiss, nonmoving party, moving party, pro se, supervisory, administer, exhaust, Eighth Amendment, medical care, grievance procedure, exhaustion, secretary, nurse, Prison Litigation Reform Act

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN1] When defendants refer to matters outside the pleadings, their motions to dismiss shall be treated as ones for summary judgment. Fed. R. Civ. P. 12(b)(6).

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN2] A party is entitled to summary judgment only when the court concludes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: Summary Judgment: Burdens of Production & Proof

[HN3] In the context of a motion to dismiss, the moving party bears the burden of proving that no material issue of fact is in dispute. Once the moving party has carried its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN4] In the context of a motion for summary judgment, facts that could alter the outcome are material, and disputes are genuine if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct.

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN5] If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue.

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN6] A court, however, must view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party

opposing the summary judgment motion.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN7] The Prison Litigation Reform Act provides that no action shall be brought with respect to prison conditions under 42 U.S.C.S. @ 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted.  42 U.S.C.S. @ 1997e(a). Before filing a civil action with respect to prison conditions, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. Exhaustion of administrative remedies is required as long as the grievance tribunal has the authority to take some action in response to the inmate's complaint.

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner Rights

[HN8] See 18 U.S.C.S. @ 3626(g)(2).

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN9] Although the United States Supreme Court has specifically mandated

exhaustion prior to commencement of a civil rights action, the Court has been silent on whether the plaintiff must affirmatively demonstrate exhaustion at the time of instituting the action or whether the defendant must raise the issue as an affirmative defense. The Prison Litigation Reform Act itself does not specifically state which party bears the burden.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN10] The Prison Litigation Reform Act's exhaustion requirement is not jurisdictional. Compliance with the administrative remedy scheme will be satisfactory if it is substantial.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Affirmative Defenses

[HN11] A prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense under Fed. R. Civ. P. 8(c), rather than a precondition to suit.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN12] Under the Prison Litigation Reform Act, dismissal for failure to exhaust administrative remedies is inappropriate where prison authorities

completely ignore the prisoner's grievance.

Constitutional Law: Cruel & Unusual Punishment

[HN13] An inmate's assertions of inadequate medical care invoke the Eighth Amendment. Under the Eighth Amendment, the states have a duty to provide adequate medical care to those it is punishing by incarceration. To hold a prison official liable for violating a prisoner-plaintiff's Eighth Amendments rights, the plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. The seriousness of a medical need may be demonstrated by showing that the need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. Moreover, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious.

Constitutional Law: Cruel & Unusual Punishment

[HN14] As to the Eighth Amendment's second requirement, a prison official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if a prison official bars access to a physician capable of

evaluating a prisoner's need for medical treatment. However, a prison official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, the official must know of and disregard an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference. While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the prison official had knowledge of the risk through circumstantial evidence and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN15] Under 42 U.S.C.S. @ 1983, liability under a theory of respondeat superior is not recognized. Thus, a private entity cannot be vicariously liable for its employees' deprivations of other's civil rights. Private corporations dispensing medical services can be held liable, however, for a policy or custom that demonstrates deliberate indifference.

Constitutional Law: Cruel & Unusual Punishment

[HN16] A disagreement over the course of medical treatment does not rise to a constitutional issue. Indeed, courts grant prison authorities a significant amount of latitude in the diagnosis and treatment of prisoners.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally

Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage

[HN17] In the context of a 42 U.S.C.S. @ 1983 action attempting to attribute liability under the doctrine of respondeat superior, a policy is a course of action meant to determine future decisions, while a custom is a course of action customarily repeated.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN18] In the context of a 42 U.S.C.S. @ 1983 action brought by an inmate, supervisors cannot be held liable for actions conducted in their supervisory roles.

Civil Procedure: Counsel

[HN19] A pro se litigant proceeding in forma pauperis in a civil case has no constitutional nor statutory right to representation by counsel. Typically, pro se litigants are afforded counsel, if at all, only after a threshold evaluation of the merits of their case.

COUNSEL: William Gregory, Pro se, Wilmington, Delaware.

Seth J. Reidenberg, Esquire, White and Williams, Wilmington, Delaware, for PHS Inc., Mr. Fish and Dr. Ivens, Defendants.

Ophelia M. Waters, Deputy Attorney General, State of Delaware, Department of Justice, Wilmington, Delaware, for Taylor and Williams, Defendants.

JUDGES: Sue L. Robinson, United States District Judge.

OPINIONBY: Sue L. Robinson

OPINION: MEMORANDUM OPINION

Dated: September 21, 2001

Wilmington, Delaware

ROBINSON, Chief Judge

I. INTRODUCTION

On May 8, 2000, pro se plaintiff William Gregory filed a civil rights action pursuant to 42 U.S.C. @ 1983, asserting that defendants PHS, Inc., Mr. Fish, Dr. Ivens, Stanley Taylor, and Warden Williams n1 violated his constitutional rights by: (1) failing to properly treat a cut on his elbow caused by the teeth of another inmate; and (2) failing to administer an HIV test. (D.I. 2) Plaintiff seeks to hold defendants responsible for any future medical problems, mental anguish he has suffered and to compel them[*2] to administer the "proper blood work." (Id.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 According to plaintiff, PHS, Inc. is the company contracted to provide medical services to inmates, Mr. Fish is the Director of the Multi-Purpose Criminal Justice Facility ("M.P.C.J.F."), Dr. Ivens is Medical Director, Stanley Taylor is the Commissioner of the Department of Correction and Warden Williams is the Warden of M.P.C.J.F. (D.I. 2).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

On December 15, 2000, defendants PHS, Inc., Ivens and Fish ("medical defendants") filed a motion to dismiss plaintiff's complaint, arguing: (1)

plaintiff failed to exhaust his administrative remedies pursuant to 42

U.S.C. @ 1997e(a); (2) his allegations do not rise to a constitutional level;

and (3) plaintiff has failed to demonstrate any personal involvement by

defendants. (D.I. 14) On December 18, 2000, plaintiff filed a motion for the

appointment of counsel. (D.I. 15) Defendants Taylor and Williams ("state

defendants") moved to dismiss on December 27, 2000, asserting: (1) plaintiff did

not exhaust[*3] his administrative remedies: and (2) under Fed. R. Civ. P.

12(b)(6), plaintiff has failed to state a claim upon which relief can be

granted. (D.I. 16) Plaintiff has not filed opposition to either motion. For the

reasons discussed below, medical defendants' motion to dismiss is granted, state

defendants' motion is granted, and plaintiff's motion for appointment of counsel

is denied.

## II. FACTS

   According to plaintiff, while in the yard he was cut on the elbow by the

tooth of another inmate. (D.I.2) He was taken to the medical ward where a nurse

washed the wound and then applied steri-strips to close the cut. Although HIV is

"rampant in the system," plaintiff was not given an HIV test. (Id. at 3) He

further complains of not receiving stitches even though the nurses recommended

them. Plaintiff indicates he filed a grievance pursuant to the prisoner

grievance system, but never received an HIV test and his "cut wasn't treated to

as they promised." (Id. at 2)

III. STANDARD OF REVIEW

[HN1] Since medical and state defendants have referred to matters outside the pleadings, their motions shall be treated as ones for summary judgment. See Fed. R. Civ. P. 12(b)(6); [*4] Camp v. Brennan, 219 F.3d 279, 280 (3d Cir.2000)(consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment).     [HN2] A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).     [HN3] The moving party bears the burden of proving that no material issue of fact is in dispute. See Matsushita Elec. Indus.Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)). "     [HN4] Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

[HN5] If the nonmoving party[*5] fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. See Anderson nonmoving v. Liberty Lobby, Inc. 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).　　[HN6] This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Pacitti v. Macy's, 193 F.3d 766, 772 (3d Cir. 1999).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Medical and state defendants contend plaintiff did not exhaust his administrative remedies prior to filing this action pursuant to the Prison Litigation Reform Act ("PLRA"), [*6] 42 U.S.C. @ 1997e(a), and accordingly, his complaint must be dismissed. (D.I. 14 & 16)　　[HN7] The

Prison Litigation Reform Act provides that

no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as

available are exhausted.

(Amended by Pub.L. 104-134. Title I, @ 101(a), 110 Stat, 1321-71(1996)). Before

filing "a civil action with respect to prison conditions," n2 a plaintiff-inmate

must exhaust his administrative remedies, even if the ultimate relief sought

is not available through the administrative process. Booth v. Churner, 206

F.3d 289, 294-95 (3d Cir. 2000), aff'd, 531 U.S. 956, 121 S. Ct. 1819

(2001). The United States Supreme Court has concluded that exhaustion of

administrative remedies is required "as long as [the] grievance tribunal has the

authority to take some action in response to the inmate's complaint." Booth v.

Churner, 531 U.S. at    , 121 S. Ct. at 1821.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

    n2     [HN8] The term "civil action with respect to prison conditions"

means any civil proceeding arising under Federal law with respect to the

conditions of confinement of the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison. 18 U.S.C. @ 3626 (g)(2).


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -


[*7]    [HN9]


Although the Supreme Court has specifically mandated exhaustion prior to commencement of a civil rights action, the Court has been silent on whether the plaintiff must affirmatively demonstrate exhaustion at the time of instituting the action or whether the defendant must raise the issue as an affirmative defense. The PLRA itself does not specifically state which party bears the burden. Freeman v. Snyder, 2001 U.S. Dist. LEXIS 16634, Civ.A.No. 98-636-GMS, 2001 WL 515258 (D.Del. April 10, 2001).


While other circuits have ruled on this issue, the Third Circuit n3 has not yet articulated whether the PLRA exhaustion requirement is an affirmative defense or a condition precedent to filing. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 842 n.13(E.D. Pa 2000). The Third Circuit has determined,

however, that    [HN10] the PLRA's exhaustion requirement is not jurisdictional.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir.2000). And "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Id. at 77-78.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n3 Specifically, the Sixth Circuit has interpreted the PLRA with a condition precedent, whereby the prisoner must allege and show he has exhausted all administrative remedies prior to bringing suit.  Brown v. Toombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998), cert. denied 525 U.S. 833, 142 L. Ed. 2d 69, 119 S. Ct. 88 (1998). Accordingly, a prisoner must submit, along with his @ 1983 complaint, the administrative decision, if it is available, showing the administrative disposition of his claims or specifically detail the administrative proceeding and its outcome.  Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000), cert denied 531 U.S. 1040, 148 L. Ed. 2d 542, 121 S. Ct. 634 (2000). District courts in the Sixth Circuit are directed to enforce the exhaustion requirement sua sponte if not raised by the defendant. Brown, 139 F.3d at 1104; Curry v. Scott, 249 F.3d 493, 502 (6th Cir. 2001).

   In contrast, the Seventh Circuit has concluded that Section 1997e(a) creates

an affirmative defense. Perez v. Wisconsin Department of Corrections, 182

F.3d 532 (7th Cir. 1999); Massey Helman, 196 F.3d 727 (7th Cir. 1999),

cert. denied 532 U.S. 1065, 150 L. Ed. 2d 208, 121 S. Ct. 2214 (2001).

Following the path created by the Seventh Circuit, other courts have imposed the

affirmative defense on defendants when there is silence in their circuits,

Jackson v. District of Columbia, 89 F. Supp. 2d 48 at 56; Freeman v. Snyder,

2001 WL 515258 at *5 (the court holds that        [HN11] prisoner's failure to

exhaust administrative remedies before filing a claim constitutes an affirmative

defense under Rule 8(c) of the Federal Rules of Civil Procedure, rather

than a precondition to suit.) Compare Ahmed v. Sromovski, 103 F. Supp. 2d

838 (E.D. Pa 2000)(notes that the Third Circuit has not defined whether it is a

defense or a condition precedent, but does not reach the issue). This court

finds the reasoning of the Seventh Circuit persuasive. Moreover, considering the

Third Circuit's conclusion that failure to exhaust does not deprive a federal

court of subject matter jurisdiction, Nyhuis v. Reno, 204 F.3d at 69,

supports the conclusion that exhaustion under @ 1997e(a) is an affirmative

defense. Accord Freeman v. Snyder, 2001 WL 515258 at *5.


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -


[*8]

In Bowers v. Mounet, 2001 U.S. Dist. LEXIS 10362, Civ.A.No. 99-533-JJF, the court was faced with an issue similar to that presented at bar. There, plaintiff claimed to have filed a grievance regarding his medical complaints, but he did not receive anything in response. Id. at *2. Neither plaintiff nor defendants attached plaintiff's grievance nor were any documents submitted regarding the grievance. Nonetheless, the court did not dismiss plaintiff's complaint for failure to exhaust administrative remedies because

it [was] clear from Plaintiff's Original Complaint that Plaintiff filed his grievance on or prior June 21, 1999. (D.I.2) This means that the grievance was filed almost two years before Defendant Marvel refiled the instant motion, and that prison authorities have not responded. Although the relevant grievance procedures have not been included as part of the record in this case, it is safe to assume that such a lengthy delay in handling Plaintiff's grievance exceeded the amount of time allowed for prison authorities to respond under said grievance procedure.

Id. at *2.

Although there is no record evidence of such, the medical defendants at bar

19

concede that plaintiff filed[*9] a grievance. n4 Plaintiff's complaint was filed

on May 8, 2000. Medical defendants moved to dismiss on December 14, 2000 (D.I.

13), and state defendants moved for dismissal on December 27, 2000. (D.I. 16)

There has been nothing introduced to the court subsequently to indicate a

response by medical or prison officials. Considering the grievance procedure

mandates prompt resolution of claims (D.I. 14, Ex. B, A-3 P4; A-4 P10,A-5, A-6),

it is reasonable to conclude that the time afforded to respond has expired.


- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


   n4 According to the affidavit of a Department of Correction secretary,

plaintiff "did not file a medical grievance stating he wanted to make an

appointment with the doctor for additional medical treatment." (D.I.16) This

secretary does not aver to be a grievance officer or to possess any of the

responsibilities of a grievance officer, nor does she claim to have searched for

records for any grievance filed by plaintiff. Although she is a senior

secretary, she does not claim to be charged with logging or maintaining

grievance logs. Further, she is not a member of the medical staff who would see

a grievance after being documented by the grievance chairperson, nor is she a

member of the grievance committee, which should have held a hearing if efforts

to resolve the problem informally failed. Consequently, the affidavit does not

adequately establish that plaintiff failed to follow the grievance procedure.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*10]

Consistent with Bowers, the court shall not dismiss for failure to exhaust

administrative remedies and instead will turn to the substantive issues. Cf.

Chapman v. Brewington-Carr, 2001 U.S. Dist. LEXIS 9047, C.A.No.

97-271-JJF, slip op. at 3-6 (D.Del. May 1, 2001)(court held        [HN12]

dismissal for failure to exhaust inappropriate where prison authorities

completely ignored prisoner's grievance).


B. Eighth Amendment: Medical Care


[HN13] Plaintiff's assertions of inadequate medical care invoke the

Eighth Amendment. Under the Eighth Amendment, the States have a duty to provide

"adequate medical care to those it is punishing by incarceration." West v.

Keve, 571 F.2d 158, 161(3d Cir. 1978). To hold a prison official liable for

violating a prisoner-plaintiff's Eighth Amendments rights, the plaintiff "must

allege acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97,

106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); accord White v. Napoleon, 897

F.2d 103, 109 (3rd Cir. 1987).


The seriousness of a medical need may be demonstrated by showing that the

need is "'one that has been diagnosed by a[*11] physician as requiring treatment

or one that is so obvious that a lay person would easily recognize the necessity

for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro,

834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp.

456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to

suffer a life-long handicap or permanent loss, the medical need is considered

serious." Id.


[HN14] As to the second requirement, a prison official's denial of

an inmate's reasonable requests for medical treatment constitutes deliberate

indifference if such denial subjects the inmate to undue suffering or a threat

of tangible residual injury. See 834 F.2d at 346. Deliberate indifference

may also be present if necessary medical treatment is delayed for non-medical

reasons, or if a prison official bars access to a physician capable of

evaluating a prisoner's need for medical treatment. See id. at 347.

However, a prison official's conduct does not constitute deliberate indifference

unless it is accompanied by the requisite mental state. Specifically, "the

official [must] know...of and disregard...an excessive risk to[*12] inmate

health and safety; the official must be both aware of facts from which the

inference can be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 128 L.

Ed. 2d 811, 114 S. Ct. 1970 (1994). While a plaintiff must allege that the

official was subjectively aware of the requisite risk, he may demonstrate that

the prison official had knowledge of the risk through circumstantial evidence

and "a fact finder may conclude that a prison official knew of a substantial

risk from the very fact that the risk was obvious." Id at 842.

As noted above, it is undisputed that plaintiff was cut by the teeth of

another inmate while in the yard. (D.I. 2) The medical notes reflect the wound

was cleaned and TYLENOL was given for pain. (D.I. 16, Ex. B) Defendant Dr. Ivens

was "contacted". Id. About two hours later, steri-strips were applied and

plaintiff was instructed to "minimize flexing of [his] arm." Id. The following

day, plaintiff was given a Diptherea-Tetanus shot. This is the last entry in the

medical notes related to this injury.


   While plaintiff states a nurse applied the[*13] treatments, he does not name

this individual as a defendant. Instead, the medical notes refer to only one

named defendant-Dr. Ivens. Id. Still, plaintiff does not assert any complaints

about the care provided by Dr. Ivens. The medical notes reflect treatment,

medication and follow-up care were provided. The record is devoid of facts

suggesting defendant Ivens acted with deliberate indifference to a serious

medical condition. The decision of whether to test for HIV is a medical

determination left to the discretion of a physician and not the court.

Accordingly, the court grants defendant Ivens' motion for summary judgment.


C. Respondeat Superior


Turning to the remaining defendants, plaintiff's theory of liability is

premised on the doctrine of respondeat superior since all of the defendants hold

a supervisory position and are not addressed with particularity in the

complaint.     [HN15] Section 1983 actions, however, do not recognize

liability under a theory of respondeat superior. See Durmer v. O'Carroll,

991 F.2d 64, 69 n. 14 (3d Cir. 1993). Thus, a private entity cannot be

vicariously liable for its employees' deprivations of other's civil rights. See

Rouse v. Plantier, 182 F.3d 192, 200 (3d Cir. 1999).[*14] Private

corporations dispensing medical services can be held liable, however, for a

"policy" or "custom" that demonstrates deliberate indifference. Monell v.

Dept. of Social Services of City of New York, 436 U.S. 658, 56 L. Ed. 2d 611, 98

S. Ct. 2018 (1978). In order to hold PHS liable, therefore, plaintiff must show

that PHS has an established "policy" or "custom" that resulted in a deliberate

indifference to plaintiff's serious medical needs. See Lawson v.

Correctional Officer Burns, 1994 U.S. Dist. LEXIS 15107, Civ.A.No. 94-0780,

1994 WL 583264, at *2 (E.D. Pa. Oct. 24, 1994).

The essence of plaintiff's complaint is that his cut was not properly treated and he was not given an HIV test. Assuming it was PHS personnel who made the decision not to provide further treatment and not to administer an HIV test, the question is whether this decision constitutes a "policy" or "custom" that demonstrates a deliberate indifference to serious medical needs. Plaintiff admits that he was examined and received treatment for his cut, although not the treatment he deems most appropriate. The decision not to use stitches, therefore, is not a "policy" or "custom", as those terms are commonly[*15] understood, n5 but merely      [HN16] a disagreement over the course of medical treatment which does not rise to a constitutional issue. Indeed, courts grant prison authorities a significant amount of "latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67. Accordingly, plaintiff's claim against PHS shall be dismissed.


- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


n5      [HN17] A "policy" is a course of action meant to determine future decisions, while a "custom" is a course of action customarily repeated.


- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Turning to defendants Fish, Taylor, and Williams, plaintiff proffers no specific allegations of alleged misconduct. He never mentions them in the body of his complaint. (D.I. 2) Given that each is a supervisor, it is evident he wishes to hold them liable in their supervisory positions. However, [HN18] supervisors cannot be held liable for actions conducted in their supervisory roles.  Polk County v. Dodson, 454 U.S. 312, 325, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993);[*16] Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Therefore, summary judgment for these defendants is appropriate.


D. Motion for Appointment of Counsel


Plaintiff contends appointment of counsel is warranted since the case is complex, he is unskilled in the law and it is likely he will prevail on the merits. (D.I. 15)        [HN19] A pro se litigant proceeding in forma pauperis has no constitutional nor statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981). Typically, pro se litigants are afforded counsel, if at all, only after a threshold evaluation of the merits of their case. See Tabron at 155. In light of the court's finding that summary judgment is appropriate for all defendants, plaintiff's motion for appointment of counsel is denied.

V. CONCLUSION

For the reasons stated, defendants' motions shall be granted. An appropriate order shall issue.

ORDER

At Wilmington this 21st day of September, 2001, consistent with the memorandum opinion issued this date;

IT IS ORDERED that:

1. Defendants' motions to dismiss (D.I. 13, D.I. 16) are granted.

2. Plaintiff's motion[*17] for appointment of counsel (D.I. 15) is denied.

3. The Clerk is directed to enter judgment in favor of defendants and against plaintiff.

Sue L. Robinson

United States District Judge

GUMESINDO D. RIVERA, Plaintiff, v. Mr. JIM HAMLET; et al.,

Defendants.

No. C 03-962 SI (pr)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA

2003 U.S. Dist. LEXIS 21387

November 24, 2003, Decided

November 25, 2003, Filed; November 26, 2003, Entered in

Civil Docket

DISPOSITION: [*1] Defendants' motion to dismiss for failure to exhaust

administrative remedies granted.  Complaint dismissed without prejudice.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate brought a pro se civil rights action pursuant to 42 U.S.C.S. @ 1983 against defendants, alleging excessive force by correctional officers. Defendants moved to dismiss.

OVERVIEW:  The inmate alleged that he was subjected to excessive force following a fight with another prisoner. Defendants claimed that the use of force was justified because the inmate had slashed the other prisoner with a razor blade. The court found that the inmate had failed to fully exhaust administrative remedies. The inmate had filed a grievance, but only against one correctional officer; his appeal of that grievance was rejected as untimely. The fact that the appeal was untimely did not preclude exhaustion for purposes of 42 U.S.C.S. @ 1997e(a) because he had actually filed the appeal and it had been rejected at the highest level available. However, his claims were not exhausted as to all defendants, and @ 1997e(a) required total exhaustion. The court was unable to grant defendants' Fed. R. Civ. P. 12(b)(6) motion because it relied upon acceptance as true of statements made by defendants in a prison rules violation report; the rule allowing the court to look beyond the complaint on a Rule 12(b)(6) motion did not require adoption of such statements, nor could the

court take judicial notice of factual findings in a prison disciplinary hearing.

OUTCOME:  Defendants' motion to dismiss was granted for failure to exhaust administrative remedies, and the inmate's claims were dismissed without prejudice.

CORE TERMS:  inmate, prisoner, prison, administrative remedies, judicial notice, exhaustion, mouth, exhausted, untimely, grievance, weapon, failure to exhaust, motion to dismiss, exhaustion requirement, summary judgment, pro se, exhaust, rule violation, handcuffed, sergeant, grant relief, jurisdictional, unenumerated, unexhausted, abatement, appended, new action, assaulting, forcing, locate

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN1] A prisoner's failure to exhaust administrative remedies before filing a civil rights suit is a matter in abatement. The defendants have the burden of raising and proving the absence of exhaustion. The proper way to

establish nonexhaustion is by an unenumerated Fed. R. Civ. P. 12(b) motion rather than in a motion for summary judgment. This is so because the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement. The summary judgment procedure is a decision on the merits while a dismissal for failure to exhaust is not on the merits. In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. The distinction between summary judgment and dismissal for matters in abatement bears on the district court's authority to resolve factual disputes and thus affects the standard of review to be applied by the court. The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial).

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

[HN2] An "unenumerated" Fed. R. Civ. P. 12(b) motion is not brought under any one of the seven numbered sub-parts of Rule 12(b).

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss

Civil Procedure: Summary Judgment: Summary Judgment Standard

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation
Reform Act

[HN3] Wyatt and Ritza allow a court to resolve factual disputes, but
only with regard to the issue of exhaustion of a prisoner's civil rights claim.
An unenumerated Fed. R. Civ. P. 12(b) motion does not open the door for the
court to make factual determinations about matters not related to the exhaustion
issue. A defendant who wants to make an argument about the merits of a claim
must do so in a motion for summary judgment and comply with the procedures
under Fed. R. Civ. P. 56.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation
Reform Act

[HN4] See 42 U.S.C.S. @ 1997e(a).

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation
Reform Act

Constitutional Law: Civil Rights Enforcement: Prisoners: Welfare

[HN5] The State of California provides its inmates and parolees the
right to appeal administratively any departmental decision, action, condition or
policy perceived by those individuals as adversely affecting their welfare. Cal.
Code Regs. tit. 15, @ 3084.1(a). In order to exhaust available administrative
remedies within this system, a prisoner must proceed through several levels of

appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate

appeal form, (3) second level appeal to the institution head or designee, and

(4) third level appeal to the Director of the California Department of

Corrections. Cal. Code Regs. tit. 15, @ 3084.5.


Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation

Reform Act

   [HN6] Courts have differed over the effect of an appeal rejected as

untimely on the requirement that a prisoner exhaust administrative remedies

prior to filing a civil rights suit. For example, one district court has held

that a prisoner has no "available" administrative remedies when the time limits

for filing a prison grievance has expired, and thus is not required to exhaust

his claims before filing his civil rights action, while another district court

faced with a similar situation dismissed the complaint but indicated the

prisoner could return to federal court if denied leave to file an untimely

prison grievance. The issue was extensively explored in Thomas v. Woolum, a

decision that persuades the United States District Court for the Northern

District of California. Thomas explained why the rejection of an inmate appeal

as untimely satisfied the exhaustion requirement.


Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation

Reform Act

[HN7] The state cannot strip the federal courts of their power to grant relief under 42 U.S.C.S. @ 1983 by failing to grant relief on the merits or by choosing not to grant relief because of procedural deficiencies (such as untimeliness) in an inmate's appeal. The prisoner must actually file the appeal and get rejected as untimely; he cannot anticipate that the process will be futile and bypass it. But once he has filed the appeal and has been rejected at the highest level available, he has done enough to exhaust the administrative remedies, regardless of whether his appeal is granted or denied on the merits or rejected for a procedural reason.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN8] The exhaustion requirement under 42 U.S.C.S. @ 1997e(a) applies to all claims in a complaint; it is not enough to exhaust administrative remedies as to one claim and then use that exhaustion as a jurisdictional hook on which to hang many unexhausted claims in a federal civil rights action. When multiple prison condition claims have been joined, the plain language of @ 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims. The plain language of @ 1997e(a), as well as the legislative intent and policy interests behind it, compel a "total exhaustion" rule. An inmate must exhaust administrative remedies as to all claims against all defendants before filing a federal civil rights action.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

[HN9] A court may consider material other than the complaint itself without converting a Fed. R. Civ. P. 12(b)(6) motion into a summary judgment motion, i.e., the court can consider (1) a document not physically attached to the complaint if the document's authenticity is not contested and plaintiff's complaint necessarily relies on it and (2) the full text of a document where the complaint quotes only part of it. Although the court can look to documents outside the complaint in deciding a Rule 12(b)(6) motion, it can only do so for a limited purpose.

Civil Procedure: Pleading & Practice: Pleadings: Interpretation

[HN10] See Fed. R. Civ. P. 10(c).

Civil Procedure: Pleading & Practice: Pleadings: Interpretation

[HN11] The assumption that Fed. R. Civ. P. 10(c) requires a plaintiff to adopt as true the full contents of any document attached to a complaint or adopted by reference is not a proper reading of the rule. Courts have found that if the appended document reveals facts which foreclose recovery as a matter of law, dismissal is appropriate. An appended document will be read to evidence what it incontestably shows once one assumes that it is what the complaint says

it is (or, in the absence of a descriptive allegation, that it is what it

appears to be). For example, a written contract appended to the complaint will

defeat invocation of the Statute of Frauds, and a document that discloses what

the complaint alleges it concealed will defeat the allegation of concealment. By

the same token, however, a libel plaintiff may attach the writing alleged in the

complaint to be libelous without risk that the court will deem true all libels

in it. Similarly, a receipt for goods, alleged in the pleading to have been

forged, may or may not evidence forgery on its face, but it does not concede

delivery of goods for pleading purposes.


Civil Procedure: Pleading & Practice: Pleadings: Interpretation

   [HN12] Rather than accepting every word in a unilateral writing by a

defendant and attached by a plaintiff to a complaint as true, it is necessary to

consider why a plaintiff attached the documents, who authored the documents, and

the reliability of the documents.


Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure

to State a Cause of Action

   [HN13] The rule that allows a court to look beyond the complaint for

purposes of a Fed. R. Civ. P. 12(b)(6) motion does not require the court to

attribute to a plaintiff everything in a document written by a third party or a

defendant.

Evidence: Procedural Considerations: Judicial Notice

[HN14] A court can judicially notice facts that are not subject to reasonable dispute in that they are generally known within the territorial jurisdiction of the court or they are capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Evidence: Procedural Considerations: Judicial Notice

[HN15] As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it. Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice. If the court cannot take judicial notice of a factual finding in other court cases, it certainly cannot take judicial notice of a factual finding in a less procedurally rigid prison disciplinary hearing.

Evidence: Procedural Considerations: Judicial Notice

[HN16] Assertions in documents filed with a court or in an administrative proceeding are not judicially noticeable just because they are in the file. There is a mistaken notion that taking judicial notice of court records means taking judicial notice of the existence of facts asserted in every

document of a court file, including pleadings and affidavits. The concept of judicial notice requires that the matter which is the proper subject of judicial notice be a fact that is not reasonably subject to dispute. Facts in the judicial record that are subject to dispute, such as allegations in affidavits, declarations, and probation reports, are not the proper subjects of judicial notice even though they are in a court record.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action

Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties

[HN17] Not only does the rule of adoption in connection with a Fed. R. Civ. P. 12(b)(6) motion of an entire document outside the complaint generally not make sense where the plaintiff has not adopted the entirety of a document written by the defendants, it would be particularly unwise to apply it in a pro se prisoner action. Such a use of the rule would be inconsistent with the United States Court of Appeals for the Ninth Circuit's repeated and clear command that pro se pleadings be liberally construed.

COUNSEL: Gumesindo Dominic Rivera, PLAINTIFF, Pro se, Soledad, CA USA.

JUDGES: SUSAN ILLSTON, United States District Judge.

OPINIONBY: SUSAN ILLSTON

OPINION: ORDER OF DISMISSAL

INTRODUCTION

Gumesindo D. Rivera, currently incarcerated at the Correctional Training Facility in Soledad, California, filed a pro se civil rights action under 42 U.S.C. @ 1983. The court reviewed the complaint pursuant to 28 U.S.C. @ 1915A and ordered it served on several defendants. Defendants now move to dismiss the complaint, arguing that plaintiff failed to exhaust administrative remedies, plaintiff cannot state a claim for mental injuries, plaintiff has not shown an Eighth Amendment violation, and defendants are entitled to qualified immunity. The court now dismisses the complaint for failure to exhaust administrative remedies.

BACKGROUND[*2]

Rivera alleges in his complaint that he was subjected to excessive force by correctional officers at the Correctional Training Facility. He alleges that on April 22, 2002, after he fought with another inmate, he was tackled by correctional officer ("C/O") Cook. Rivera alleges that he "did not resist at

all" and was handcuffed by Cook "without any resistance or violent behavior."
Complaint, p. 3. Thereafter, C/Os Vasquez, Esparza and Marquez allegedly applied
unnecessary force to him while he was handcuffed, and correctional sergeant
Parks ordered C/O Cook to force open Rivera's mouth when he would not answer
questions. Cook forced his mouth open with such pressure and pain that Rivera's
mouth bled. Rivera alleges that he was bruised in various places and had
bleeding gums. After he received medical attention, Rivera was placed in a
holding cell for six hours and then put in administrative segregation.

Defendants contend that the use of force occurred when Rivera slashed another
inmate with a razor blade and defendants responded to the incident. Defendants
contend that correctional officer Cook grabbed Rivera and took him down to the
ground, and handcuffed him. Defendants also suggest[*3] that Rivera's mouth was
forced open so they could look for the weapon used by Rivera to slash the other
inmate. They also argue that Rivera's injuries were de minimis and consistent
with Cook subduing him by forcing him to the ground.

DISCUSSION

A. Exhaustion Of Administrative Remedies

1. The Mechanism For Raising Exhaustion Issues

[HN1] A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 124 S. Ct. 50, 157 L. Ed. 2d 23 (2003). In Wyatt v. Terhune, 315 F.3d at 1119, the Ninth Circuit explained that the proper way to establish nonexhaustion was by an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. n1 This was so because the "failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement." Id. The summary judgment procedure is a decision on the merits while a dismissal for failure to exhaust is not on the merits. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, [*4] the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). Ritza explained that "the distinction between summary judgment and dismissal for matters in abatement bears on the district court's authority to resolve factual disputes and thus affects the standard of review to be applied by this court." Id. at 369. The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The motion is called        [HN2] an "unenumerated" Rule 12(b)

motion because it is not brought under any one of the seven numbered sub-parts

of Rule 12(b) of the Federal Rules of Civil Procedure. See Ritza,

infra, 837 F.2d at 369.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[HN3] Wyatt[*5] and Ritza allow this court to resolve

factual disputes, but only with regard to the exhaustion issue. An unenumerated

Rule 12(b) motion does not open the door for the court to make factual

determinations about matters not related to the exhaustion issue. A defendant

who wants to make an argument about the merits of a claim must do so in a motion

for summary judgment and comply with the procedures under Federal Rule of

Civil Procedure 56.

2. Exhaustion

[HN4] "No action shall be brought with respect to prison conditions

under [42 U.S.C. @ 1983], or any other Federal law, by a prisoner confined

42

in any jail, prison, or other correctional facility until such administrative
remedies as are available are exhausted." 42 U.S.C. @ 1997e(a).

[HN5] The State of California provides its inmates and parolees the right to
appeal administratively "any departmental decision, action, condition or policy
perceived by those individuals as adversely affecting their welfare." See Cal.
Code Regs. tit. 15, @ 3084.1(a). In order to exhaust available administrative
remedies within this system, a prisoner must proceed[*6] through several levels
of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602
inmate appeal form, (3) second level appeal to the institution head or designee,
and (4) third level appeal to the Director of the California Department of
Corrections. See id. @ 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237
(S.D. Cal. 1997).


Two separate exhaustion questions must be answered in this case: Does the
rejection of an inmate appeal as untimely satisfy the exhaustion requirement?
Does a grievance that does not identify all defendants satisfy the exhaustion
requirement. The answers are "yes" to the first question and "no" to the second
question.


Rivera's inmate appeal was rejected at the highest level because it was not
timely filed. As a result, this case "turns not on whether exhaustion is
required, the answer to which is well settled, but on what exhaustion

requires." Thomas v. Woolum, 337 F.3d 720, 722 (6th Cir. 2003) (emphasis

in original).    [HN6] Courts have differed over the effect of an appeal

rejected as untimely. For example, one district court has held that a prisoner

had no "available" administrative remedies when the[*7] time limits for filing a

prison grievance had expired, and thus was not required to exhaust his claims

before filing his civil rights action, see Johnson v. True, 125 F. Supp. 2d

186, 189 (W.D. Va. 2000), while another district court faced with a similar

situation dismissed the complaint but indicated the prisoner could return to

federal court if denied leave to file an untimely prison grievance, see

Graham v. Perez, 121 F. Supp. 2d 317, 322 (S.D.N.Y. 2000). There is no

controlling precedent on the effect of a rejection of an inmate appeal as

untimely. The issue was extensively explored in Thomas v. Woolum, 337 F.3d

720, a decision that persuades this court. Thomas explained why the rejection

of an inmate appeal as untimely satisfied the exhaustion requirement.


[The prisoner] had quite literally exhausted his ability to go any further

within the internal prison system. There were no more avenues to travel within

the state prison system. If [the prisoner] had failed to file, the state prison

system would never have had any opportunity to review the claim. However, by

filing, [the prisoner] gave the state an opportunity[*8] to hear the claim and,

by appealing, [the prisoner] gave the state the opportunity to reconsider its

decision. [The prisoner] received the benefit of the potential that the state

would hear his grievance by waiving the procedural guidelines, which the state

could have done if it wanted to avoid federal court. The state received the

benefit of dealing with the case internally if it so desired.

Id. at 727.        [HN7] The state cannot strip the federal courts of

their power to grant relief under @ 1983 by failing to grant relief on the

merits or by choosing not to grant relief because of procedural deficiencies

(such as untimeliness) in the inmate's appeal. See id. at 733. Like the

Thomas court, this court believes the prisoner must actually file the

appeal and get rejected as untimely; he cannot anticipate that the process will

be futile and bypass it. But once he has filed the appeal and has been rejected

at the highest level available, he has done enough to exhaust the administrative

remedies, regardless of whether his appeal is granted or denied on the merits or

rejected for a procedural reason. Rivera reached the termination point of the

administrative[*9] appeal process when his appeal was rejected at the director's

level as untimely. He had satisfied the @ 1997e exhaustion requirement as

to the claim contained in his inmate appeal. That begs the question of what

claim was in the appeal.

   The only defendant mentioned in Rivera's grievance was sergeant Parks.

Although Rivera had received reports in April and May 2002 identifying the other

defendants as participants in the incident, Rivera's grievance mentioned only

sergeant Parks by name. See Childress Decl., Exh. A. He did not give prison

officials a chance to respond to his claim against the four defendants other

than sergeant Parks. His claims against those other defendants are therefore not

exhausted. Rivera has presented a mixed complaint, with a claim against one

defendant exhausted and claims against other defendants not exhausted.


[HN8] The exhaustion requirement applies to all claims in a

complaint; it is not enough to exhaust administrative remedies as to one claim

and then use that exhaustion as a jurisdictional hook on which to hang many

unexhausted claims in a federal civil rights action. "When multiple prison

condition claims have been joined, as in this case, the plain[*10] language of

@ 1997e(a) requires that all available prison grievance remedies must be

exhausted as to all of the claims." Graves v. Norris, 218 F.3d 884, 885

(8th Cir. 2000); Rivera v. Whitman, 161 F. Supp. 2d 337, 340-43 (D.N.J.

2001) (dismissing without prejudice @ 1983 prisoner action containing

exhausted and unexhausted claims because plain language of @ 1997e(a), as

well as the legislative intent and policy interests behind it, compel a "total

exhaustion" rule). But see Johnson v. True, 125 F. Supp. 2d at 188. Rivera

has presented a mixed complaint, containing both exhausted and unexhausted

claims. He failed to, but must, exhaust administrative remedies as to all claims

against all defendants before filing a federal civil rights action. This total

46

exhaustion rule best promotes the purposes of the exhaustion requirement, which include allowing a prison to take responsive action, filtering out frivolous cases, and creating administrative records. See Porter v. Nussle, 534 U.S. 516, 523-25, 152 L. Ed. 2d 12, 122 S. Ct. 983 (2002).

It may well be that Rivera's administrative appeal concerning the other defendants' [*11] actions in the incident will be rejected as untimely. However, Rivera cannot declare the endeavor before he tries it and bypass the administrative appeal process. He must give the prison officials the opportunity to decide whether they want to ignore the untimeliness problem and to reach the merits of the administrative appeal. The complaint will be dismissed without prejudice to Rivera filing a new action after he exhausts his administrative remedies as to all claims against all defendants.

B. Defendants' Rule 12(b)(6) Motion

Defendants' Rule 12(b)(6) motion has a critical flaw concerning the use of documents other than a complaint in a Rule 12(b)(6) motion. This flaw precludes granting the Rule 12(b)(6) motion.

Defendants correctly assert that    [HN9] the court may consider material other than the complaint itself without converting a Rule 12(b)(6)

 motion into a summary judgment motion, i.e., the court can consider (1) a

document not physically attached to the complaint if the document's authenticity

is not contested and plaintiff's complaint necessarily relies on it and (2) the

full text of a document where the complaint quotes only part of it. Motion To

Dismiss,[*12] p. 6. The court parts company with defendants when it comes to the

use the court can make of statements in documents other than the complaint

itself.


    Although the court can look to documents outside the complaint in deciding a

Rule 12(b)(6) motion, it can only do so for a limited purpose. The limits

were explained in another case where defendants tried to use Federal Rule

of Civil Procedure 10(c) --        [HN10] "A copy of any written instrument

which is an exhibit to a pleading is a part thereof for all purposes" -- to

impute to the plaintiff an entire report written by a defendant simply because

the plaintiff's complaint referred to the report.


    [HN11] The defendants assume that Rule 10(c) requires a plaintiff

to adopt as true the full contents of any document attached to a complaint or

adopted by reference. This is not a proper reading of the rule. Courts have

found that "if the appended document . . . reveals facts which foreclose

recovery as a matter of law, dismissal is appropriate," Associated

Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974)

(prospectus attached to complaint alleging bond purchase based on material[*13] misrepresentations). An appended document will be read to evidence what it incontestably shows once one assumes that it is what the complaint says it is (or, in the absence of a descriptive allegation, that it is what it appears to be). For example, a written contract appended to the complaint will defeat invocation of the Statute of Frauds, and a document that discloses what the complaint alleges it concealed will defeat the allegation of concealment. By the same token, however, a libel plaintiff may attach the writing alleged in the complaint to be libelous without risk that the court will deem true all libels in it. Similarly, a receipt for goods, alleged in the pleading to have been forged, may or may not evidence forgery on its face, but it does not concede delivery of goods for pleading purposes.

Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir. 1995).

[HN12] "Rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998)[*14] (declining to apply blanket rule that document attached is adopted in toto "in the case of letters written by the opposition for what could be self-serving purposes").

49

Here, defendants assert that "because plaintiff necessarily relies on the
Rules Violation Report in support of his allegations of the involvement of the
defendants in the April 22, 2002 incident, and of his alleged non-resistive
behavior, the Court may consider defendants' Exhibit B [i.e., the Rules
Violation Report] in ruling on this Motion to Dismiss, without converting it
into a motion for Summary Judgment." Motion To Dismiss, p. 7. They then make
arguments that attribute to Rivera the defendants' statements in the exhibit and
their interpretation of the exhibit. Defendants thus argue that "defendant Cook
needed to use physical force to restrain plaintiff because he was assaulting
another inmate," and defendants' actions in forcing plaintiff's mouth open were
"justified in order to locate the weapon used by the plaintiff in assaulting
inmate Valenzuela." Motion To Dismiss, pp. 10, 11. They also treat the nurse's
report as the exclusive list of the extent and severity of Rivera's physical
injuries. [*15] See id. at 8. Nothing in the complaint evidences any intent by
Rivera to adopt the defendants' statements in the rule violation report or the
inmate appeal responses or the medical report as true or as reflective of his
position. And the documents are not a necessary part of his claim: he could sue
with or without them. The defendants' statements are no more attributable to
Rivera than are Rivera's statements in the same documents attributable to
defendants. That is, defendants doubtless would protest if the court determined
that, by simply directing the court's attention to Exhibit A to the Complaint,

they were deemed to have adopted as true Rivera's statement that while he was "handcuffed on the floor proned out not giving any physical resistance my rights were violated in certain ways." Complaint, Exh. A., p. 1.     [HN13] The rule that allows the court to look beyond the complaint does not require the court to attribute to a plaintiff everything in a document written by a third party or a defendant. But that is exactly what the defendants appear to be trying to do. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n2 The judicial notice process would not cure the defect in defendants' motion.     [HN14] The court can judicially notice facts that are not subject to reasonable dispute in that they are generally known within the territorial jurisdiction of the court or they are capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The court cannot take judicial notice that any facts recited in the rule violation report (including the portions describing the parties' statements during the investigation and at the hearing on the rule violation report) are true.     [HN15] "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." M/V Am. Queen v. San Diego Marine Constr.

Corp., 708 F.2d 1483, 1491 (9th Cir. 1983); see also Wyatt v. Terhune, 315

F.3d at 1114 n.5 ("Factual findings in one case ordinarily are not admissible

for their truth in another case through judicial notice"); Taylor v.

Charter Medical Corp., 162 F.3d 827, 829-31 (5th Cir. 1998) (court could not

take judicial notice of another court's finding that a defendant was a state

actor; the determination was a legal conclusion rather than an adjudicative fact

and in any event was not beyond reasonable dispute). If the court cannot take

judicial notice of a factual finding in other court cases, it certainly cannot

take judicial notice of a factual finding in the less procedurally rigid prison

disciplinary hearing. Additionally,      [HN16] assertions in documents filed

with a court or in an administrative proceeding are not judicially noticeable

just because they are in the file. "There is a mistaken notion that taking

judicial notice of court records . . . means taking judicial notice of the

existence of facts asserted in every document of a court file, including

pleadings and affidavits. The concept of judicial notice requires that the

matter which is the proper subject of judicial notice be a fact that is not

reasonably subject to dispute. Facts in the judicial record that are subject to

dispute, such as allegations in affidavits, declarations, and probation reports,

are not the proper subjects of judicial notice even though they are in a court

record." B. Jefferson, California Evidence Benchbook (3d ed. 2003 update), @

47.10.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*16]

[HN17] Not only does the rule of adoption of the entire document generally not make sense where the plaintiff has not adopted the entirety of a document written by defendants, it would be particularly unwise to apply it in a pro se prisoner action. Such a use of the rule would be inconsistent with the Ninth Circuit's repeated and clear command that pro se pleadings be liberally construed. And such a use of the rule would discourage pro se litigants from attaching anything or referring to any documents in their complaints. The attachment of documents to prisoner complaints often aids in the understanding of the claim as the documents sometimes can put allegations in context when prisoners -- many of whom have little formal education, many of whom have little access to legal materials, and most of whom have no formal legal (let alone pleading) training -- provide only a sketchy description of their problems. Although the court won't cobble together a claim from the exhibits where no claim is actually pled, the exhibits sometimes make the allegations understandable. The court is not eager to impose a technical pleading requirement that would discourage the sometimes helpful practice[*17] of attaching rule violation reports and inmate appeals to pro se prisoner complaints

53

Finally, even if defendants were correct on the law (which they aren't), the exhibits do not say what defendants represent on the mouth-squeezing part of plaintiff's claim. Plaintiff indicates in his complaint and inmate appeal that his mouth was forced open because he would not answer questions. Defendants state in their motion that their actions in forcing plaintiff's mouth open were "justified in order to locate the weapon used by the plaintiff in assaulting inmate Valenzuela" because they "could not have known that plaintiff was not hiding the weapon in his mouth," and "needed to locate the weapon to prevent another inmate from finding it first and causing any additional injuries to other inmates or the prison staff." Motion To Dismiss, pp. 10, 11. The relevant exhibits -- the rule violation report attached as Exhibit A to the Kim Declaration and the inmate appeal attached as Exhibit 1 to the Childress Declaration -- contain no statements by defendants that they squeezed plaintiff's mouth, let alone that they did so to look for weapons. It may be that a weapons search was the reason for[*18] the squeezing of Rivera's mouth, but defendants would need to present that evidence in a declaration and in a summary judgment motion, rather than by an unsupported assertion in a Rule 12(b)(6) motion.

CONCLUSION

Defendants' motion to dismiss is GRANTED for failure to exhaust administrative remedies as to all claims against all defendants before filing this action. (Docket # 12.) This action is dismissed without prejudice to plaintiff filing a new action after he exhausts his administrative remedies as to all claims against all defendants. The clerk shall close the file.

IT IS SO ORDERED.

Dated: November 24, 2003

SUSAN ILLSTON

United States District Judge

JUDGMENT

This action is dismissed without prejudice to plaintiff filing a new action after he exhausts his administrative remedies as to all claims against all defendants.

IT IS SO ORDERED AND ADJUDGED.

Dated: November 24, 2003


SUSAN ILLSTON


United States District Judge

THOMAS CRAWFORD, Plaintiff, -against-OFFICER P. BRAUN

(DOCS); OFFICER J. PRICE (DOCS); OFFICER B. STEVENS (DOCS);

OFFICER W. GLASSER (DOCS); SERGEANT CHARLES BUDAY (DOCS);

SERGEANT SCHALLER (DOCS); SUPERINTENDENT C. ARTUZ (DOCS);

DEPUTY SUPERINTENDENT B. SCHNEIDER (DOCS); COMMISSIONER

GLEN

GOORD (DOCS); NURSE (RN) L. FORGIT (DOCS); XRAY TECHNICIAN,

DUDHLO (DOCS); HEARING OFFICER, CASEY (DOCS); LT. A. PELC

(Officer) (DOCS); Defendants.

99 Civ. 5851 (RMB) (JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2002 U.S. Dist. LEXIS 23318

October 28, 2002, Decided

PRIOR HISTORY:  Crawford v. Braun, 2002 U.S. Dist. LEXIS 22978 (S.D.N.Y.
Sept. 4, 2002)

DISPOSITION: [*1] Magistrate's report adopted in part and remanded for further
report.

CASE SUMMARY

PROCEDURAL POSTURE:  Four of plaintiff's 42 U.S.C.S. @ 1983 claims had
already been dismissed. Defendant prison officials moved for summary judgment

pursuant to Fed. R. Civ. P. 56. A magistrate judge recommended that the motion be denied as to the excessive force claim against six defendants, granted as to the due process claim against a deceased defendant, and granted as to a false accusation claim against a defendant.

OVERVIEW:  Plaintiff and defendants filed objections to the magistrate judge's report and recommendation (report). The magistrate judge's legal and factual determinations were supported by the record and the law in most material respects. As to any portions of the report to which no objections had been made, the report was not clearly erroneous. The report did not address the merits of plaintiff's excessive force, but rather the magistrate judge determined that disputed issues of fact existed as to whether plaintiff had exhausted his administrative remedies, thereby precluding summary judgment. The court rejected the magistrate judge's recommendation that the due process claim be dismissed because plaintiff neither properly filed a motion for substitution, nor did he attempt to move for an extension of time or to replace the decedent with a proper substitute. The issue needed further development. The court concurred with the magistrate judge's recommendation that since plaintiff failed to show that his due process rights were violated, his false accusation claim should be dismissed and defendants' summary judgment motion be granted.

OUTCOME:  A magistrate judge's report and recommendation was adopted in most

material respects. The issues of whether plaintiff exhausted his administrative remedies and whether plaintiff's motion for substitution was properly rejected, and/or whether it was appropriate, and/or helpful to permit substitution was referred back to the magistrate judge.

CORE TERMS:  substitution, summary judgment, excessive force, prison, grievance, recommendation, hearing officer, disciplinary hearing, hearing transcript, inmate, administrative remedies, proper substitute, exhausted, deceased, document entitled, pro se, superintendent, false accusation, razor, Federal Rule, written objection, failure to name, fair hearing, disciplinary, respectfully, incarcerated, falsely, issues of material fact, extension of time, exhaustion

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Magistrates: Pretrial Orders

Civil Procedure: Appeals: Standards of Review: Clearly Erroneous Review

[HN1] A district court evaluating a magistrate judge's report may adopt those portions of the report to which no specific, written objection is made, as long as those sections are not clearly erroneous. Fed. R. Civ. P. 72(b).

Civil Procedure: Magistrates: Pretrial Orders

Civil Procedure: Appeals: Standards of Review: De Novo Review

[HN2] Where a party makes a specific written objection within 10 days after being served with a copy of a magistrate judge's recommended disposition, the district court is required to make a de novo determination regarding those parts of the report.

Civil Procedure: Magistrates: Pretrial Orders

[HN3] A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of a magistrate judge.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN4] The Prison Litigation Reform Act of 1995 (PLRA), as amended, 42 U.S.C.S. @ 1997e(a), provides that no action shall be brought with respect to prison conditions under 42 U.S.C.S. @ 1983 or any other federal law by a prisoner until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN5] In New York, the inmate grievance process generally requires the inmate to: (1) file a grievance with the Inmate Grievance Resolution Committee (IGRC), (2) seek review of the IGRC decision by the facility superintendent, and (3) appeal to the Central Office Review Committee. N.Y. Comp. Codes R. & Regs. tit. 7, @ 701.7.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN6] Exhaustion of remedies by an inmate is a threshold question.

Civil Procedure: Joinder of Claims & Parties: Substitution of Parties

[HN7] See Fed. R. Civ. P. 25(a)(1).

Civil Procedure: Pleading & Practice: Pleadings: Time Limitations

[HN8] Fed. R. Civ. P. 6(b)(2) permits a court upon motion made after the expiration of the specified period, to permit the act to be done where the failure to act was the result of excusable neglect.

Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties

[HN9] A court must extend extra consideration to a pro se plaintiff. Such plaintiffs are to be given special latitude on summary judgment motions.

Civil Procedure: Pleading & Practice: Pleadings: Time Limitations

[HN10] Absent bad faith on the part of the movant or undue prejudice to the other parties to suit, discretionary extensions are to be liberally granted.

Constitutional Law: Procedural Due Process: Scope of Protection

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN11] A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report, since a fair hearing conforming to due process standards will cure a constitutional violation otherwise resulting from a false accusation. A fair hearing should include, among other things, (1) that an inmate be permitted to call witnesses and present evidence, (2) a fair and impartial hearing officer, and (3) that a disciplinary conviction be supported by some evidence.

Constitutional Law: Procedural Due Process: Scope of Protection

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN12] Prison officials must have the necessary discretion to keep a disciplinary hearing within reasonable limits and to refuse to call witnesses. Such discretion includes the refusal of a witness on the basis of irrelevance or lack of necessity. The preclusion of a witness based on the determination that the testimony is immaterial does not constitute a due process violation.

Constitutional Law: Procedural Due Process: Scope of Protection

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN13] In the context of a disciplinary hearing and due process, an inmate may call witnesses on his behalf provided their testimony is material.

Constitutional Law: Procedural Due Process: Scope of Protection

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN14] It is well settled that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally. Rather, due process requires only that the hearing officer not be a hazard of arbitrary decisionmaking.

Constitutional Law: Procedural Due Process: Scope of Protection

Constitutional Law: Civil Rights Enforcement: Prisoners: Discipline

[HN15] The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board and the standard does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence.

COUNSEL: For THOMAS CRAWFORD, plaintiff: Thomas Crawford, Pine City, NY.

For J. PRICE, W. GLASSER, CHARLES BUDAY, SHALER, C. ARTUZ, CASEY,

DELC, G.

SCHNEIDER, defendants: Jonathan D/ Birenbaum, Eliot Spitzer, Attorney General of

the State of N Y, New York, NY.

JUDGES: RICHARD M. BERMAN, U.S.D.J.

OPINIONBY: RICHARD M. BERMAN

OPINION: ORDER

I. Background

   On or about June 4, 1999, plaintiff Thomas Crawford ("Plaintiff"),

incarcerated at Southport Correctional Facility, filed this action ("Complaint")

pursuant to 42 U.S.C. @ 1983, against Officer Paul Braun ("Braun"), Officer

Jonathan Price ("Price"), Officer Barry Stevens ("Stevens"), Officer William

Glasser ("Glasser"), Sergeant Charles Buday ("Buday"), Sergeant Schaller

("Schaller"), Superintendent C. Artuz ("Artuz"), Deputy Superintendent B.

Schneider ("Schneider"), Commissioner Glen Goord ("Goord"), Nurse (RN) L. Forgit

("Forgit"), x-ray technician Dudhlo ("Dudhlo"), Hearing Officer Casey ("Casey"),

and Lt. Pelc ("Lt. Pelc") (collectively "Defendants"). Plaintiff alleged, among

other things, that while he was incarcerated at Green Haven Correctional Facility: [*2] (i) Defendant Braun falsely reported that he was in possession of a weapon, Complaint at IV, Statement of Claim P 1; (ii) Defendants Price, Glasser, Stevens, Buday and Schaller used excessive force against him causing injuries to his right eye and left wrist, id.; and (iii) Defendant Casey violated Plaintiff's due process rights in connection with an April 28, 1999 disciplinary hearing. n1 Id. at P 2.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 All of Plaintiff's claims arise from an incident which occurred on or about April 21, 1999, during which Plaintiff was allegedly searched. "As a result of the search a planted razor was produced" and Plaintiff was allegedly "assaulted by all the Defendants who were present." Complaint at IV, Statement of Claim, P 1.

On March 23, 2001, this Court dismissed Plaintiff's claims of: (i) retaliation and Fourth Amendment violations against all Defendants; (ii) inadequate medical care against Dudhlo and Forgit; and (iii) supervisory liability against Goord, Artuz, Schneider and Pelc. Order of this Court dated March 23, 2001, at 14-15.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*3]

   On or about March 21, 2002, Defendants filed a motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56 ("Defendants' Motion").

Plaintiff filed an opposition to Defendants' Motion on March 27, 2002

("Plaintiff's Opposition"); and Defendants filed a reply on April 22, 2002

("Defendants' Reply"). The Court also received a sur-reply from Plaintiff

entitled "Evidence" on June 3, 2002 ("Plaintiff's Sur-Reply") and a document

entitled "Plaintiff's Opposition-Objection to Defendants Letter to Dismiss" on

June 27, 2002.

   On September 4, 2002, United States Magistrate Judge James C. Francis IV, to

whom the matter had been referred, issued a report and recommendation ("Report")

recommending that Defendants' motion for summary judgment be: (i) "denied as to

the excessive force claim against Officers Braun, Price, Stevens and Glasser,

and Sergeants Buday and Schaller," Report at 23, because "genuine issues of

material fact exist as to whether [Plaintiff] exhausted his excessive force

[administrative remedies]," id. at 12; (ii) "granted as to the due process claim

against Officer Casey," id. at 23, who is deceased, because Plaintiff has "made

no attempt to move for[*4] an extension of time or to replace the decedent with a proper substitute," id. at 14; and (iii) granted as to the false accusation claim against Braun "since the Plaintiff has failed to show that his due process rights were violated at the disciplinary hearing." Id. at 22.

The Report advised that "pursuant to 28 U.S.C. @ 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections" to the Report. Id. at 22. Plaintiff filed objections ("Plaintiff's Objections") to the Report on September 19, 2002. On October 1, 2002, Defendants filed Objections to the Report ("Defendants' Objections"). On October 7, 2002, Plaintiff filed a document entitled "Plaintiff's Objections to Defendants Memorandum of Law," and on October 15, 2002, this Court received from Plaintiff a document entitled "Objection to Defendants Extensions and Summary Judgment." For the reasons stated below, the Court adopts the Report in most material respects and (re)refers two issues to Magistrate Francis for further consideration.

II. Standard of Review

[HN1] A district court evaluating[*5] a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R. Civ. P. 72(b)

; Thomas v. Arn, 474 U.S. 140, 149, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); Greene v. WCI Holdings Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997).    [HN2] "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." Cespedes v. Coughlin, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) (quoting United States v. Raddatz, 447 U.S. 667, 676, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980)). [HN3] A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. See   DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); Walker v. Hood, 679 F. Supp. 372, 374 (S.D.N.Y. 1988).

III. Analysis

   The facts as set forth in the Report are incorporated herein by reference. [*6]

   The Court has conducted a de novo review of the Report, the record, applicable legal authorities, along with both parties Objections and Plaintiff's additional submissions, n2 and concludes that Magistrate Francis' legal and factual determinations are supported by the record and the law in most material

respects. As to any portions of the Report to which no objections have been

made, the Court concludes that the Report is not clearly erroneous. See

Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).


- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -


n2 Additional submissions are not usually appropriate, Alexander v.

Evans, 1993 U.S. Dist. LEXIS 14560, 1993 WL 427409, at *4 (S.D.N.Y. Oct. 15,

1993); Federal Rule 72(b), but the Court considered them here because Plaintiff

is proceeding pro se.



- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -


A. Excessive Force and Exhaustion of Remedies


Plaintiff's Objections state that "there is no need ... to address the issue

of Exhaustion because the evidence is overwhelming that the Grievance was filed

and went before the Central Office Review[*7] Committee." Objections at 1.

Defendants argue that because Plaintiff did not properly appeal the denial of

his grievance with respect to the use of excessive force, see Defendants'

Objections at 6, "defendants' motion for summary judgment should be granted in

70

all respects." Id. at 13.

The Report does not appear to address the merits of Plaintiff's excessive force claim but, rather, concludes that "genuine issues of material fact exist as to whether Mr. Crawford exhausted is excessive force claim." Report at 12.

[HN4] The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, 42 U.S.C. @ 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002). n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3      [HN5] In New York, the process generally requires the inmate to: (i) file a grievance with the Inmate Grievance Resolution Committee ("IGRC"); (ii) seek review of the IGRC decision by the facility superintendent; and (iii) appeal to the Central Office Review Committee ("CORC"). See 7 N.Y.C.RR. @ 701.7; Cruz v. Jordan, 80 F. Supp. 2d 109, 117-18 (S.D.N.Y. 1999).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*8]

   Plaintiff filed a grievance on April 28, 1999, alleging that Braun had

"planted a razor" on him and then assaulted him with the assistance of other

officers. Report at 7; Defendants' Notice of Motion, Ex. B at 1-2. On May 11,

1999, Superintendent Artuz issued a denial of Plaintiff's grievance, which

included a blank space at the bottom where Plaintiff could have indicated that

he was appealing the adverse decision. Id., Ex. C. Plaintiff did not indicate on

the form that he would appeal. Id. He did send a letter, dated June 9, 1999 to

Commissioner Goord, and received a July 21, 1999 response from Commissioner

Lucien LeClaire, Jr. Report at 9-10; Plaintiff's Sur-Reply at 4. The July 21

letter states that "Superintendent Artuz has conducted an investigation into

your allegations of assault and conspiracy ... and reports no evidence was found

to substantiate your claims ... You were found guilty at your Tier III Hearing

... [and] your disposition was affirmed on appeal ... As such, I consider this

matter closed." Plaintiff's Sur-Reply at 4.


   The Court agrees with Magistrate Francis' determination that "the June 9,

1999 letter raises the possibility that the Plaintiff did appeal[*9] to the

Central Office Review Committee," Report at 11, and, therefore, disputed issues

of fact exist which preclude summary judgement. Id. 12. Because        [HN6]

exhaustion is a threshold question, see, e.g.,   Porter, 534 U.S. at 532,

122 S. Ct. at 992, the Court respectfully refers the question of whether

Plaintiff did, in fact, exhaust his administrative remedies to Magistrate

Francis for a hearing on the issue and further report and recommendation.


  B. Failure to Substitute


  Plaintiff states that he "attempted to substitute Defendant Casey ... [who]

violated Due Process," Plaintiff's Objections at 2, but was unclear whom to

substitute. Id. Magistrate Francis recommends that Plaintiff's due process claim

be rejected because Plaintiff neither properly filed a motion for substitution

pursuant to Rule 25(a)(1), nor did he "attempt to move for an extension of time

or to replace the decedent with a proper substitute." n4 Report at 13-14.


  - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


  n4 Plaintiff does not dispute Magistrate Francis' determination that

Plaintiff "brought this action against the defendants in their individual

capacities," and, therefore, "Rule 25(a)(1) applies." Report at 12 n.4; see

Young v. Patrice, 832 F. Supp. 721, 723 (S.D.N.Y. 1993).


- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -


[*10]


  Federal Rule of Civil Procedure 25(a)(1)        [HN7] provides that,

"if a party dies and the claim is not thereby extinguished, the court may order

substitution of the proper parties. The motion for substitution may be made by

any party or ... representatives of the deceased party ... Unless the motion for

substitution is made not later than 90 days after the death is suggested upon

the record by service of a statement of the fact of the death as provided herein

for the service of the motion, the action shall be dismissed as to the deceased

party." Federal Rule 6(b)(2)        [HN8] permits a court "upon motion made

after the expiration of the specified period," to "permit the act to be done

where the failure to act was the result of excusable neglect." See

Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998).


   Plaintiff's due process claim was alleged against (deceased) Defendant Casey

only. Complaint at IV, Statement of Claim, P 2. Defendants filed a Suggestion of

Death Upon the Record on July 18, 2000, Report at 13; Defendants' Notice of

Motion, Ex. I (Suggestion of Death Upon the Record dated July 18, 2000),

"thereby triggering the 90 day time limit of Rule 25." Pastorello v. City

of New York, 2000 U.S. Dist. LEXIS 15137, 2000 WL 1538518, at *2 (S.D.N.Y. Oct.

18, 2000). [*11] As the Report observed, Plaintiff's first motion to substitute

was timely filed on July 25, 2000, but may have been "improperly dismissed ...

as moot," Report at 14, "based on the erroneous conclusion that the plaintiff's

amended complaint, which continued to name Officer Casey as a defendant, was

filed after his motion for substitution." 2000 U.S. Dist. LEXIS 15137,

[WL] at 13; Plaintiff's Motion for Substitution of a Deceased Party filed July

25, 2000. In any case, as Magistrate Francis observes, the motion was flawed in

that it failed to name a substitute for Casey. Report at 14. Plaintiff's second

motion to substitute, dated January 9, 2002, was denied both as untimely by this

Court and for Plaintiff's failure to name a proper substitute. Memo Endorsement

dated February 26, 2002 on February 20, 2002 letter to this Court from Jonathan

D. Birenbaum.

   The denial of Plaintiff's second motion to substitute may, to some degree,

have been premised upon the rejection of Plaintiff's initial motion to

substitute on the basis of mootness. Thus, while it appears that Magistrate

Francis may very well be correct that summary judgment should be granted as to

Plaintiff's due process[*12] claim for failure to name a proper substitute in

accordance with Rule 25(a)(1), Report at 14, and, while upon further examination

of the issue the Magistrate may reach the same conclusion, the Court requests

that Magistrate Francis revisit the issue for a determination as to whether

there was merit to Plaintiff's motion for substitution and/ or whether there is

any (non-futile) rationale to permit Plaintiff to substitute at this time. See,

e.g., Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)

[HN9] "the Court recognizes that it must extend extra consideration to

pro se plaintiffs such as [Plaintiff]; pro se parties are to be given special

latitude on summary judgment motions"); Leber v. Hill, 1987 U.S. Dist.

LEXIS 6072, 1987 WL 14467, at *2 (S.D.N.Y. Jul. 13, 1987)     [HN10]

("absent bad faith on the part of the movant or undue prejudice to the other

parties to suit, discretionary extensions are to be liberally granted").


C. False Accusations


The Report found that "since the plaintiff has failed to show that his due

process rights were violated at the disciplinary hearing, his claim of false

accusation against Officer Braun should also be dismissed." Report at 22.

Plaintiff's[*13] Objections do not provide a basis for departing from the

Report's recommendation that Defendants' Motion for Summary Judgment be granted

on this issue. n5


- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 Plaintiff raises substantially the same arguments in his Objections that were raised in Plaintiff's Opposition.


- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -


[HN11] "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997), since a fair hearing conforming to due process standards "would 'cure' a constitutional violation otherwise resulting from a false accusation." Grillo v. Coughlin, 31 F.3d 53, 56 (2d Cir. 1994). A fair hearing should include, among other things, (i) that an inmate be permitted to call witnesses and present evidence, (ii) a fair and impartial hearing officer, and (iii) that a disciplinary conviction be supported by "some evidence." Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir.1999). Magistrate Francis correctly determined[*14] that Plaintiff cannot establish a due process violation. Report at 18, 21-22.


In fact, Plaintiff was able to call six (6) witnesses at his hearing. See Defendants' Notice of Motion, Ex. E (hearing transcript).    [HN12] "Prison officials must have the necessary discretion to keep the hearing within

reasonable limits and to refuse to call witnesses," Wolff v. McDonnell, 418 U.S. 539, 566, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), and such discretion includes the refusal of a witness on the basis of "irrelevance" or "lack of necessity." Id. Because "Casey acted within his discretion in precluding testimony from Lieutenant Pelc based on his determination that the testimony was immaterial to the charges" against Plaintiff, Report at 17, the preclusion of Pelc as a witness does not constitute a violation of due process. Id. at 18; see Simon v. Selsky, 2002 U.S. Dist. LEXIS 4453, 2002 WL 1205737, at *5 (S.D.N.Y. Mar. 12, 2002)     [HN13] (an "inmate may call witnesses on his behalf provided their testimony is material").

   Plaintiff has made no showing that Casey was biased. Report at 18-20. As the Report found, Casey held the hearing over several days and informed Plaintiff, among other things, [*15] that he had the right to assistance, which Plaintiff rejected. Id. at 19. Casey also provided Plaintiff "the opportunity to call witnesses, ask questions, and speak on his own behalf." Id.; Defendants' Notice of Motion, Ex. E (hearing transcript) at 8, 10, 18, 20, 23-30.     [HN14] It is well settled that "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989). "Rather, due process requires only that the hearing officer not be a hazard of arbitrary decisionmaking." Id. (citation omitted). "Here, a review of the hearing

transcript reveals that Officer Casey acted entirely within the scope of his discretion as a hearing officer in the manner in which he conducted the disciplinary hearing." Report at 19; see, e.g., Black v. Selsky, 15 F. Supp. 2d 311, 318 (W.D.N.Y. 1998) (finding no support in the record to support petitioner's claim of hearing officer bias).

The hearing transcript reflects that Plaintiff's disciplinary finding was supported by at least "some evidence." See Defendants' Notice of Motion, Ex. E at 8-9, 19 (two[*16] officers testified that razor was found in Plaintiff's pocket); Superintendent v. Hill, 472 U.S. 445, 455, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985) (holding "that       [HN15] the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board" and that this standard "does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence"). See also Report at 17.

IV. Conclusion and Order

For the reasons set forth herein and therein, the Court adopts the Report [91] in most material respects. The Court refers the issue of whether Plaintiff has exhausted his administrative remedies to Magistrate Francis for a hearing (to be held as soon as practicable). The Court also refers to Magistrate

Francis the issue of whether Plaintiff's motion for substitution was properly rejected and/ or whether it is appropriate and/ or helpful to permit substitution. Magistrate Francis is respectfully requested to issue a report and recommendation with respect to these two issues.

Dated: [*17] New York, New York

October 28, 2002

RICHARD M. BERMAN, U.S.D.J.

IVAN PRESLAR, PLAINTIFF, -VS- DR. TAN, ET AL., DEFENDANTS.

00-CV-6103 CJS

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NEW

YORK

2003 U.S. Dist. LEXIS 2688

February 6, 2003, Decided

DISPOSITION: [*1] Dr. Tan's motion for summary judgment as to the first and
second causes of action in the amended complaint was granted, and motion with
respect to all other defendants and causes of action was denied. Defendants'
motion for summary judgment on the issue of exhaustion was denied.

CASE SUMMARY

PROCEDURAL POSTURE:  In plaintiff prisoner's civil rights suit, defendants moved
for summary judgment to dismiss the complaint in its entirety on the basis that
the prisoner failed to exhaust administrative remedies pursuant to 42
U.S.C.S. @ 1997e(a). Alternatively, defendant doctor moved for summary judgment
on two counts of deliberate indifference to the prisoner's serious medical needs
and requested that the claims be dismissed on the merits.

OVERVIEW:  The evidence presented created a material issue of fact for resolution by the jury regarding the prisoner's exhaustion of administrative remedies. The doctor argued that he acted reasonably in his evaluation and treatment of plaintiff and, thus, the evidence failed to show deliberate indifference to a serious medical need and he was, therefore, entitled to summary judgment. Viewing the evidence in the light most favorable to the prisoner, the court concluded that the doctor was entitled to summary judgment on the merits, since the evidentiary proof failed to establish the existence of a genuine issue as to a material fact sufficient to defeat the doctor's application. Nothing indicated that the doctor operated with deliberate indifference, or in a manner designed to inflict unnecessary and wanton pain. The prisoner alleged only that the doctor prescribed different medications, and that those medications may have led to his blackout, causing his fracture.

OUTCOME:  The doctor's motion for summary judgment as to the two causes of action was granted and denied the motion with respect to all other defendants and causes of action. Defendants' motion for summary judgment on the issue of exhaustion was denied.

CORE TERMS:  medication, summary judgment, grievance, inmate, deliberate indifference, prisoner, causes of action, material fact, pain, Eighth Amendment,

nonmoving party, prison, prescribed, aff, genuine issue, deliberately, evidentiary, medical treatment, genuine issue of material fact, moving party, admissible, favorable, modified, fracture, episode, arrived, wanton, exhaustion of administrative remedies, cause of action, grievable

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN1] Summary judgment may not be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.

Civil Procedure: Summary Judgment: Burdens of Production & Proof

[HN2] The movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied. That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial. Once that burden

has been met, the burden then shifts to the nonmoving party to demonstrate that,

as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e). A

fact is "material" only if the fact has some affect on the outcome of the suit.

A dispute regarding a material fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits

Civil Procedure: Summary Judgment: Summary Judgment Standard

   [HN3] For purposes of a motion for summary judgment, in determining

whether a genuine issue exists as to a material fact, the court must view

underlying facts contained in affidavits, attached exhibits, and depositions in

the light most favorable to the nonmoving party. Moreover, the court must draw

all reasonable inferences and resolve all ambiguities in favor of the nonmoving

party. However, a summary judgment motion will not be defeated on the basis of

conjecture or surmise or merely upon a "metaphysical doubt" concerning the

facts. Rather, evidentiary proof in admissible form is required. Fed. R.

Civ. P. 56(e).

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits

   [HN4] The party opposing summary judgment may not create an issue of

fact by submitting an affidavit in opposition to a summary judgment motion that,

by omission or addition, contradicts the affiant's previous deposition

testimony.


Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation

Reform Act

Criminal Law & Procedure: Postconviction Proceedings: Imprisonment & Prisoner

Rights

   [HN5] The Prison Litigation Reform Act of 1995 (PLRA), as amended,

42 U.S.C.S. @ 1997e(a), provides: no action shall be brought with respect to

prison conditions under 42 U.S.C.S. @ 1983, or any other federal law, by a

prisoner until such administrative remedies as are available are exhausted. The

PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong. In New York, the process

generally requires the inmate to: (a) file a grievance with the Inmate Grievance

Resolution Committee (IGRC); (b) seek review of the IGRC decision by the

facility superintendent; and (c) appeal to the Central Office Review Committee.


Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation

Reform Act

   [HN6] In the context of the Prison Litigation Reform Act of 1995, as

amended, 42 U.S.C.S. @ 1997e(a), exhaustion is a threshold question

requiring resolution prior to the court's determination of summary judgment on that ground. Courts in the Second Circuit have held that where a prisoner has made a "reasonable attempt" to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not "available" to him and, thus, the Act does not preclude the prisoner from suing in federal court.

Civil Procedure: Summary Judgment: Summary Judgment Standard

Constitutional Law: Cruel & Unusual Punishment

[HN7] In order to prove an Eighth Amendment violation, a plaintiff must show that a doctor was deliberately indifferent to his serious medical needs. Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. However, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. A court must look to the needs of the individual patient, not to the standard of care for an average plaintiff. Moreover, the United States Court of Appeals for the Second Circuit holds that when a genuine issue of material fact exists as to whether officials demonstrated deliberate indifference to inmate's serious medical needs, it is inappropriate to grant summary judgment. Allegations of negligence in diagnosis or treatment alone, without facts supporting a charge of deliberate indifference, cannot support a claim under 42 U.S.C.S. @ 1983.

Civil Procedure: Summary Judgment: Burdens of Production & Proof

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN8] On a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material fact genuinely in dispute.

COUNSEL: FOR PLAINTIFF: Anna Marie Richmond, Buffalo, NY.

FOR DEFENDANT: Reynolds E. Hahn, Esq., Office of New York State Attorney General, Rochester, NY.

JUDGES: CHARLES J. SIRAGUSA, UNITED STATES DISTRICT JUDGE.

OPINIONBY: CHARLES J. SIRAGUSA

OPINION: DECISION AND ORDER

INTRODUCTION

Siragusa, J. This prisoner civil rights case is before the Court on

defendants' motion for summary judgment. Specifically, defendants' are moving to dismiss plaintiff's amended complaint in its entirety on the basis that plaintiff has failed to exhaust administrative remedies pursuant to 42 U.S.C. @ 1997e(a). See  Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Alternatively, defendant Tan is moving for summary judgment on counts one and two of the amended complaint, requesting that these causes of action be dismissed on the merits. For the reasons[*2] to be stated below, defendants' motion for summary judgment based upon failure to exhaust remedies is denied, but defendant Tan's motion for summary judgment as to counts one and two is granted.

CAUSES OF ACTION IN THE AMENDED COMPLAINT

The Decision and Order of this Court filed November 8, 2001, dismissed four of the eight causes of action stated in the proposed Amended Complaint, which was subsequently filed on December 13, 2001. Of the remaining causes of action, which are the subject of defendants' pending application, the first two pertain only to Dr. Tan and are: (1) deliberate indifference to plaintiff's serious medical needs by Dr. Tan's alleged failure to respond adequately and appropriately to plaintiff's complaints of problems with his medications and medical treatments between August 8, 1997 and May 24, 1998, in violation of plaintiff's Eighth Amendment rights; and (2) deliberate indifference to

plaintiff's serious medical needs by Dr. Tan's alleged failure to properly treat plaintiff's hypertension between July 30, 1997 and May 24, 1998, in violation of plaintiff's Eighth Amendment rights. The third cause of action is asserted against defendants Dr. Tan, Dr. Cetin[*3] n1, Day, Havey, Bensley, Bouquin, Pracht, CPM n2, Jane Doe 1, Jane Doe 2 and West, and alleges they failed to ensure plaintiff was provided with some modicum of bedside care between May 27, 1998 and June 3, 1998 in violation of plaintiff's Eighth Amendment rights. The fourth cause of action is against Deputy Superintendent of Administration Mudra and Facility Health Services Director Cetin only and alleges they failed to remedy a constitutional deprivation of which they had notice, despite their administrative positions, specifically, the deliberate indifference to plaintiff's serious medical needs by n3 Dr. Tan, Day, Harvey, Bensley, Bouquin, Pracht, CPM, Jane Doe 1, Jane Doe 2, and West, between May 17, 1998 and June 3, 1998. This fourth cause of action uses the same language of deliberate indifference as the other causes of action, but does not specifically refer to the Eighth Amendment.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The amended complaint does not identify any defendant by a full name, except for Dr. Tan and Debbie Bouquin. Last names only are used here for ease of reference to the amended complaint.

n2 CPM's name is not listed in the amended complaint and the Jane Doe's are described only as the nurses who made certain health record entries.[*4]

n3 In the allegations against Murda, Dr. Cetin is also listed among the defendants over which Murda had supervision and control.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is well established. [HN1] Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).

[HN2] "The movant must make a prima facie showing that the standard

for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL

PRACTICE,

@ 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving

party to demonstrate that the evidence creates no genuine issue of material

fact. See   Amaker v. Foley, 274 F.3d 677 (2d Cir. 2001);[*5]

Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.1987) (en banc). Where

the nonmoving party will bear the burden of proof at trial, the party moving

for summary judgment may meet its burden by showing the evidentiary materials of

record, if reduced to admissible evidence, would be insufficient to carry the

nonmovant's burden of proof at trial.   Celotex Corp. v. Catrett, 477 U.S.

317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).


    Once that burden has been met, the burden then shifts to the nonmoving party

to demonstrate that, as to a material fact, a genuine issue exists. FED. R.

CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L.

Ed. 2d 202, 106 S. Ct. 2505 (1986). A fact is "material" only if the fact has

some affect on the outcome of the suit.   Catanzaro v. Weiden, 140 F.3d 91,

93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Anderson, 477 U.S. at 248.        [HN3] In determining whether a

genuine issue exists as to a material fact, the court must view underlying[*6]

facts contained in affidavits, attached exhibits, and depositions in the light

91

most favorable to the nonmoving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party. Leon v. Murphy, 988 F.2d 303, 308 (2d Cir.1993); Anderson, 477 U.S. at 248-49; Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001); International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts.  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)); Knight v. United States Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore,      [HN4] the party opposing[*7] summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City, Department of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).


DISCUSSION


A. Exhaustion of Administrative Remedies

[HN5] The Prison Litigation Reform Act of 1995 ("PLRA" or "Act"), as amended, 42 U.S.C. @ 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. at 532. In New York, the process generally requires the inmate to: (a) file a grievance with the Inmate Grievance Resolution Committee ("IGRC"); (b) seek review of the IGRC decision by the facility superintendent; and (c) appeal to the Central Office[*8] Review Committee ("CORC"). See 7 N.Y.C.R.R. @ 701.7; Thomas v. Wright, 2002 U.S. Dist. LEXIS 19618, No. CIV.9:99-CV-2071(FJS/GLS), 2002 WL 31309190 (N.D.N.Y. Oct. 11, 2002); Cruz v. Jordan, 80 F. Supp.2d 109, 117-18 (S.D.N.Y. 1999).

In the case at bar, plaintiff has alleged in his affidavit that he consulted numerous times with the Inmate Grievance Clerk, the inmate designated as the intake clerk for the IGRC, and was told each time that his medical complaints were not cognizable under the IGRC system and was advised to contact the medical staff directly. Preslar aff. (document # 51) at PP 36-37. In support, plaintiff has submitted affidavits from James McDaniel ("McDaniel") and Christopher Battee

("Battee").

Battee states in his affidavit that he was an inmate at Collins Correctional Facility during the period from July 1997 through July 1998 and that from July 15, 1997 until July 15, 1998, he was a member of the IGRC and Head Grievance Clerk at Collins Correctional Facility. He states, in particular, that, "at Collins during the relevant period, the IGRC was not permitted to review medical records, and an inmate could not obtain review of his medical treatment or lack [*9]thereof via the grievance process." Battee aff. at P 10 (emphasis in original). Further, he states that an inmate attempting to "file a grievance seeking review of or modification of his medical treatment or his mental health treatment would have been advised that the issue was not grievable via the Inmate Grievance Process." Id. at P 16. Battee also recalled that plaintiff filed many grievances at Collins and that, "some of those grievances, which addressed his mental health medications and other medications, were not logged or filed pursuant to DOCS Directive 4040(III)(F)." Id. at P 21.

McDaniel, in his affidavit, states that he was also an inmate at Collins during the same period and was a member of its IGRC. He stated that the IGRC at Collins did not retain copies of grievances informally resolved and that, "with respect to claims raised by inmates regarding their medical care, our (the IGRC's) typical practice in 1997-98 was to advise inmates that medical claims

94

were not grievable." McDaniel aff. at P 11.

Defendants filed an affidavit by David LaGraves ("LaGraves") in reply. In his affidavit, LaGraves states that his review of grievance records from July 16, 1997 through[*10] August 31, 1998 revealed twenty-two entries of grievances pertaining to medical issues, thereby circumstantially contradicting the assertions of McDaniel and Battee.

[HN6] Exhaustion is a threshold question, see Crawford v. Braun, 2002 U.S. Dist. LEXIS 23318, No. 99 Civ. 5851 (RMB)(JC), 2002 WL 31426262, *3 (S.D.N.Y. Oct. 28, 2002) requiring resolution prior to the Court's determination of summary judgment on that ground. Other courts in this Circuit have held that where a prisoner has made a "reasonable attempt" to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not "available" to him and, thus, the Act does not preclude the prisoner from suing in federal court. See Thomas v. N.Y. State Dept. of Correctional Services, 2002 U.S. Dist. LEXIS 18341, No. 00 CIV. 7163(NRB), 2002 WL 31164546 (S.D.N.Y. Sep. 30, 2002); O'Connor v. Featherston, No. 01 Civ. 3251 (HB), 2002 U.S. Dist. LEXIS 7570 (S.D.N.Y. Apr. 29, 2002); Rodriguez v. Hahn, 2000 U.S. Dist. LEXIS 16956, No. 99 Civ. 11663(VM), 2000 U.S. Dist. LEXIS 16956 (S.D.N.Y. Nov. 20, 2000); see also  Davis v. Milwaukee County, 225 F. Supp.2d 967, 976 (E.D. Wisc. 2002) (advising[*11] plaintiff that

medical complaint was not a grievable situation, they hindered him from

exhausting, thus, from complying with PLRA). The evidence presented on this

motion creates a material issue of fact for resolution by the jury regarding

plaintiff's exhaustion of administrative remedies. Boomer v. Grant, 2002

U.S. Dist. LEXIS 20704, No. 00 Civ. 4709(DLC), 2002 WL 31441180, *5 & n.4

(S.D.N.Y. Oct. 29, 2002).


   B. Dr. Tan's Motions n4


- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


   n4 At oral argument, defendants' counsel made an oral motion for summary

judgment on behalf of other defendants, which the Court rejected, stating that

motions needed to be made in writing and on notice.



- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -


   Defendant Tan argues that he acted reasonably in his evaluation and treatment

of plaintiff and, thus, the evidence fails to show deliberate indifference to a

serious medical need and he is, therefore, entitled to summary judgment on the

first and second causes of action. Alternatively, he argues that he is entitled

to qualified immunity. Viewing the evidence in the light most favorable[*12] to plaintiff, the Court concludes that Dr. Tan is entitled to summary judgment on the merits, since the evidentiary proof in admissible fails to establish the existence of a genuine issue as to a material fact sufficient to defeat defendant's application.

[HN7] In order to prove an Eighth Amendment violation, plaintiff must show that Dr. Tan was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). In Estelle, the Supreme Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Id. at 104, quoting Gregg v. Georgia, 428 U.S. 153, 173, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976). However, the Court was careful to note that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. 429 U.S. at 106. The Court must look to the needs of the individual patient, not to the standard of care for an average plaintiff. Liscio v. Warren, 901 F.2d 274 (2d Cir.1990). Moreover, [*13] the Court of Appeals has held that when a genuine issue of material fact exists as to whether officials demonstrated deliberate indifference to inmate's serious medical needs, it is inappropriate to grant summary judgment. Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1988). Allegations of negligence in diagnosis or treatment

alone, without facts supporting a charge of deliberate indifference, cannot
support a claim under @ 1983. Cf. Hathaway v. Coughlin, 841 F.2d 48 (2d
Cir. 1988) (delay of over two years in arranging surgery to correct broken pins
in hip could amount to deliberate indifference to serious medical needs);
Gill v. Mooney, 824 F.2d 192, (2d Cir. 1987) (plaintiff may have valid claim
for relief where medical treatment refused for misconduct unrelated to medical
condition or treatment); Archer v. Dutcher, 733 F.2d 14 (2d Cir. 1984)
(summary judgment inappropriate where plaintiff raises issue of material fact
regarding possibility that defendants delayed emergency medical aid to cause
suffering for obstreperous inmate); Williams v. Vincent, 508 F.2d 541 (2d
Cir. 1974) (colorable claim of[*14] deliberate indifference presented where
doctors chose treatment of discarding prisoner's ear and stitching stump rather
than attempting to save the severed portion).

[HN8] "On a motion for summary judgment, the Court must resolve all
ambiguities and draw all reasonable inferences in favor of the party against
whom summary judgment is sought, with the burden on the moving party to
demonstrate the absence of any material fact genuinely in dispute."
Hathaway, 841 F.2d at 50 (internal quotations and citations omitted). Plaintiff
concedes that Dr. Tan provided him with repeated access to medical care. Pl.'s
Mem. Opp'n Summ. J. at 18. However, plaintiff contends that Dr. Tan modified a
treatment plan that plaintiff reported to him had been arrived at after "careful

and cooperative work on the part of doctors at Attica and [plaintiff] to

identify the most effective mix of medications and dosages to treat [his]

various medical problems." Preslar aff. at P 9. Plaintiff's affidavit lists

eleven different medications he was taking at the time of his arrival at Collins

Correctional facility. Id at P 8. Plaintiff alleges that Dr. Tan failed to

review his entire medical record, [*15] examined him for only five minutes upon

his arrival at Collins, and on that basis, modified plaintiff's medications. Id.

at PP 10-18. Plaintiff began experiencing difficulties on the new medical regime

prescribed by Dr. Tan, and Dr. Tan thereafter modified the medications. Id. at

PP 23, 27, 29-30. Plaintiff continued to complain about Dr. Tan's prescribed

medications, including losing consciousness in the prison commissary twice on

August 18, 1997, and requested to be returned to the medications he had been

taking when he arrived at Collins. Id. at P 47. His requests were refused. Id.

at P 50. On May 24, 1998, plaintiff experienced another episode of

unconsciousness, fell and suffered a fracture. Id. at P 52.


   Dr. Tan has filed an affidavit in support of his motion. In that affidavit,

Dr. Tan acknowledges that plaintiff suffered from a number of different ailments

including bipolar disorder, hytertension, neurogenic bladder,

hypercholesterolemia, emphysema and chest pain induced by anxiety. Tan aff. at P

4. Dr. Tan states that he "reviewed the Ambulatory Health Records from Attica

Correctional Facility ... [which] showed a history of labile (unstable) high

blood[*16] pressure." Id. at P 7. Dr. Tan alleges that the combination

medications prescribed by the physician at Attica Correctional Facility,

"created the potential for postural hypotension." Id. at P 9 (emphasis in

original). Essentially, he states that the medications plaintiff was taking when

he arrived at Collins, the same medications that Dr. Tan changed, had the

potential to cause plaintiff to black out. Dr. Tan's affidavit continues with a

detailed discussion of his reasoning for changing plaintiff's medications, and

relates that plaintiff's fainting in the prison commissary on August 18, 1997,

was 'most likely ... an episode of postural hypotension." Id. at P 16. Dr. Tan

points out that plaintiff's medical records contain "no record of a second

postural hypotensive event until May 24, 1998, when [plaintiff] suffered his

fracture." Id. at P 28. Dr. Tan also emphasizes that when plaintiff was

discharged from Strong Memorial Hospital, he was discharged on the same ten

medications he had been taking when he entered, plus one additional for pain.

Id. at P 29. "In other words, the discharge medication plan for [plaintiff] from

Strong Memorial, despite initial concerns, [*17] did not make any changes from

the plan prescribed at Collins Correctional." Id. at P 33.

  Even viewing the facts in the light most favorable to plaintiff, nothing

indicates that Dr. Tan operated with deliberate indifference, or in a manner

designed to inflict unnecessary and wanton pain. Plaintiff has alleged only that

Dr. Tan prescribed different medications, and that those medications may have

led to his blackout on May 24, 1998, causing his fracture. Although plaintiff has alleged what may amount to malpractice, clearly, even from plaintiff's own affidavit, one can conclude that Dr. Tan was working to adjust plaintiff's medications to treat his symptoms, not increase his pain, and not to deliberately mistreat him. Nothing in plaintiff's submissions establishes the type of unnecessary and wanton pain shown by successful plaintiffs in the cases cited above. Quite the contrary, the evidentiary proof in admissible form establishes that Dr. Tan saw plaintiff on numerous occasions and responded in a manner that was designed to address plaintiff's specific complaints, and that he did not deliberately ignore plaintiff's complaints or deliberately cause plaintiff more pain. Thus, with[*18] regard to Dr. Tan, his motion for summary judgment, as to the First and Second causes of action, pertaining to his medical treatment of plaintiff's various ailments by adjusting his medications, is granted on the merits. Since the motion is granted on the merits, the Court need not address Dr. Tan's alternative argument for the application of qualified immunity.

CONCLUSION

Accordingly, the Court grants Dr. Tan's motion (document # 43) for summary judgment as to the first and second causes of action in the amended complaint, and, in accordance with the above, denies the motion (document # 43) with

respect to all other defendants and causes of action. Further, the Court denies

defendants' motion for summary judgment on the issue of exhaustion, because the

evidence presented on this motion creates a material issue of fact for

resolution by the jury regarding plaintiff's exhaustion of administrative

remedies.

IT IS SO ORDERED.

DATED: FEBRUARY 6, 2003

ROCHESTER, NEW YORK

ENTER:

/s/

CHARLES J. SIRAGUSA

UNITED STATES DISTRICT JUDGE

RODNEY BOOMER, Plaintiff, -v-L. GRANT, Warden,

O.B.C.C./C.P.S.U.; JOHN DOE, Chief Doctor of

O.B.C.C./C.P.S.U.; CRUZ, Correctional Captain, Bronx Supreme

Court; CANNON, Correctional Officer, Bronx Supreme Court;

JOHN DOE, Correctional Officer, Bronx Supreme Court; LANCE,

Correctional Officer, Bronx Supreme Court; NOREZ,

Correctional Captain, Bronxhouse Corr. Facility; JOHN DOE,

Doctor, Harlem Hospital acting for St. Barnabas Hospital

which operates within Rikers Island; and WRIGHT, Doctor,

O.B.C.C., Defendants.


00 CIV. 4709 (DLC)


UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

NEW YORK

2002 U.S. Dist. LEXIS 20704

October 28, 2002, Decided

October 29, 2002, Filed

DISPOSITION: [*1] Defendants' motions for partial summary judgment granted.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff, a pro se inmate, sued defendant jail and medical officials pursuant to 42 U.S.C.S. @ 1983 alleging excessive force and deprivation of medical treatment in violation of the Fourteenth Amendment. The officials moved for partial summary judgment.

OVERVIEW:  The inmate alleged that while he was a pretrial detainee, he was beaten in a holding cell, suffered epileptic seizures and was taken to a hospital but was given minimal treatment and tests that were supposed to have been run were not completed. The court found that the inmate failed to show deliberate indifference to his medical needs. He did present evidence in support of the argument that but for the prison staff's failure to handle his grievance properly, he would have exhausted his administrative remedies, so the court

declined to grant summary judgment on the basis of failure to exhaust. The court determined that the only viable claim raised was the alleged failure to administer a Dilantin test at a hospital where the inmate was taken for treatment, although medical records produced by the officials seemed to show that the test had been given. The medical notations were difficult to interpret, so the court ruled that the parties should make further submissions to clarify the issue. Pending that evidence, summary judgment and the inmate's failure to file a notice of claim would be considered.

OUTCOME:  The motions for partial summary judgment were granted as to the claims of deliberate indifference to medical needs and negligence. It was premature to grant summary judgment on the claim for alleged failure to administer a Dilantin test, which could constitute a breach of duty of care.

CORE TERMS:  pain, summary judgment, dilantin, grievance, staff, deliberate indifference, cell, administer, seizure, emergency room, administered, clinic, corrections, blood test, x-ray, legs, notations, dragged, inmate, elbow, cane, administrative remedies, medical treatment, moving party, pro se, assault, handle, holding cell, medication, neurologic

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN1] Summary judgment may not be granted unless the submissions of the parties, taken together, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law governing the case will identify those issues that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Civil Procedure: Summary Judgment: Burdens of Production & Proof

[HN2] A party moving for summary judgment bears the burden of demonstrating the absence of a material factual question, and in making that determination a court must view all facts in the light most favorable to the nonmoving party. When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on the mere allegations or denials of his pleadings. Fed. R. Civ. P. 56(e).

Civil Procedure: Summary Judgment: Summary Judgment Standard

Civil Procedure: Joinder of Claims & Parties: Self-Representing Parties

[HN3] In deciding whether to grant summary judgment, a court must, therefore, determine (1) whether a genuine factual dispute exists based on the

evidence in the record, and (2) whether the facts in dispute are material based on the substantive law at issue. Where a party is proceeding pro se, a court has an obligation to read the pro se party's supporting papers liberally, and interpret them to raise the strongest arguments that they suggest.

Civil Procedure: Justiciability: Exhaustion of Remedies

[HN4] Where an inmate's deliberate indifference to medical needs claims fall within the exhaustion requirement of 42 U.S.C.S. @ 1997(e)(a), the inmate must have exhausted his administrative remedies for those claims prior to filing his complaint.

COUNSEL: Rodney Boomer, Pro se, Elmira, NY.

For Lanigan, Grant, Barry, Caruso, Brown, and Samuel, defendants: Concepcion A. Montoya, Corporation Counsel of the City of New York, New York, NY.

For Wright and St. Barnabas Hospital, defendants: Andrew Zwirling, Garbarini & Scher, New York, NY.

JUDGES: DENISE COTE, United States District Judge.

OPINIONBY: DENISE COTE

OPINION: OPINION AND ORDER

DENISE COTE, District Judge:

  Plaintiff Rodney Boomer ("Boomer"), who is proceeding pro se, brought this

action on June 26, 2000, pursuant to 42 U.S.C. @ 1983 ("Section 1983"),

alleging excessive force and deprivation of medical treatment in violation of

the Fourteenth Amendment in connection with an alleged January 5, 2000 assault

on him by corrections officers at the Bronx County Courthouse and his subsequent

treatment at the Bronx House of Detention and Harlem Hospital. Boomer also

alleges assault, battery, and negligence under state law. Defendants Gary M.

Lanigan ("Lanigan"), Commissioner of the New York City Department of

Correctional[*2] Services ("NYC DOCS"), Leroy Grant ("Grant"), Warden of the

Otis Bantum Correctional Center at Riker's Island ("OBCC"), Deputy Warden James

Barry ("Barry"), Michael Caruso ("Caruso"), the Inspector General for NYC DOCS,

Dr. Patrick Brown ("Brown") of the New York City Health and Hospitals

Corporation, and Dr. George Samuel ("Samuel") of Harlem Hospital move for

summary judgment. St. Barnabas Hospital and Dr. Wright ("Wright") also move for

summary judgment. For the reasons stated, defendants' motions for partial

summary judgment are granted in part.

Background

   The following facts are undisputed or as alleged by Boomer unless otherwise

noted. Boomer has a history of epilepsy, resulting from a head injury sometime

in 1996 or 1997, and walks with a cane because of an injury sustained during a

fight with an inmate. Boomer also has a long history of back pain for which he

has received physical therapy.

   On January 5, 2000, while a pretrial detainee, Boomer was taken to the

Supreme Court in Bronx County for a meeting with his attorney scheduled for 1:00

p.m. After meeting with his attorney, he was taken to a holding cell on the

fourth floor of the courthouse, where he waited for approximately[*3] twenty

minutes. Several corrections officers, who have not moved for summary judgment,

then entered Boomer's cell and placed restraints on his arms and legs. One of

the corrections officers, whom Boomer identifies as Captain Cruse ("Cruse"),

then asked Boomer if he had a cane permit. In his third amended complaint (the

"Complaint"), Boomer states that before he could answer, Cruse "snatched the

plaintiff's cane and legal documents. The plaintiff tried to verbally protest

and was swiftly cut off by Defendant M. Kanner who sprayed chemical agent into

plaintiff's eyes, face and hair." Boomer further states that Cruse ordered the

other corrections officers to assault him, after which he was "kicked and

punched about the body and head."

Boomer states that he was then "dragged" to a holding cell on the first floor of the courthouse, where he suffered a seizure. As he recovered from the seizure, Cruse ordered Corrections Officer Shipmon ("Shipmon") to pour cold water on Boomer's face. Boomer states that he "choked violently" from the water. When Boomer tried to stand up, Cruse ordered Kanner to spray a second burst of chemical agent at Boomer.

Boomer was then taken by bus to the Bronx House[*4] of Detention, "dragged" to the intake shower area, and then "dragged" again to the nurses' station. Boomer states that he was experiencing "excruciating back pain" at that time. At the nurses' station, Dr. Laroche ("Laroche") attempted to wipe the chemical agent out of Boomer's eyes. According to Laroche's "Injury to Inmate Report," which he completed at the time of the incident, Laroche attempted to administer a blood test to determine Boomer's Dilantin levels, n1 but Boomer refused to be tested. Boomer states that he did not refuse the test. At the nurses' station, Boomer went into another seizure. Another bucket of water was poured on his face.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Dilantin is an anticonvulsant drug used for the treatment of epilepsy. A certain blood level of Dilantin is necessary for the drug to be effective.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

When Boomer recovered, he was taken by ambulance to the emergency room of Harlem Hospital. He was then examined by an unidentified doctor. Boomer states that the doctor indicated to him that x-rays of his upper and[*5] lower back and left elbow would be taken, and that a blood test would be administered to determine his Dilantin level. Boomer states, however, that no x-rays were ever taken and no blood test was administered. After being examined by the doctor, Boomer was given Toradol, a non-steroidal anti-inflammatory drug used to treat pain, and Robaxin, a muscle relaxant used to treat muscle pains and spasms. Boomer was also given Motrin.

Defendants have submitted copies of Boomer's emergency room records for the evening of January 5, 1999, which consist of four pages in at least three different hand-writings, each of which is largely illegible. It appears from notations in these records that a "CBC" (complete blood count) was administered as well as a test to determine Boomer's dilantin level. Defendants have failed, however, in their submissions to explain these notations, nor have they

submitted affidavits from the medical personnel who completed them. The records also indicate that "patient got up and walked in ER to get to DOC officer to spit at him," (emphasis in original) and that Boomer's condition had improved and he was "malingering."

At approximately 9:30 p.m., Boomer was "dragged"[*6] out of the emergency room of the Harlem Hospital and transported by bus back to the Central Punitive Segregation Unit ("CPSU") of the Otis Bantum Correctional Center ("OBCC") at Riker's Island. At the OBCC, Boomer was carried off the bus by stretcher and into the CPSU clinic. Boomer states that his removal from the emergency room at Harlem Hospital and transportation to the CPSU clinic were video taped. No video tape evidence has been submitted, however.

At the CPSU clinic, Boomer was examined by Physician's Assistant Beckford ("Beckford"). Boomer states that he was "still experiencing excruciating back pain, severe left elbow and wrist pain with weakness in both legs, knees and ankles." Boomer further states that he was unable to walk, sit up, or stand. Boomer was then taken by stretcher to the main clinic of the OBCC, where he was placed in a holding cell for several hours. According to Boomer, Beckford then told Boomer that Dr. Wright ("Wright") had instructed Beckford to have Boomer returned to his cell. Boomer was then returned by stretcher to his cell in the CPSU.

Boomer states that later than night, he had approximately three more seizures caused by the "yelling," "screaming, [*7] " and "banging on [his] wall" of other inmates. Boomer also states that a corrections officer looked into his cell at some point during the night but took no further action.

Boomer's medical records show that he sought medical treatment on January 6 and January 11, 2000, and in neither case complained of a seizure. Boomer states that several months after the attack, he was seen by a neurologist, who recommended that he be given an M.R.I. scan and that his brain waves be tested. Boomer states that he was never given either exam.

On March 1, 2000, Boomer was examined by Dr. Ronald Silverman ("Silverman"). Silverman reported the following:

The neurologic examination was essentially normal. The claimant walked slowly with an exaggerated sense of pain. He preferred to use a cane. There was otherwise no objective finding of weakness in the arms or legs. Reflexes were just barely obtainable and symmetrical. Sensory examination to vibration and pinprick in the arms and legs was normal. There was no palpable spasm in the cervical or lumbar paraspinal muscles.

In summary, Mr. Boomer, while he has complaints of neck and back pain and pain and numbness in the legs, has no objective[*8] findings on neurologic examination to substantiate this claim. At the present time, based on the history and examination, I find no objective evidence of any neurologic injury as a result of the claimed incidents in 1999 or 2000.

Boomer states in his Complaint that on January 17, 2000, he filed an institutional grievance complaint with regard to the events of January 5, but that it was returned to him by OBCC staff, who informed him that the grievance program at OBCC does not address grievances concerning the use of force and medical treatment. Boomer states that OBCC staff "did not inform [him] of any other alternative to have his complaint filed or grieved, other than stating that the Inspector General for NYC DOCS has personal jurisdiction in the above matters." (Emphasis omitted). Boomer admits in his "Second Opposition" that he took no action to appeal the CPSU staff's refusal to accept his grievance. Boomer states, however, that he "was powerless in this matter because he was CPSU-confined (23) twenty-three hours a day with absolutely no available hands on access to IGP [Inmate Grievance Procedure] Department, committee, warden or IGP staff person." In this connection, [*9] Boomer has submitted an affidavit by inmate Ronald Henderson ("Henderson") in which Henderson states that DOCS' staff frequently mishandles inmate grievances.

Boomer also wrote a complaint letter dated February 23, 2000, addressed to the Board of Corrections, Dr. Van H. Dunn, the "N.Y.C. Inspector General," the "N.Y.C. investigation unit for complaints against DOCS staff," and defendants Wright, Grant, and Lanigan. Of those to whom Boomer addressed his complaint letter, only Dr. Dunn acknowledged its receipt, and in a letter dated May 24, 2000, informed Boomer that he was forwarding the letter to Dr. Patrick Brown, the Medical Director of Correctional Health Services. Boomer filed the instant action on June 26, 2000.

Standard

[HN1] Summary judgment may not be granted unless the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The substantive law governing the case will identify those issues that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude[*10] the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1987). [HN2] The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the nonmoving party. Abdu-Brisson

v. Delta Air Lines, Inc., 239 F.3d 456, 465-66 (2d Cir.), cert. denied, 534 U.S. 993, 151 L. Ed. 2d 378, 122 S. Ct. 460 (2001). When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Fed. R. Civ. P. 56(e); see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).     [HN3] In deciding whether to grant summary judgment, this Court must, therefore, determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the facts in dispute are material based on the substantive law at issue. Where, as here, a party is proceeding[*11] pro se, this Court has an obligation to "read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n2 Both the Court and the defendants provided Boomer with a formal notice of the Rule 56 requirements for opposing defendants' summary judgment motions.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Discussion

Defendants do not move for summary judgment on Boomer's claim of excessive force. They do, however, move for summary judgment on his claim of deliberate indifference to medical needs and negligence under state law.

I. Federal Claims

A. Deliberate Indifference to Medical Needs

The legal standard for a pretrial detainee's claim that he was denied medical care is set forth in the Opinion of October 24, 2002, issued in a companion case filed by Boomer. Boomer v. Lanigan, 2002 U.S. Dist. LEXIS 20514, No. 00 Civ. 5540 (DLC), at 14-16 (S.D.N.Y. Oct. 24, 2002).

Boomer argues that the defendants were deliberately indifferent[*12] to his medical needs when (1) Laroche failed to administer a blood test to determine his Dilantin level, (2) Harlem Hospital staff failed to administer an x-ray of his back and left elbow and failed to administer a blood test, (3) the pain medication administered by Harlem Hospital staff failed to mitigate his pain, and (4) Wright and Beckford directed that he be sent back to his cell in the

CPSU despite his history of epilepsy.

With respect to the first alleged instance of deliberate indifference, Boomer has raised a question of fact as to whether Laroche attempted to test Boomer's Dilantin level. Even if Laroche failed to administer the test, however, Laroche ordered that Boomer be sent by ambulance to the emergency room of Harlem Hospital. Boomer has not explained how this decision is consistent with deliberate indifference to his medical needs.

The defendants are also entitled to summary judgment on Boomer's claim that the pain medication did not alleviate his pain. Boomer does not dispute that he was given three different kinds of pain medication. In such circumstances, he has not raised an issue of fact as to the defendants' deliberate indifference to his pain.

With respect[*13] to the final instance of alleged deliberate indifference, while Boomer may have a difference of opinion as to when he should have been returned to his cell, he has failed to present any evidence to show that defendants knew of and when he should have been returned to his cell, he has failed to present any evidence to show that defendants knew of and disregarded a serious risk to his health. Boomer does not dispute that they sent him to Harlem Hospital, examined him in order to determine whether his health was at

risk from his seizures, kept him at the CPSU clinic for several hours upon his return from the hospital, and that he did not suffer any seizures while at the hospital or upon his return to the clinic. Boomer's disagreement with the timing of his return to his cell is not sufficient to prevent summary judgment on this claim.

With respect to Boomer's claim that the medical personnel at Harlem Hospital failed to take x-rays of his back and elbow, Boomer has not identified why such x-rays were necessary or how the failure to take them affected his health or care. With respect to his claim that the Harlem Hospital personnel failed to administer a Dilantin test, the defendants have[*14] submitted medical records which appear to indicate that a Dilantin test was in fact given. Defendants have not, however, explained the meaning of the notations in Boomer's emergency room records or drawn Boomer's attention to those notations. For this reason, it would be premature at this stage to grant summary judgment on this claim. The parties shall be given an opportunity to make further submissions to clarify whether a Dilantin test was administered.

B. Exhaustion

As set forth in the October 24 Opinion,      [HN4] because Boomer's deliberate indifference to medical needs claims fall within 42 U.S.C. @

1997e(a)'s exhaustion requirement, Boomer must have exhausted his

administrative remedies for those claims prior to filing his complaint. Boomer

states that he submitted a grievance regarding the defendants' indifference to

his medical needs on January 5 but that the grievance was returned to him and

that we was told, in effect, that the CPSU grievance process did not handle the

claims he was grieving. Boomer failed to appeal this refusal to accept his

grievance, but contends that he was unable to do so because of the restrictions

associated with his confinement[*15] in CPSU. Boomer has also presented

evidence, in the form of Henderson's affidavit, that the CPSU staff often failed

properly to handle grievances. Boomer presents this evidence in support of the

argument that but for the CPSU staff's failure to handle his grievance properly,

he would have exhausted his administrative remedies. This evidence creates

issues of fact regarding Boomer's exhaustion of his administrative remedies.


C. Personal Involvement and Qualified Immunity


   In the event that Boomer is able to raise a question of fact as to whether a

Dilantin test was administered at Harlem Hospital, defendants' defenses of lack

of personal involvement and qualified immunity will be considered.


As explained above, Boomer has failed to identify any breach by defendants of

their duty of care other than defendants' alleged failure to administer a

Dilantin test at Harlem Hospital. As stated above, it would be premature at this stage to grant summary judgment on this claim. In the event that Boomer is able to raise a question of fact concerning the administration of the Dilantin test, defendants' defense that Boomer failed to file a notice of claim will be considered.

Conclusion[*16]

For the reasons stated, defendants' motions for partial summary judgment on the claims of deliberate indifference to medical needs and negligence are granted with the following exception. Defendants shall submit any further evidence or argument no later than November 15, 2002 concerning Boomer's claim that he did not receive a Dilantin test at Harlem Hospital on January 5, 2000. Boomer shall reply no later than December 6, 2002.

SO ORDERED:

Dated: New York, New York

October 28, 2002

DENISE COTE

United States District Judge

PAUL SKELTON v. JIM BOWLES, ET AL

3-02-CV-1664-R

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

TEXAS, DALLAS DIVISION

2002 U.S. Dist. LEXIS 23433

December 5, 2002, Filed; December 6, 2002, Entered

DISPOSITION: [*1] Magistrate judge recommended that Defendant Bowle's motion to

dismiss in part be granted.


CASE SUMMARY


PROCEDURAL POSTURE:  Plaintiff former inmate sued defendants--a sheriff, a

physician, and another individual--under 42 U.S.C.S. @ 1983 and state law

based on the conditions of the inmate's confinement when in the sheriff's

custody. The sheriff moved to dismiss the claims against him. The matter was

referred to a magistrate judge for a report and recommendation.


OVERVIEW:  The inmate sued the sheriff in his official capacity. The inmate's

complaint, however, did not allege that he had exhausted the administrative

remedies that were available at the jail. The inmate also did not claim in his

response to the motion to dismiss that he had pursued administrative remedies.

Instead, he questioned whether any administrative remedies were available at the

jail. The magistrate noted that the jail had written inmate grievance procedures

in effect during the inmate's incarceration. However, it was not clear that the

inmate could still avail himself of the jail's grievance procedure and, if

administrative remedies were no longer available, whether the inmate's failure

to exhaust those remedies should be excused.


OUTCOME:  The magistrate recommended that the court grant the motion in part.

The magistrate recommended that the court stay discovery against the sheriff on the merits of the former inmate's claims pending the inmate's exhaustion of administrative remedies. If the inmate was advised that administrative remedies were no longer available, the magistrate recommended limited discovery on whether the exhaustion requirement should be excused or waived.

CORE TERMS:  administrative remedies, inmate, exhaustion requirement, grievance procedure, recommendation, prisoner, exhaust administrative remedies, motion to dismiss, presently, ignorance, excused, administrative remedy, prison, exhausted, confined, conditions of confinement, conclusions of law, present time, exhausting, exhaustion, waived, grievance, correctional, discovery

LexisNexis(R) Headnotes Hide Headnotes

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN1]  42 U.S.C.S. @ 1997e(a) as amended by the Prison Litigation Reform Act of 1995 provides in part that no action shall be brought with respect to prison conditions under 42 U.S.C.S. @ 1983 title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

Constitutional Law: Civil Rights Enforcement: Prisoners: Confinement Conditions

[HN2] The United States Supreme Court has made clear that a prisoner cannot seek damages arising out of prison conditions before exhausting administrative remedies.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN3] Although exhaustion is a mandatory requirement it is not a jurisdictional prerequisite. The United States Court of Appeals for the Fifth Circuit has noted that a non-jurisdictional exhaustion requirement may, in certain rare instances, be excused, particularly where dismissal would be inefficient and would not further the interests of justice or the Congressional purposes behind the Prison Litigation Reform Act of 1995.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act

[HN4] An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it. A grievance procedure that is not made known to inmates is not an "available" administrative remedy. On the other hand, correctional officials are entitled to the benefit of 42

U.S.C.S. @ 1997e(a) as long as the institution has made a reasonable,

good-faith effort to make a grievance procedure available to inmates; an inmate

may not close his eyes to what he reasonably should have known. When a plaintiff

claims ignorance of the grievance procedure, it becomes a question of fact

whether the grievance procedure was an available administrative remedy he was

required to exhaust.


COUNSEL: For PAUL SKELTON, MICHAEL MCLEOD, plaintiffs: Doug Perrin,
Attorney at

Law, Law Office of Doug Perrin, Arlington, TX USA.


For PAUL SKELTON, MICHAEL MCLEOD, plaintiffs: David M Finn, Attorney at
Law, Law

Office of David Finn, Dallas, TX USA.


For JIM BOWLES, RITA MOSS, RENE FUNK, defendants: Peter L Harlan, Attorney at

Law, Dallas County District, Attorney's Office, Dallas, TX USA.


JUDGES: Wm. F. Sanderson, Jr., UNITED STATES MAGISTRATE JUDGE.


OPINIONBY: Wm. F. Sanderson, Jr.

OPINION: REPORT AND RECOMMENDATION OF UNITED STATES

MAGISTRATE JUDGE

Pursuant to the District Court's order filed on October 3, 2002, and the provisions of 28 U.S.C. @ 636(b)(1)(B) and (C) came on to be considered Defendant Jim Bowles, in his official capacity as Sheriff of Dallas County, Texas's motion to dismiss (See Joint Submission filed on November 6, 2002) and the magistrate judge finds and recommends as follows:

This suit is based upon alleged conditions of confinement while Plaintiff was incarcerated in the Dallas County Jail from August 31, 2001 to August 6, 2002. He seeks damages pursuant to [*2] 42 U.S.C. @ 1983 against Defendant Bowles in his official capacity and against Rita Moss, M D and Rene Funk in their individual capacities as well as damages for medical malpractice under this court's supplemental jurisdiction.

Defendant Bowles, in his official capacity, seeks dismissal of Plaintiff's claims directed against him because Skelton has failed to exhaust available administrative remedies

42 U.S.C. @ 1997e(a),    [HN1] as amended by the Prison Litigation Reform Act of 1995 provides in pertinent part that:

"no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added).

   Skelton's complaint does not allege that he exhausted administrative remedies which were available at the Dallas County Jail, nor does he represent in his response to Bowles's motion that he pursued administrative remedies. He questions whether any administrative remedies were available at the Dallas County Jail, but this issue is laid[*3] to rest by the written Inmate Grievance Procedures for the Dallas County Jail, which was in effect during Skelton's period of incarceration, which is attached to Leslie Sweet's affidavit signed on November 4, 2002, and filed as a part of Defendant's Supplemental Appendix.

   In Booth v. Churner, 121 S. Ct. 1819, 532 U.S. 731, 149 L. Ed. 2d 958 (2001)     [HN2] the Supreme Court made clear that a prisoner, such as Plaintiff, cannot seek damages arising out of prison conditions before exhausting administrative remedies. See also   Porter v. Nussle, 534 U.S. 516, 524, 152 L. Ed. 2d 12, 122 S. Ct. 983, 988 (2002); Wright v. Hollingsworth, 260 F.3d 357 (5th Cir. 2001).

It is therefore clear that under the present circumstances Skelton cannot pursue any claim for damages against Defendant Bowles in his official capacity. However, it is equally pertinent in considering Bowles's motion to observe that

[HN3] although exhaustion is a mandatory requirement it is not a jurisdictional prerequisite. See   Wright v. Hollingsworth, supra 260 F.3d at 358 at n. 2, citing Underwood v. Wilson, 151 F.3d 292, 294-5 (5th Cir. 1998). In Underwood the Fifth Circuit noted that[*4] "a non-jurisdictional exhaustion requirement may, in certain rare instances, be excused, particularly where dismissal would be inefficient and would not further the interests of justice or the Congressional purposes behind the PLRA." Id. at 296. It is equally relevant to the case at hand that were Skelton's claims against Bowles dismissed at the present time, the limitations period would be tolled while Skelton pursues administrative remedies. Wright v. Hollingsworth, supra 260 F.3d at 359. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Limitations appears not be of much consequence at the present time since Skelton's confinement in the Dallas County Jail did not commence until August 31, 2001.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Dismissal of Plaintiff's claims against Defendant Bowles at this time would not be efficient. There are two other defendants in this action, neither of whom has filed a motion to dismiss. Therefore it is possible that this case, arising out of conditions of confinement in 2001 and 2002, would end up being tried twice - once as[*5] to Defendants Moss and Funk and a second time as to Defendant Bowles, in his official capacity after Skelton pursues "such remedies as are available" and refiles an action against the sheriff in his official capacity.

There are yet other factors which counsel against dismissal at this time. In his brief and in Plaintiff's mother's affidavit filed in response to the motion it is strongly suggested that Skelton was unaware that any administrative remedy was available.

Although a prisoner plaintiff's claim of ignorance has not been addressed by the Fifth Circuit as a matter excusing the exhaustion requirement, it has been addressed. In Hall v. Sheahan, 2002 U.S. Dist. LEXIS 1194, 2001 WL 111019 (N.D. Ill. February 2, 2001), the court observed:

[HN4] "An institution cannot keep inmates in ignorance of the grievance

procedure and then fault them for not using it A grievance procedure that is not made known to inmates is not an "available" administrative remedy. Cf. Johnson v. Garraghty, 57 F. Supp. 2d 321 (E.D. Va. 1999) (if correctional officials prevented plaintiff from using grievance procedure, it would excuse exhaustion). On the other hand, correctional officials are entitled[*6] to the benefit of @@ 1997e(a) as long as the institution has made a reasonable, good-faith effort to make a grievance procedure available to inmates; an inmate may not close his eyes to what he reasonably should have known. When a plaintiff claims ignorance of the grievance procedure, it becomes a question of fact whether the grievance procedure was an available administrative remedy he was required to exhaust."

It is also unclear whether Skelton, now that he is no longer confined in the Dallas County Jail, can avail himself of the administrative remedies set out in Defendant's Supplemental Appendix. If he is unable to pursue these remedies at this time, it raises the question of futility, a possible exception to the exhaustion requirement.

Since neither party has addressed this issue, it is premature to decide whether any attempt to exhaust administrative remedies would be futile. On the one hand, if Skelton is presently able to exhaust administrative remedies under the Inmate Grievance Procedures for the Dallas County Jail, Defendant Bowles's

motion would be rendered moot upon completion of all stages of the

administrative remedies. On the other hand, if administrative remedies[*7] are

no longer available, the court will be required to decide whether the exhaust

requirement should be waived. However, the magistrate judge would note that in

Marsh v Jones, 53 F.3d 707, 710 (5th Cir. 1995), the Fifth Circuit

affirmed the district court dismissal of a prisoner's @ 1983 where the inmate

failed to attempt to exhaust administrative remedies, noting that: "Without the

prospect of dismissal with prejudice, a prisoner could evade the exhaustion

requirement by filing no administrative grievance or by intentionally filing an

untimely one, thereby foreclosing administrative remedies and gaining access to

a federal forum without exhausting administrative remedies." This case, decided

under the pre-PLRA version of @ 1997e(a) perforce would have equal binding

effect on the current version of @ 1997e(a). n2


- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -


  n2 See also   Wright v. Morris, 111 F.3d 414, 418 n.3 (6th Cir. 1997) -

"It would be contrary to Congress' intent in enacting the PLRA to allow inmates

to bypass the exhaustion requirement by declining to file administrative

complaints and then complaining that administrative remedies are time-barred and

thus not available."

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

  [*8]

CONCLUSION:

   Under the papers and pleadings relevant to Defendant Bowles's motion it is

clear that the Dallas County Jail had written procedures providing

administrative remedies for inmate grievances while Skelton was confined there.

It is equally clear that Skelton has not exhausted these avenues. Therefore,

under the present circumstances he may not pursue his claims against the sheriff

in his official capacity.

   On the other hand, there is insufficient information before the court to

determine whether Skelton can or cannot pursue administrative remedies or in the

event that administrative remedies are no longer available, whether his

failure to exhaust should be excused.

RECOMMENDATION:

   For the foregoing reasons it is recommended that the District Court enter its

order granting Defendant Jim Bowles's motion to dismiss in part as follows:

   1. Vacating the Scheduling Order filed on September 26, 2002.

   2. Staying all discovery against Defendant Jim Bowles on the merits of Plaintiff's claims against him in his official capacity, pending Plaintiff's exhaustion of administrative remedies or until he is advised that no administrative remedies are presently available. [*9]

   3. In the event that Plaintiff has no presently available administrative remedies, authorizing the parties to engage in limited discovery relating to the issues raised in this recommendation concerning whether the exhaustion requirement should be excused or waived.

   A copy of this recommendation shall be transmitted to counsel for the parties.

   Wm. F. Sanderson, Jr.

   UNITED STATES MAGISTRATE JUDGE

   NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation. Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a de novo determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.