UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEITH BARILE | : |
|                Plaintiff, | : |
| | : |
|      v. | : |
| | : |
| C.O. DRUMMOND, ET AL., | : |
|                Defendant. | : |

PRISONER
CIVIL NO. 3:00CV2253 (JCH)(HBF)

AUGUST 9, 2004

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR EVIDENTIARY HEARING**

Plaintiff Keith Barile ("Barile" or "Plaintiff"), by his attorneys Pillsbury Winthrop LLP, respectfully submits this memorandum in opposition to Defendants' Motion for Evidentiary Hearing (the "Motion"). Defendants, apparently disgruntled with the Court's (Hall, J.) ruling on their motion for summary judgment with regard to Plaintiff's exhaustion of administrative remedies, are now impermissibly seeking a second bite at the proverbial apple.[1] The fact is that the Court (Hall, J.), after considering all of the evidence before it, pronounced in its decision that the viability of Defendants' exhaustion defense would have to be assessed by the trier of fact. As shown more fully below, the law in the Second Circuit has clearly established that an evidentiary hearing is inappropriate at this time because there has already been a ruling based upon the evidence presented and the Court has held that the exhaustion issue must go to the jury.

---

[1] As discussed more fully below, the Court treated Defendants' Motion to Dismiss as a Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, while an inmate at Hartford Correctional Center, and to the knowledge of Defendant Drummond, became the target of a hostile inmate. Despite having this knowledge, Defendant Drummond was indifferent to Plaintiff's safety and purposely left the two inmates in the same room unsupervised. Plaintiff was subsequently assaulted and suffered a fracture of his left arm. After the assault, Plaintiff was repeatedly denied proper medical care for a period of five days by, *inter alia*, Defendants Channer, Maciag and Villarini. After enduring this ordeal, Plaintiff sought redress and followed the prison grievance procedure, filing several grievances in connection with the assault and the denial of medical care.

After receiving no responses to his grievances, Plaintiff filed this Civil Rights action on or about November 27, 2000. On or about July 1, 2002, Defendants filed a Motion to Dismiss, alleging that Plaintiff had failed to exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a). The Court (Hall, J.) treated the Motion to Dismiss as a Motion for Summary Judgment pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure and denied the motion, holding that "resolution of this issue requires a credibility determination by the finder of fact." Ruling on Defendants' Motion to Dismiss [Dkt. No. 30] at 8. Defendants, apparently unhappy with the Court's ruling, are now seeking to circumvent the Court's mandate and revisit the exhaustion issue prior to trial.

## ARGUMENT

### I.    IT IS IMPROPER FOR DEFENDANTS TO SEEK A SECOND BITE AT THE APPLE

Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

110163362v1

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of a motion for summary judgment is to determine "whether there is a genuine need for trial." Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e); *see also Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944) ("purpose of the rule is not to cut litigants off from their right of trial by jury"); *United States v. Bailey*, 444 U.S. 394, 412 n.9 (1980) ("the question whether a particular affirmative defense is sufficiently supported by testimony go to the jury may often be resolved on a motion for summary judgment").

Defendants, believing there was not a genuine need for trial, submitted a motion to dismiss arguing that Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e. Judge Hall treated this motion to dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b) and 56, and accordingly, this Court reviewed the motion to dismiss as well as "affidavits, a copy of Barile's deposition and documentary evidence" submitted by Defendants. Ruling on Defendants' Motion to Dismiss [Dkt. No. 30] at 1-2. After reviewing the foregoing (as well as Plaintiff's opposition thereto), the Court denied Defendants' motion to dismiss, finding that there are genuine issues of material fact, and consequently a need for trial.

Despite this unambiguous decision from the Court, Defendants seek to argue once again what this Court has already considered and ruled upon. Defendants are now moving for "an evidentiary hearing to the Court for the purpose of determining whether or not the plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)." By seeking the same relief for a second time, Defendants are improperly seeking a second bite at the apple, and accordingly, the Motion must be denied. *See e.g. Kerman v. City of New York*, 374 F.3d 93, 112 (2d Cir. 2004) (Second Circuit case law does not allow a "district

3

court to grant judgment as a matter of law on essentially the same record on which [it has been] ruled that summary judgment is inappropriate because there exist factual issues that must be tried"); *Morris v. Amalgamated Lithographers of America, Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998) (denying defendant "second bite at the apple" on issue that was "at the heart of its motion for summary judgment").

## II.    EXHAUSTION IS AN AFFIRMATIVE DEFENSE AND THUS BELONGS BEFORE THE JURY

Defendants incorrectly assert in the Motion that "the Second Circuit has never specifically addressed" whether exhaustion is an affirmative defense or has some other "procedural status."[2]   Contrary to Defendants' assertion, the Second Circuit has unambiguously stated that "[i]t is now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional, and that it is an affirmative defense." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citations omitted).   Defendant provides an interesting tour of the law of several Circuits on the subject of exhaustion, without stopping and focusing on the reasoned opinions controlling in the Second Circuit.

In an indirect manner, Defendants attempt to assert that exhaustion is a jurisdictional issue that does not belong before a jury.  Defendants contradict themselves by first acknowledging that "nearly every Circuit Court has ... determined that exhaustion is not a jurisdictional hurdle," and then going on to advocate the application of a Ninth Circuit approach

---

[2]  Defendants dismiss *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999) as "dicta," even though the Second Circuit clearly stated in that case "a defendant in a prisoner 1983 suit may also assert as an affirmative defense the plaintiffs failure to comply with the PLRA's requirements." *Id.* at 28-29.  Defendants make this assertion despite the fact that this Court has already noted "[i]n this Circuit, failure to exhaust administrative remedies is considered an affirmative defense that must be pleaded *and proved* by the defendants." Ruling on Defendants' Motion to Dismiss [Dkt. No. 30] at 7 (citing to *Jenkins*) (emphasis supplied).

4

that treats exhaustion as a jurisdictional issue as to which there is no right to a jury trial.[3]

Defendants' tip-toeing around this issue doe not change the fact that the Second Circuit has held

exhaustion is **not** a jurisdictional issue and that it is well established in the Second Circuit that

the exhaustion defense is an issue for the trier of fact. *See Ziemba, supra* at 163 (exhaustion is

not jurisdictional); *Preslar v. Tan*, No. 00-CV-6103 CJS, 2003 U.S. Dist. LEXIS 2688, at *18

(W.D.N.Y. Feb. 6, 2003) (finding "material issue of fact for resolution by the jury"); *Boomer v.*

*Grant*, No. 00 CIV. 4709 (DLC), 2002 U.S. Dist. LEXIS 20704 (S.D.N.Y. Oct. 29, 2002)

("evidence creates issues of fact regarding Boomer's exhaustion of his administrative remedies");

*Croswell v. McCoy*, No. 9:01-CV-00547, 2003 WL 962534, at *5 (N.D.N.Y. Mar. 11, 2003)

(finding it "unclear whether or not Croswell has exhausted his administrative remedies" and

recommending denial of cross-motion for summary judgment on exhaustion); *Evans v. Jonathan*,

253 F. Supp. 2d 505, 509 (W.D.N.Y. 2003) (denying motion for summary judgment on

exhaustion due to existence of issue of material fact); *Evans v. Nassau County*, 184 F. Supp. 2d

238, 245 (E.D.N.Y. 2002) (denying motion to dismiss due to disputed factual allegations);

*Madison v. Wright,* No. 02 Civ. 10299 (RWS), 2004 WL 816429, at *1-2 (S.D.N.Y. Apr. 13,

2004) (where nonexhaustion is not clear from complaint, exhaustion defense should be dealt with

at summary judgment).[4]  Accordingly, this Court must follow the uncontroverted law of the

Second Circuit and deny the Motion in its entirety.

---

[3] Defendants advocate the Ninth Circuit approach despite the fact that a case to which they cite, *Scott v. Gardner*, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) clearly states "the Second Circuit has not adopted the Ninth Circuit's approach."

[4] Copies of the unreported *Croswell* and *Madison* opinions are submitted herewith.  All other unreported decisions cited herein were previously submitted to the Court with Defendants' Memorandum of Law in Support of Motion for Evidentiary Hearing Re Exhaustion.

110163362v1

## III.    CASE LAW CITED BY DEFENDANTS IS DISTINGUISHABLE

Defendants rely primarily on two non-binding and inapposite cases for the proposition

that they may ignore the Court's ruling and take the exhaustion issue from the jury: *Crawford v.*

*Braun*, No. 99 Civ. 5851 (RMB)(JCF), 2002 U.S. Dist. LEXIS 23318 (S.D.N.Y. Oct. 28, 2002)

and *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999).  These cases are clearly

distinguishable from the case at bar.

In *Crawford*, District Judge Berman undertook a *de novo* review of Magistrate Judge

Francis's recommendations with regard to the defendants' motion for summary judgment.  The

Magistrate Judge recommended that defendants' motion be denied with regard to exhaustion of

administrative remedies because there were disputed issues of material fact.  Rather than

accepting the Magistrate Judge's recommendation, the Court referred the issue back to

Magistrate Judge Francis for "further report and recommendation."  *Id.* at *9.  This situation is

procedurally distinct from the case at bar.  First, under Section 636(b)(1) of the Judicial Code, 28

U.S.C. § 636(b)(1), when reviewing the recommendations of the Magistrate Judge, the District

Judge may "receive further evidence or recommit the matter to the magistrate judge with

instructions".  Second, and most importantly, here -- unlike in *Crawford* -- the Court has already

ruled on the exhaustion issue at summary judgment.

Defendants rely on *Crawford* because it is the only decision in this Circuit where the

exhaustion defense was examined at a pre-trial evidentiary hearing.  *Crawford*, however, is an

aberration of the case law in this Circuit.  *Crawford*, an unreported decision from the Southern

District of New York, has not been cited by any Court for the proposition that an evidentiary

hearing on exhaustion of administrative remedies ***must*** be held prior to trial.  Defendants

6

concede in their Motion that subsequent case law in this Circuit has not followed the approach they advocate.

Specifically, Defendants note that *Preslar*, *supra*, is contrary to their position. In *Preslar*, the Court stated "[e]xhaustion is a threshold question ... requiring resolution prior to the Court's determination of summary judgment on that ground." *Id.* at *10 (citing to *Crawford* at *3). The *Preslar* Court, like the Court here, examined the exhaustion issue prior to trial. Also like the case at bar, the *Preslar* Court denied defendants' motion for summary judgment "because the evidence presented on this motion creates a material issue of fact for resolution by the jury regarding plaintiff's exhaustion of administrative remedies." *Id.* at *18.

Defendants also contend they receive support from a case from the Eastern District of Virginia, *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999). Defendants correctly state in their Motion that in *Johnson*, Judge Ellis referred the issue of exhaustion to a Magistrate Judge for an evidentiary hearing. *Johnson*, like *Crawford*, is procedurally distinct from the case at bar in that the Court did not rule on summary judgment prior to ordering the evidentiary hearing. After a lengthy analysis where the Court concluded that the exhaustion requirement applied to the case at hand, Judge Ellis acknowledged that "it is necessary to address the question whether this plaintiff complied with that requirement in this instance." *Id.* at 328-29. This is not a situation like the case at bar, where the Court has already analyzed whether Plaintiff exhausted his administrative remedies and ruled that disputed issues must go to the trier of fact. Accordingly, this Court must follow Judge Hall's decision and Defendants' Motion must be denied in its entirety.

7

110163362v1

## IV.    IT IS NOT IN THE INTEREST OF JUDICIAL ECONOMY TO REVISIT THE EXHAUSTION ISSUE

In addition to being procedurally improper, it is an improper waste of judicial resources for the Court to rehear an issue upon which it has already rendered an opinion.  Defendants, ignoring this Court's ruling and Plaintiff's right to a jury trial, are impermissibly seeking to reargue what the Court has already considered.  Defendants assert that a hearing on exhaustion "is far more cost-efficient than the trial to a jury it may obviate."  Defendants' argument is completely without basis under the law -- Defendants are asserting that because they may be successful at an evidentiary hearing (a position which the law and facts at bar do not support), their Motion should be granted.  This runs counter to basic principles of justice -- Defendants do not get to continue to revisit an issue until they received the desired answer.  Defendant's Motion, neither expedient nor procedurally sound, seeks to misuse judicial resources in revisiting an issue that belongs before the jury.  Accordingly, the Motion must be denied in its entirety.

110163362v1

## CONCLUSION

Forth the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion be denied in its entirety.

<div style="margin-left: 40%;">

PLAINTIFF
KEITH BARILE

By: _____

Henry K. Snyder (ct 17242)
Daniel J. Richert (ct 25302)
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT  06904
Tel. 203-348-2300
Fax. 203-965-8226
hsnyder@pillsburywinthrop.com
drichert@pillsburywinthrop.com

</div>

9

## CERTIFICATE OF SERVICE

I certify that on this 9th day of August, 2004, I caused an original copy of the attached

Plaintiff's Memorandum in Opposition to Defendants' Motion for Evidentiary Hearing to be

served by First Class U.S. Mail and facsimile upon the following counsel for Defendants:

>Steven R. Strom, Esq.
>Lynn D. Wittenbrink, Esq.
>Attorney General's Office
>110 Sherman Street
>Hartford, CT  06105

Daniel J. Richert (ct 25302)

110163362v1

Westlaw.

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
(Cite as: 2003 WL 962534 (N.D.N.Y.))

Page 1

C
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.

John CROSWELL, Plaintiff,
v.
Joseph E. MCCOY, Superintendent, Cayuga
Correctional Facility; Joseph Lippa,
Correction Officer, Cayuga Correctional Facility,
Defendants.

No. Civ.9:01-CV-00547.

March 11, 2003.

Inmate sued superintendent of correctional facility and a correction officer under § 1983, asserting violations of his civil rights under the First and Eighth Amendments. On cross-motions for summary judgment, the District Court, Gary L. Sharpe, United States Magistrate Judge, held that: (1) genuine issues of material fact existed as to whether the inmate exhausted his administrative remedies; (2) inmate's allegations were insufficient to show that he suffered from a serious medical condition; (3) inmate failed to prove that he was retaliated against for filing a grievance requesting the use of a larger room to conduct meetings of a religious organization; and (4) defendants were entitled to qualified immunity.

Defendants' motion granted.

West Headnotes

[1] Federal Civil Procedure ⟶2491.5
170Ak2491.5 Most Cited Cases

Genuine issues of material fact as to whether an inmate filled out the bottom of a grievance form so as to appeal precluded summary judgment as to whether the inmate exhausted his administrative remedies, as required by the Prison Litigation Reform Act (PLRA). 42 U.S.C.A. § 1997e(a).

[2] Prisons ⟶17(2)
310k17(2) Most Cited Cases

[2] Sentencing and Punishment ⟶1546
350Hk1546 Most Cited Cases

Inmate's allegations were insufficient to show that he suffered from a serious medical condition, thus defeating his claim that a correction officer was deliberately indifferent to his health and safety when the officer required him to clean pesticide residue from an exterminated beehive; the inmate simply had wheezing, which was not uncommon for persons with asthma, and a headache. U.S.C.A. Const. Amend. 8; 42 U.S.C.A. § 1983.

[3] Constitutional Law ⟶91
92k91 Most Cited Cases

[3] Prisons ⟶4(14)
310k4(14) Most Cited Cases

Inmate failed to prove that he was retaliated against for filing a grievance requesting the use of a larger room to conduct meetings of a religious organization, thus defeating the inmate's First Amendment claim; correction officer's requiring the inmate to clean pesticide residue was not an adverse action, and in any event was not shown to be causally related to the grievance, and the superintendent was not shown to have disregarded the request, would have moved the meetings to another location if necessary, and was not involved in a transfer of the inmate. U.S.C.A. Const. Amend. 1; 42 U.S.C.A. § 1983.

[4] 78k1376(7) Most Cited Cases
      (Formerly 78k214(7))

**It was objectively reasonable for a correction officer to believe that requiring an inmate to clean pesticide residue did not violate the inmate's constitutional rights, and thus, the officer was entitled to qualified immunity in the inmate's § 1983 suit; the officer did not violate a clearly established right when he relied on the department of correctional services for the appropriate usage of toxic materials at the prison. 42 U.S.C.A. § 1983.**

[5] 78k1376(7) Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
(Cite as: 2003 WL 962534 (N.D.N.Y.))

(Formerly 78k214(7))

**It was objectively reasonable for a superintendent of a correctional facility to deny an inmate's request for a larger room to conduct meetings of a religious organization and thus, the superintendent was entitled to qualified immunity in the inmate's section 1983 suit; the superintendent relied on a memorandum stating that the room provided for the meetings was "more than adequate." 42 U.S.C.A. § 1983.**

[6] 78k1376(7) Most Cited Cases
(Formerly 78k214(7))

**Transfer of an inmate would have been a lawful exercise of prison superintendent's authority had he been involved, in light of a prison policy mandating a transfer whenever a civilian employee was assaulted by an inmate, and thus, the superintendent was entitled to qualified immunity regarding the allegedly retaliatory transfer in the inmate's § 1983 suit. 42 U.S.C.A. § 1983.**

John Croswell, Massapequa, NY, Plaintiff, pro se.

Hon. Eliot Spitzer, Attorney General State of New York, Department of Law, The Capitol, Litigation Bureau, Albany, New York, for the Defendants.

Sean M. Seely, Asst. Attorney General, of counsel.

*REPORT-RECOMMENDATION*

SHARPE, Magistrate J.

I. *INTRODUCTION* [FN1]

> FN1. This matter has been referred to the undersigned for a Report-Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

*1 On June 3, 2002, plaintiff, *pro se* John Croswell filed a motion for summary judgment (*Dkt. No. 29* ). On June 10, 2002, defendants Joseph Lippa and Joseph McCoy filed a cross-motion for summary judgment (*Dkt. No. 34* ). On June 24, 2002, Croswell filed a response in opposition to the cross-motion (*Dkt. No. 42* ). After reviewing Croswell's claims and for the reasons set forth below, this court recommends

denying Croswell's motion for summary judgment and granting the defendants' cross-motion for summary judgment for only the reasons stated.

II. *Background*

Croswell brings this action under 42 U.S.C. § 1983 claiming that the defendants violated his civil rights under the First and Eighth Amendments. Specifically, Croswell moves for summary judgment claiming that: (1) Lippa was deliberately indifferent to his health and safety; (2) McCoy transferred him in retaliation for filing various grievances with the Inmate Grievance Review Committee ("IGRC"); (3) McCoy is liable for being grossly negligent in managing his subordinate; and, (4) unnamed defendants provided him with inadequate medical treatment while at the Upstate Correctional Facility.

The defendants filed a cross-motion for summary judgment based on the following: (1) Croswell failed to exhaust his administrative remedies concerning his pesticide exposure claim; (2) Croswell failed to state an Eighth Amendment claim; (3) Croswell failed to state a First Amendment claim; and, (4) they are entitled to qualified immunity. The court shall address each of these issues *seriatim.*

III. *FACTS*

A. *Pesticide Incident*

On September 5, 2000, as part of Croswell's inmate job assignment, he was ordered to clean pesticide residue from an exterminated beehive at the Cayuga Correctional Facility. He informed Lippa that he was asthmatic and requested a protective mask. Lippa refused to provide a mask and as a result, Croswell inhaled a considerable quantity of pesticide. Following the completion of his work assignment, Croswell requested permission to report to the infirmary because he was wheezing and had a severe headache.

B. *Medical Treatment*

Croswell was treated by Nurse Timothy Burns. Burns detected some slight bi-lateral wheezing. Burns prescribed 4 tylenol tablets and offered a nebulizer treatment which Croswell refused. Croswell took two tylenol and went to use an inhaler that he had in his cell. He did not seek additional medical attention until three days later, and the issue was unrelated to any respiratory difficulty.

C. *Grievances*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
**(Cite as: 2003 WL 962534 (N.D.N.Y.))**

Page 3

### 1. Nation Of Islam Grievance

On September 5, 2000, the same day as the pesticide incident, Croswell filed a grievance on behalf of the Nation of Islam ("NOI") requesting a larger room to conduct meetings. The IGRC recommended granting his request to the extent that NOI meetings could be moved to a larger room when the number of inmates attending called for a larger venue. On September 8, 2000, Imam Saad Sahraoui submitted a memorandum indicating that there were only 23 inmates declared as NOI members at the time, and noted that the room used to conduct services was "more than adequate." (*Defs. ['] Cross-Mot. for Summ. J., Ex. D* ).

**\*2** Croswell appealed the recommendation and McCoy, in reviewing the IGRC's recommendation, stated in relevant part that:

> [An][i]investigation reveals that there were only 25 registered members of the NOI at the time this griev[ance] was filed. The registered membership has risen to 46 since that time but with fewer than 30 inmates attending services on a regular basis. I find no reason to move the NOI services or classes to a larger room at this time. Should there be a need for such in the future, a suitable location will be selected.

(*Defs. ['] Cross-Mot. for Summ. J., Ex. F* ). Croswell appealed the decision to the Central Office Review Committee ("CORC") which subsequently denied his grievance. (*Defs. ['] Cross-Mot. for Summ. J., Ex. G* ).

### 2. Pesticide Exposure Grievance

On September 18, 2000, Croswell filed a grievance concerning the pesticide exposure of September 5. In responding to the grievance, McCoy stated the following:

> [T]he Material Safety Data Sheets for the product used indicated that inhalation is unlikely due to the large size of the particles. It also provides that no respiratory or eye protection is required for application nor gloves required. The product also carries a Health Risk Rating of 1(low).

(*Defs. ['] Cross-Mot. for Summ. J., Ex. I* ). McCoy determined that Croswell's health and safety were not placed in jeopardy by assigning him to clean up the residue.

### D. Misbehavior Report and Transfer

On October 9, 2000, Croswell was charged with assaulting a civilian employee. Specifically, he was charged with grabbing a female civilian employee

nurse's buttock in the prison infirmary. The hearing was conducted by McCoy's designee. Croswell was found guilty and he was sentenced to 270 days in the Special Housing Unit ("SHU"). He was also transferred to Upstate.

### IV. Discussion

### A. Legal Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*; *accord F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994)*. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*; *Thomas v. Roach, 165 F.3d 137, 142 (2d Cir.1999)*. "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir.2000)*. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexford Holdings, Inc. v. Biderman, 21 F.3d 522, 525 (2d Cir.1994)* (alternation in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999)*.

**\*3** Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)*; *see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)*; *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)*(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck, 710 F.2d*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
**(Cite as: 2003 WL 962534 (N.D.N.Y.))**

90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.*, 50 F.3d 165, 171 (2d Cir.1995).

This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 00-CV-3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot*, 00-CV-1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002)(*interalia* citing *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 00-CV-260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470-71. With this standard in mind, the court now turns to the sufficiency of Croswell's claims.

B. *Exhaustion: Prison Litigation Reform Act*

[1] Before addressing the substance of Croswell's claims, the court must first consider whether he properly exhausted his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that suits brought by prisoners under 42 U.S.C. § 1983 must first exhaust their available administrative remedies. [FN2] Recently, the Supreme Court held that the PLRA exhaustion requirement applies to all inmate suits. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Court has further held that the PLRA requires that administrative exhaustion even where the grievance process does not

permit award of money damages and the prisoner seeks only money damages, so long as the grievance tribunal has authority to take some responsive action. *See Booth v. Churner*, 531 U.S. 731, 741 (2001). However, "a dismissal of an action for failing to comply with the PLRA is without prejudice." *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.2002).

> FN2. "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

*4 The New York State Inmate Grievance Program involves three steps. First, an inmate must submit a grievance to the clerk of the I.G.R.C. within 14 days of the alleged occurrence. 7 NYCRR § 701.7[a]. The I .G.R.C. is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair. 7 NYCRR § 701.4. Next, a party to the grievance may appeal to the superintendent within four working days after receipt of the I.G.R.C.'s written response. As a general rule, the superintendent or his designee must issue a decision within ten working days of receipt of the appeal. 7 NYCRR § 701.7[b]. Then, a party to a grievance may appeal the superintendent's action to the C.O.R.C. which consists of the deputy commissioners or their designees. 7 NYCRR § 701.6.

If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA. *Reyes v. Punzal*, 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) (citation omitted). Furthermore, simply writing letters of complaint to the superintendent is insufficient to comply with the requirement that a plaintiff must exhaust his administrative remedies. *See Houze v. Segarra*, 217 F.Supp.2d 394, 396 (S.D.N.Y.2002)(citing *interalia Betty v. Goord*, 210 F.Supp.2d 250, 255-256 (S.D.N.Y.2000)); *see also, Meehan v. Frazier*, 2002 U.S. Dist LEXIS 20604, at *11-12; *Hemphill v. New York*, 198 F.Supp.2d 546, 549 (S.D.N.Y.2002).

However, an inmate may fulfill the PLRA's exhaustion requirement where he: (1) relies on a prison officials' representations that correct procedure was followed; or (2) makes a "reasonable attempt" to exhaust administrative remedies, especially where it is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
(Cite as: 2003 WL 962534 (N.D.N.Y.))

Page 5

alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts; and, (3) the state's time to respond to the grievance has expired. *O'Connor v. Featherston,* 01-CV-3251, 2002 WL 818085, *2 (S.D.N.Y. Apr.29, 2002) (citations omitted).

Croswell indicates in his complaint that he did not present the facts to the prisoner grievance program. (*Compl., P. 2, ¶ 4* ). However, in Croswell's response papers, he asserts that he made every effort possible to exhaust all avenues of administrative relief before seeking redress through the court in his pesticide [FN3] grievance. Croswell provides the court with a copy of his pesticide grievance which shows that he filled out the bottom of the form to appeal to the CORC (*Croswell Aff., Exs. D & E; Dkt. No. 42).* He also provides a letter from Thomas Eagen indicating that he did not receive Croswell's appeal concerning the pesticide exposure grievance. Croswell maintains that "once Eagen denied having ever received plaintiff's appeal ... plaintiff's avenues of administrative relief, with regard to said grievances, had been exhausted pursuant to time guidelines." (*Pl. ['s] Mem. Opp'n to Defs. ['] Cross-Mot. for Summ. J., P. 2; Dkt. No. 42* ).

> FN3. It appears that Croswell did exhaust his administrative remedies concerning his NOI grievance.

*5 In contrast, the defendants provided a copy of Croswell's pesticide grievance which was not filled out at the bottom to indicate that he wanted to appeal to the CORC (*Seely Aff., Ex. I* ). The defendants contend that he failed to appeal McCoy's decision denying the pesticide grievance to the CORC. As such, the defendants urge the court to strike this claim since he has failed to exhaust his administrative remedies in regards to his pesticide grievance.

This court finds that it is unclear whether or not Croswell has exhausted his administrative remedies in his pesticide claim. Despite the defendants' claim that Croswell failed to fill out the bottom of his grievance form for his pesticide claim, Croswell insists that he did appeal and that the appeal never arrived. It is apparent that Croswell was familiar with the grievance process and the requirement to exhaust. Nonetheless, it may well be that Croswell has failed to exhaust his administrative remedies. However, without more information, the court cannot as a matter of law find that Croswell failed to exhaust his administrative

remedies. Accordingly, this court recommends that the defendants' cross-motion for summary judgment based on Croswell's failure to exhaust his administrative remedies should be denied.

*C. Eighth Amendment*

[2] Croswell claims that Lippa was deliberately indifferent to his health and safety when he required him to clean pesticide residue from an exterminated beehive. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble,* 429 U.S. at 102. Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society." ' *Id.* (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain." ' *Id.* at 103 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)).

A state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. See *Estelle,* 429 U.S. at 103. The essence of an improper medical treatment claim lies in proof of "deliberate indifference to serious medical needs." *Id.* at 104. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105.

*6 The standard of deliberate indifference includes

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
(Cite as: 2003 WL 962534 (N.D.N.Y.))

Page 6

both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety." ' *Id.* (quoting *Farmer,* 511 U.S. at 837). " 'The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ' *Id.*

However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. *See Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. April 9, 1998) (citation omitted). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. *See Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. *See Murphy,* 1998 WL 166840, at *4 (citation omitted).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated some of the factors to be considered when determining if a serious medical condition exists, including " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." ' *Chance,* 143 F.3d at 702-703 (citation omitted).

In this case, Croswell asserts that he had wheezing and he suffered from a severe headache subsequent to cleaning the pesticide residue. He maintains that since the inhalation of the pesticide, he has had to undergo nebulizer treatments, was prescribed a steroid medication and has been treated for chronic bronchitis. He claims that he is currently suffering from gastrointestinal bleeding. Croswell maintains that even after Lippa admitted familiarity with the toxic substances directives, he still opted to order Croswell to remove the pesticide residue in violation of his rights.

The defendants contend that Croswell has failed to allege that Lippa was deliberately indifferent to his serious medical needs. They maintain that Croswell did not suffer from a serious medical need. Furthermore, Croswell was permitted to report to the infirmary immediately after the incident occurred. Burns noted wheezing but no shortness of breath (*see Seely Aff.,* ¶ 5; Dkt. No. 40 ). Burns attests that the detection of slight wheezing in an individual having a history of asthma is not uncommon or indicative of a health problem. *Id.* Burns noted that other than a headache, Croswell appeared to be in no acute distress. *Id.* at ¶ 5.

*7 In addition, the defendants argue that even if the court found that Croswell suffered from a serious medical condition, Lippa did not possess the requisite culpable intent. Moreover, Lippa relied on the Department of Corrections Services ("DOCS") to use only those materials that were appropriate and suitable for usage. Finally, the defendants claim that Croswell's claim accusing them of negligence is not actionable under § 1983.

This court finds that Croswell has failed to state an Eighth Amendment violation. It is evident that Croswell did not suffer from a serious injury or the presence of a medical condition that significantly affected his daily activities. Croswell admitted that he was provided with prompt medical attention, including pain medication. He also conceded that he deferred on the nebulizer treatment since he was reluctant to be away from this work detail for fear he would be given an inmate misbehavior report. Croswell also admitted that the nurse directed him to go to his cell and use his regular inhaler and then report back to his work detail.

As noted, a plaintiff may show deliberate indifference by corrections officers if they attempt to deny or delay an inmate's access to medical care or if they intentionally interfere with an inmate's treatment. Even if the court found that Croswell suffered from a serious medical condition, the record is clear that Lippa did not deny, delay or interfere with his treatment. In fact, Croswell was seen immediately and he was given medication to alleviate the problem.

Furthermore, Lippa attests that it was not his function to determine the type of materials that were suitable for usage. Croswell asserts no fact which shows that Lippa intentionally attempted to cause him harm by exposing him to toxic substances. Despite his bald assertions to the contrary, he simply had wheezing which is not uncommon in persons with asthma and a headache. These allegations are insufficient to show that he suffered from a "serious" medical condition

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
(Cite as: 2003 WL 962534 (N.D.N.Y.))

and that the defendants were deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendants' cross-motion for summary judgment should be granted in regards to Croswell's Eighth Amendment claim.

D. *First Amendment*

[3] Croswell accuses the defendants of retaliating against him for filing a grievance on behalf of the NOI. The Second Circuit has held that retaliation against a prisoner for pursuing a grievance is actionable under § 1983. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Moreover, the Second Circuit has recognized both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated. Thus, prisoners' claims of retaliation are examined with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10 (2d Cir.1983).

In *Dawes v. Walker,* [FN4] 239 F.3d 489 (2001), the Second Circuit recited the factors that must be asserted in a retaliation complaint in order to survive summary dismissal. Thus, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and, (3) that there was a causal connection between the protected speech and the adverse action. *Id .* at 492 (citation omitted). The court stated that "to adequately plead an adverse action, a plaintiff must allege that the defendants subjected him to 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." ' *Morales, 278 F.3d at 131* (2d Cir.2002)(quoting *Dawes,* 239 F.3d at 492). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 492.

> FN4. Dawes' complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

*8 In this case, Croswell filed a grievance requesting the use of a larger room to conduct NOI meetings. He contends that Lippa asked him to clean the pesticide residue to punish him for filing that grievance. He also maintains that McCoy ordered the removal of names from the NOI class roster in an effort to neutralize the

grievance that he filed. Lastly, Croswell claims that McCoy ordered him to be transferred in retaliation for filing complaints against him and his subordinates.

The defendants argue that Croswell's conclusory allegation that Lippa retaliated against him for filing a grievance is untrue. They contend that Lippa was unaware of the filed grievance when he ordered him to clean the pesticide residue. Moreover, the grievance did not involve Lippa. Lippa attests that even if the grievance would have been filed against him, he would not have been told the same day.

In addition, the defendants argue that there is nothing in the record which shows that McCoy retaliated against Croswell when he denied the NOI request for a larger room. Imam Sahraoui's statement that the room was adequate for the NOI members was used by McCoy to deny the request for a larger room. Furthermore, if the need arose, McCoy would move the NOI meetings to a more suitable location.

Lastly, the defendants contend that Croswell cannot demonstrate that McCoy transferred him in retaliation for filing his grievances. Kelly Huffman, a Corrections Counselor at Cayuga, attests that McCoy played no role in Croswell's administrative hearing or the decision to transfer him (*Huffman Aff.,* ¶¶ 6, 8-9 ). Moreover, Croswell's transfer occurred as a matter of course since he was found to have assaulted a civilian employee nurse (*Huffman Aff.,* ¶ 6). Furthermore, the defendants contend that even if McCoy was involved in Croswell's transfer, it was a result of being found guilty of violating a prison policy and not for filing grievances.

This court finds that Croswell asserts no set of facts which, if true, would show that Lippa and/or McCoy retaliated against him. It is undisputed that Croswell has a right to file a grievance and that this conduct is protected. However, Croswell fails to meet the second and third prong of a retaliation claim. Croswell has failed to show how the defendants took an adverse action against him. Lippa relied on DOCS to use materials which were appropriate for usage. As such, this court cannot find that Lippa took an adverse action.

However, even if the court found that requiring Croswell to clean the pesticide residue was an adverse action, he has failed to show that there was a causal connection between the protected speech and the adverse action. There is nothing in the record which shows that Lippa knew of the grievance filed the same day that he required Croswell to clean the pesticide

residue. As previously mentioned, the grievance did not involve Lippa and even if it did, he attests that he would not have been informed of the grievance the same day. Moreover, there would not have been any reason to have informed Lippa about the grievance since he was not involved.

**\*9** Croswell's conclusory allegation that McCoy retaliated against him when he denied his request for a larger room for the NOI meetings is also without merit. Croswell fails to provide any proof which purports to show that McCoy erased records or that he somehow disregarded his request. Inman Sahraoui indicated that the NOI did not need more space. McCoy noted that there was an increase of registered NOI inmates since the grievance was filed. However, it was also noted that fewer than 30 inmates attended the meetings. As previously mentioned, if the need arose, McCoy would move the NOI meetings to a more suitable location.

Thus, the court cannot find that McCoy took an adverse action against Croswell because he exercised his right to file a grievance. In addition, as the defendants correctly point out, there is nothing in the record which purports to show McCoy was involved in Croswell's transfer to Upstate. Moreover, even if McCoy would have been involved in the transfer, Cayuga had a policy to transfer an inmate whenever an inmate assaulted a civilian employee as a matter of course (*Huffman Aff.*, ¶ 6).

Finally, Croswell has failed to allege facts that show how he was deterred from exercising his constitutional right to file grievances. Croswell continued to file numerous grievances subsequent to the incidents at issue in this case (*Seely Aff., Exs. N-T*)(He filed seven grievances from December 2000 to July 2001). This court notes that Croswell's right to file grievances was not affected by the defendants' conduct in this case. Accordingly, this court recommends that the defendant's cross-motion for summary judgment should be granted as to Croswell's retaliation claim.

### E. *Qualified Immunity*

As an alternative basis to grant dismissal, the defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials who perform discretionary functions in the course of their employment. It shields them from liability for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S.

800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It also protects officials from "the burdens of costly, but insubstantial, lawsuits." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999)(quotation marks and internal citations omitted).

The question of whether qualified immunity will protect a public official depends upon " 'the objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). Furthermore, the contours of the right violated must be sufficiently clear that a reasonable official might understand that his actions violate that right. *Id.* at 640; *Keane,* 196 F.3d at 332. The test for "evaluating whether a right was clearly established at the time a § 1983 defendant acted is: '(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." ' *African Trade & Information Center, Inc., v. Abromaitis,* 294 F.3d 355, 360 (2d Cir.2002). *See also, Charles W. v. Maul,* 214 F.3d 350, 360 (2d Cir.2000).

**\*10** Additionally, the Second Circuit has held that a court may dismiss a claim based upon qualified immunity without first deciding the substantive claims therein. *See Horne v. Coughlin,* 191 F.3d 244 (2d Cir.1999). Also within this decision, the Second Circuit suggested that the qualified immunity issue should be addressed before the substance of a claim. The court shall now consider the defendants' claim that they are entitled to qualified immunity.

[4] In this case, it has been clearly established that inmates have a right to file grievances. However, this court finds that it was objectively reasonable for the defendants to believe that their conduct did not violate Croswell's constitutional rights. Lippa, in relying upon DOCS for the appropriate usage of toxic materials at the prison, did not violate a clearly established right. As Lippa admitted, he did not possess any expertise with respect to pesticides or insecticides. In addition, this expertise was not required in his position as a corrections officer. As such, Lippa is entitled to qualified immunity since a reasonable corrections officer in Lippa's position could not have understood that his acts were unlawful.

[5] McCoy is entitled to qualified immunity

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 962534 (N.D.N.Y.)
**(Cite as: 2003 WL 962534 (N.D.N.Y.))**

concerning Croswell's request for a larger room since his decision was a lawful exercise of his authority. He relied on Imam Sahraoui's statement, dated September 8, 2000, that the room provided for the NOI meetings was "more than adequate." There is nothing in the record which shows that McCoy's decision was unlawful or in violation of a clearly established right. Moreover, the record is clear that McCoy was not involved in Croswell's transfer from Cayuga to Upstate in October of 2000.

[6] In addition, the prison's policy was clear that a transfer was mandated whenever a civilian employee was assaulted by an inmate. As such, even if McCoy would have been involved, the transfer would have been a lawful exercise of his authority. Accordingly, as an additional basis to grant summary judgment, this court recommends that the defendants Lippa and McCoy should be dismissed from this suit because they are entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that Croswell's motion for summary judgment (*Dkt. No. 29* ) be DENIED; and it is further

RECOMMENDED, that the defendants' cross-motion for summary judgment (*Dkt. No. 34* ) based on Croswell's failure to exhaust his administrative remedies claim be DENIED; and it is further

RECOMMENDED, that the defendants' cross-motion for summary judgment (*Dkt. No. 34* ) be GRANTED in regards to Croswell's First Amendment claim; and it is further

RECOMMENDED, that the defendants' cross-motion for summary judgment (*Dkt. No. 34* ) be GRANTED in regards to Croswell's Eighth Amendment claim since he fails to state a claim for which relief can be granted; and it is further

RECOMMENDED, as an additional basis to grant summary judgment, that the defendants' cross-motion for summary judgment be GRANTED based on qualified immunity; and it is further

*11 ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

2003 WL 962534 (N.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 9:01CV00547 (Docket) (Apr. 16, 2001)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Slip Copy
2004 WL 816429 (S.D.N.Y.)
(Cite as: 2004 WL 816429 (S.D.N.Y.))

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

Diallo Rafik Asar MADISON, Plaintiff,
v.
Lester N. WRIGHT, Associate Commissioner, Health
Services, et al., Defendants.

No. 02 Civ. 10299(RWS).

April 13, 2004.

*MEMORANDUM OPINION*

SWEET, J.

*1 Defendants Chief Medical Officer Lester Wright ("Wright"), Superintendent William Mazzuca ("Mazzuca"), Deputy Superintendent D. Schramm ("Schramm"), Superintendent David Miller ("Miller"), Dr. Mikhail Guzman ("Guzman"), Nurse Riley ("Riley"), Superintendent Michael McGinnis ("McGinnis"), and Dr. Alves ("Alves") have moved to dismiss the complaint filed by *pro se* plaintiff Diallo Madison ("Madison") on several grounds, among which is that Madison has failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a). Upon review of the defendants' moving papers, it appears that the exhaustion issue may be dispositive of the claims against several of the defendants. The question of exhaustion should therefore be determined before the merits of the complaint are addressed.

The failure to exhaust administrative remedies is considered by the Second Circuit to be an affirmative defense. *See Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Because the defendants bear the burden of showing non-exhaustion, the "issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion." *Nicholson v. Murphy,* No. 302CV1815, 2003 WL 22909876, at *6 (D. Conn. June 16, 2003). "An exception to this rule is that a

court may dismiss a complaint where failure to exhaust under the PLRA is 'readily apparent' or 'unambiguously established in the record,' as long as the court provides plaintiff with notice and an opportunity to be heard on the issue." *Foreman v. Comm. Goord,* 02 Civ. 7089, 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004) (quoting *Snider v. Melindez,* 199 F.3d 108, 111-14 (2d Cir.1999)).

While Madison's amended complaint makes reference to the grievances that he filed, and even quotes from several grievances, it cannot be "unambiguously established" from the complaint that Madison has failed to exhaust. As in *Foreman,* Madison's "complaint alleges full exhaustion in general terms and provides some details of compliance with the required grievance procedures." *Foreman,* 2004 WL 385114, at *6. In his affidavit in opposition, Madison has attached copies of several relevant grievances in support of his claim that he has exhausted his administrative remedies. However, Madison has not provided the supporting documentation for all grievances referenced in his complaint.

> Under the circumstances, where nonexhaustion is not clear from the face of the complaint, a defendant's motion should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.

*Scott v. Gardner,* 287 F.Supp.2d 477, 485 (S.D.N.Y.2003) (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 248 (S.D.N.Y.2003)); *see also Dawkins v. Jones,* 03 Civ. 0068, 2004 WL 574726, at *1 n. 2 (S.D.N.Y. Mar. 22, 2004) (citing cases).

*2 Accordingly, defendants' motion to dismiss is denied without prejudice to renewal by April 26, 2004 as a combined motion for summary judgment, solely on the issue of exhaustion, and to dismiss pursuant to Rule 12(b)(6). Madison shall have until May 5, 2004 to file opposition papers and defendants until May 12, 2004 to file reply papers.

"Defendants' moving papers should include an affidavit(s) providing necessary information to decide the exhaustion issue, and [should] specifically include

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Slip Copy
2004 WL 816429 (S.D.N.Y.)
**(Cite as: 2004 WL 816429 (S.D.N.Y.))**

copies of [Madison's] grievances, as well as the prison's responses, appeals, etc.". _Dawkins, 2004 WL 574726, at *1_. Defendants shall also serve on Madison a copy of the "Notice to Pro Se Litigants Opposing Summary Judgment" as provided by Local Civil Rule 56.2.

It is so ordered.

2004 WL 816429 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

- 1:02CV10299 _____ Docket)
(Dec. 27, 2002)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works