

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH BARILE | : | PRISONER |
| | : | NO. 3:00CV2253(JCH)(HBF) |
| VS. | : | |
| | : | |
| C.O. DRUMMOND, ET AL. | : | AUGUST 23, 2004[1] |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF HEARING**

The defendants in the above-captioned matter respectfully submit this reply to the plaintiff's Memorandum in Opposition to the defendants' sensible request for an evidentiary hearing on the issue of exhaustion in the above-captioned matter. The defendants will not reiterate their previous arguments except to make clear those points that plaintiff confuses. Rather, this memorandum will address plaintiff's arguments, then discuss how their request is consistent with the Second Circuit's five decisions regarding exhaustion which were issued on August 18, 2004.

A.   **Plaintiff's Memorandum**

First, defendants are compelled to address the shabby characterization of their request as a "disgruntled" attempt at "a second bite at the apple." Pl. Mem. 1. This characterization ignores the elementary distinction between an issue that can be decided by a Court without any credibility determination, and thus on the papers, and one that cannot be so decided. The

---

[1] Defendants sent via federal express a previous version which is lost somewhere. This may be duplicative upon arrival.

defendants are *not* being disingenuous and asking this Court to rule repeatedly on their previous dispositive motion despite the Court's "unambiguous decision" that material issues of fact exist. See P. Mem. 1, 2. (This Court appropriately determined in its ruling on the defendants' previous motion, based on the plaintiff's response, that the issue of exhaustion could not be determined via motion as issues of fact exist.).

Rather, accepting that any exhaustion determination turns on an issue of credibility, the defendants are forthrightly asking this Court to made a credibility determination on the issue of exhaustion prior to a hearing on the merits. Such a determination is consistent with this Court's discretion and with 42 U.S.C. § 1997e(a).

The plaintiff also misstates defendants' argument in claiming that defendants are "attempting to assert that exhaustion is a jurisdictional issue." As the defendants pointed out in their previous memo, every circuit that has considered the question, including the Second Circuit, has concluded that the PLRA's exhaustion requirement is not jurisdictional. At the same time, the Second Circuit considers the exhaustion requirement to be "preliminary". This past Wednesday, the Second Circuit stated, "[T]he District Court must first familiarize itself with the case and hear the position of the parties in *order to decide the exhaustion issue as a **preliminary** matter*." *Ortiz v. McBride,* No. 02-0088, 2004 U.S. App. LEXIS 17234 (2d Cir. Aug. 18, 2004) (emphasis added).[2] The *Preslar* decision relied upon by the plaintiff likewise characterizes

---

[2]   See also the Ninth Circuit decision previously cited by defendants, *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir.), *cert. denied sub nom Alameida, Dir., Ca DOC v. Wyatt,* 2003 U.S. LEXIS 5499 (2003). While the Ninth Circuit, like the Second Circuit, considers the PLRA's exhaustion requirement to be an affirmative defense which the defendants bear the burden of proof on, the

exhaustion as a "threshold question." No. 00-CV-6103 CJS, 2003 U.S. Dist. LEXIS 2688 (W.D.N.Y. 2003). Thus, the exhaustion requirement is undeniably separate and apart from the merits of a case, and able to be decided separate and apart therefrom.

Throughout his brief, the plaintiff continues to collapse the distinction between an issue that must go to a jury and an issue that cannot be determined as a matter of law. The plaintiff cites several cases in which a District Court has denied a summary judgment on the issue of exhaustion when the Court has determined that a genuine issue of fact exists. Pl. Mem 5. What the plaintiff urges these cases to mean goes beyond the cases themselves, that is, the plaintiff reads these cases as comprising "the uncontroverted law of the Second Circuit" that there is a right for an inmate to have a jury decide any factual issues attendant to the exhaustion requirement. With the exception of *Preslar v. Tan*, previously discussed by the defendants in the Memorandum of Law, D. Mem. 6, neither the Second Circuit nor any District Court has held that the denial of summary judgment due to the existence of factual issues on exhaustion means that a plaintiff has the right to have a jury decide those issues. Indeed, while the plaintiff cites numerous cases, he cites no authoritative case addressing the issue and holding that a right to a jury trial adheres for the purpose of determining factual issues on the preliminary issue of exhaustion.

---

Ninth Circuit does not treat exhaustion as something to be decided at a trial to a jury along with the merits of the case, holding "the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a Motion for Summary Judgment." *Id.* at 1119.

3

The plaintiff claims that the published decision from New York relied on by defendants, *Crawford v. Braun,* No. 99 Civ. 5851 (RMB)(JFC), 2002 U.S. Dist. LEXIS 23318 (S.D.N.Y. Oct. 28, 2002) (attached to defendants previous memo), is the "only decision in this Circuit where the exhaustion defense was examined at a pre-trial evidentiary hearing." P. Mem. This is simply not true. Defendants attach two rulings from a single case in this District in which the sensible approach they advocate for in this case was applied in a manner helpful to judicial efficiency. See *Aponte v. Arrington,* 3:99CV847(WWE), Recommended Ruling, March 11, 2003 and Order re Defendants' Motion for Judgment on the Pleadings, Jan. 15, 2003, attached.

The Court appropriately recognized in *Aponte* that the parties' dispute about the availability of the grievance procedure would be a material factual dispute which "would preclude entry of summary judgment." Order, p. 3. The Court ruled as follows:

> Because it is unclear from the deposition transcript whether plaintiff was provided notice of and access to the relevant grievance procedures, and because *both parties* have the right to a "reasonable opportunity to present all pertinent material" ...the court will hold an evidentiary hearing.

Order, Jan. 15, 2003, p. 3.

The Court in *Aponte* conducted its hearing on the preliminary issue of exhaustion and looked at a combination of factors "to conclude that, *as a factual matter* administrative remedies were 'available' to plaintiff." Ruling, March 11, 2003, p. 5. In *Aponte,* this hearing precluded the more lengthy process of jury selection and a trial on the merits. Even if it had not, factual issues pertaining to exhaustion fall within the realm of what a court legitimately determines given the procedural nature of the PLRA's exhaustion requirement.

The plaintiff attempts to distinguish *Crawford, supra,* as in that case no ruling had been made on a summary judgment motion prior to the hearing, as would be the case here. This distinction does little to advance the plaintiff's position, however given the more legitimate distinction between summary judgment, which can only be granted in the absence of any genuine issue of fact, and a hearing for the purpose of resolving material issues of fact.[3] The order in which these might occur does not impact on the appropriateness of a Court hearing to resolve disputed issues of fact on the preliminary issue of exhaustion.

### B.     Recent Second Circuit Decisions

Just this week, the Second Circuit issued five decisions regarding the PLRA's exhaustion requirement. *Ortiz v. McBride,* No. 02-0088, 2004 U.S. App. LEXIS 17234 (2d Cir. Aug. 18, 2004); *Giano v. Goord,* No. 02-0105, 2004 U.S. App. LEXIS 17235 (2d Cir. Aug. 18, 2004); *Hemphill v. State of New York,* 2004 U.S. App. LEXIS 17237 (2d Cir. Aug. 18, 2004); *Johnson v. Trestman,* 02-0145 (2d Cir. Aug. 18, 2004); *Abney v. Dep't. of Correction,* 02-0241 (2d Cir. Aug. 18, 2004).

While none of these decisions specifically address the issue presented in this case, some of the Second Circuit's rulings underscore the correct nature of the approach the defendants urge, and so a brief discussion is warranted. In *Giano,* the Second Circuit notes that it had previously held that "plaintiffs are entitled to notice *and an opportunity to be heard* before a court can

---

[3]     Plaintiffs repeatedly misunderstand this distinction, arguing over and over again that defendants "impermissibly seek . . . to reargue what the Court has already considered." Pl. Mem. 8.

5

dismiss their complaints for failure to exhaust." *Giano, supra,* (emphasis added). It is the Second Circuit's rulings in *Hemphill* and *Abney*, however, that are most enlightening. In *Abney*, the Second Circuit held that in some circumstances the behavior of the defendants may render administrative remedies "unavailable," and thus excused, in the filing of a 1983 claim. In *Hemphill*, the Second Circuit ruled that if prison officials threaten an inmate not to file grievances, the defendants in a lawsuit may be estopped from asserting exhaustion as an Affirmative Defense. Both of these rulings, of necessity, one dealing with alleged "behavior" and one dealing with alleged threats, envisage factual disputes entirely aside from the merits of a Section 1983 lawsuit. It is inconceivable that the Second Circuit intends such determinations to be solely within the province of a jury, and entirely beyond the scope of matters able to be decided by a District Court.

The panel notes in its *Giano* decision, "[I]n *Hemphill,* we deem dismissal of the plaintiff's complaint at the summary judgment stage inappropriate, *and remand for further factual consideration."* *Giano, supra,* (emphasis added). The *Hemphill* decision, while not spelling out how the District Court will accomplish the following, instructs the District Court as follows:

> [T]he District Court must determine (a) to what extent were the remedies Hemphill failed to pursue in fact available; (b) whether, if they were available, some or all of the defendants were estopped [by virtue of alleged threats] from raising Hemphill's failure to pursue them, and (c) whether, if remedies not pursued were available and some of the defendants were not estopped from raising Hemphill's failure to exhaust, Hemphill was nonetheless justified, at the time, in not pursuant available remedies.

*Hemphill, supra,* at Conclusion.

The obvious import of the Second Circuit's instruction to the District Court is that factual findings must be made by the District Court in one manner or another. Perhaps the parties will agree as to some facts, or choose not to dispute them. Perhaps some issues can be resolved without a credibility determination. The remainder of the issues in *Hemphill*, however, which involve alleged threats by correctional personnel likely to dispute the allegations, as well as similar issues in other cases, are likely to turn on credibility determinations. Such determinations are well within the discretion of a District Court. For this Court to hold that only a jury can decide such issues would transform the exhaustion requirement.

Moreover, at no point in any of the five cases issued this week by the Second Circuit is any mention made of any implicit requirement or constitutional right that a jury decide factual issues regarding exhaustion. There is certainly no instruction by the Second Circuit to the District Court to empanel a jury to decide these issues. And while District Courts, in their discretion, may allow a jury to make some of factual determinations bearing on exhaustion, it is at the same time well within their discretion to make such findings on their own preliminary to a trial on the merits.

**Conclusion:**

The defendants respectfully urge that this matter, which involves a sharp dispute as to whether the plaintiff has fabricated grievances or actually filed them, is well-suited to a factual hearing by this Court. The defendants urge that the preliminary nature of the exhaustion requirement, albeit an affirmative defense, makes it an issue separate from the merits of the case, and thus not one in which a jury is required. The plaintiff's syllogisms notwithstanding, a factual

7

hearing in this matter is appropriate, and is consistent with 42 U.S.C. § 1997e(a), with the law within the Second Circuit, and with common sense.

           DEFENDANTS,
           Officer Drummond, et al.

           RICHARD BLUMENTHAL
           ATTORNEY GENERAL

BY: _____
           Lynn D. Wittenbrink
           Assistant Attorney General
           Federal Bar No. ct08575
           110 Sherman Street
           Hartford, CT 06105
           Telephone No.: (860) 808-5450
           Fax No.: (860) 808-5591
           lynn.wittenbrink@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid to the following on this 23rd day of August, 2004:

Henry K. Snyder
Daniel J. Richert
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT 06904

           _____
           Lynn D. Wittenbrink
           Assistant Attorney General

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 MAR 11 P 3:07

US DISTRICT COURT
BRIDGEPORT CT

NICHOLAS APONTE,
    PLAINTIFF,

v.

EDWARD ARRINGTON, ET AL.
    DEFENDANTS

CIV. NO. 3:99CV847 (WWE)

## RECOMMENDED RULING

On May 8, 2002, defendants moved for judgment on the pleadings under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) on the ground that plaintiff failed to exhaust his administrative remedies. [See Def.s' Mot. (doc. # 65).] Plaintiff objected on the ground that no administrative remedies were "available" to plaintiff. [See Pl.'s Opp. (doc. # 69) at p.2.]

On January 16, 2003, this court issued an order, holding, among other things, that: the failure to exhaust administrative remedies under the PLRA is an affirmative defense in the Second Circuit; the failure to exhaust is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings and/or attachments; if the failure to exhaust is readily apparent, the court should quickly dismiss, sua sponte, and without prejudice, so that plaintiff may pursue his or her administrative remedies before any applicable statute of limitations runs; and, if the failure to exhaust administrative remedies under the PLRA is suggested, but not unambiguously established, by way of a motion to dismiss, the court can and should convert the motion to

dismiss into a motion for summary judgment and order further briefing and/or evidence. [Order re Defendants' Motion for Judgment on the Pleadings, Jan. 16, 2003 (doc. # 72) at pp. 1-2.] See also Torrence v. Pesanti, --- F.Supp.2d ----, 2003 WL 118217 (D. Conn. Jan 10, 2003) (Fitzsimmons, J.).

Recognizing a factual dispute in the parties' memoranda regarding the "availability" of administrative remedies, the court held an evidentiary hearing on February 21, 2003. Defendants argued that the hearing was unnecessary, and in fact unlawful, because it is undisputed that administrative remedies were enacted as of the date of plaintiff's injury and that plaintiff did not use them.[1] Plaintiff, however, argued that "availability" means more than "active and in place" - that there is some element of awareness, notice, and/or practical access to those administrative remedies. Alternatively, defendants argued that any requirement of "notice" or "awareness" was satisfied as a factual matter.[2]

After hearing the testimony of Warden Dzurenda and plaintiff, the court finds the following. Plaintiff was

---

[1] Defendants' position was therefore somewhat different than the one taken in their memorandum, which led the court to note in its ruling that: "Defendants do not dispute [plaintiff's] legal argument [that "availability" encompasses some element of notice], but rather argue that plaintiff admitted being provided with the inmate manual upon admission to the institution." [Order re Defendants' Motion for Judgment on the Pleadings, Jan. 16, 2003 (doc. # 72) at p. 2.]

[2] Defendants called two witnesses: Warden James Dzurenda and plaintiff Nicholas Aponte. Defendants also submitted one exhibit: the New Haven Community Correctional Center Inmate Handbook from 1996.

2

initially incarcerated at the New Haven Community Correctional Center ("NHCCC") in August 1995, and completed the orientation program. At the orientation program, plaintiff received a handbook, and signed a form acknowledging receipt. He did not read the handbook.

At his own request, plaintiff was placed in administrative segregation and protective custody three or four days after entering the facility. When plaintiff was removed from general population to administrative segregation, prison officials confiscated plaintiff's handbook. Plaintiff did not read the handbook during his three or four days in general population. Plaintiff did not request another handbook after being placed in segregation.

In November 1995, plaintiff was transferred to the Hartford Correctional Center ("HCC"). He did not go through an orientation program there, and received no handbook. Nor did he request a handbook. While at HCC, he learned about certain administrative procedures, such as Inmate Request Forms ("IRFs"), by asking other inmates. He testified that those procedures were "common knowledge" at the prison. Prior to the incident that is the subject of this lawsuit (in May 1996), plaintiff filed a number of IRFs for various reasons.

Plaintiff testified that, when he received the handbook at NHCCC, he was not aware that it applied to all facilities in the Department of Correction, such as Hartford. Plaintiff also pointed out, during cross examination by his own counsel, that

3

the handbook explained "facility" operating procedures, not "department" operating procedures. In other words, plaintiff's position is that, even if he had read the handbook at NHCCC, he could not have known that the grievance procedures applied at HCC, where his injury occurred, and therefore administrative remedies were not "available" to plaintiff.

The court disagrees with plaintiff, and finds that, as a factual matter, administrative remedies were "available" to plaintiff because plaintiff was at least on constructive notice of them.[3] First, plaintiff received a handbook after completing orientation at NHCCC, and had the handbook in his possession for three or four days. He simply chose not to read it. Second, plaintiff never requested a handbook while in administrative segregation at NHCCC, even though he had been through the orientation processs, and had already received a handbook, and therefore was aware of its availability and applicability. Third, despite plaintiff's argument that he could not have known that the administrative remedies described in the NHCCC handbook applied to HCC, the NHCCC handbook provision on Inmate Grievance Procedures references Administrative Directive 9.6, which, if plaintiff had read the handbook, would have suggested that state-wide procedures were in place. Fourth, plaintiff used certain

---

[3] As noted earlier, defendants' primary position is that, as a matter of law, administrative remedies were "available" simply because they were "in effect." In light of the court's finding that plaintiff was on constructive notice of available administrative remedies, the court need not decide whether a hypothetical set of facts exist where, although technically "in effect," administrative remedies were not "available."

4

administrative procedures (i.e., the IRFs) at HCC that were "common knowledge" among inmates, which suggests that plaintiff could have discovered similar information on grievance procedures.

The <u>combination</u> of all of these factors leads this court to find that, as a factual matter, administrative remedies were "available" to plaintiff. Because it is undisputed that plaintiff did not exhaust those administrative remedies before filing this action, and because exhaustion is required, <u>see</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002), the court converts plaintiff's motion for judgment on the pleadings into a motion for summary judgment and grants summary judgment in favor of defendants. <u>See</u> Fed. R. Civ. P. 12(c).[4]

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (doc. # 65) is converted into a motion for summary judgment under Rules 12(c) and 56 of the Federal Rules of Civil Procedure, and summary judgment is **GRANTED** in favor of defendants based on plaintiff's failure to exhaust his administrative remedies.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of

---

[4] All parties have been given reasonable opportunity to present all pertinent material. <u>See</u> Fed. R. Civ. P. 12(c). Indeed, this was the purpose of the evidentiary hearing, as stated in this court's January 16 Order. [<u>See</u> Order re Defendants' Motion for Judgment on the Pleadings, Jan. 16, 2003 (doc. # 72) at p. 3.]

5

this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989)(per curiam); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at Bridgeport this __7__ day of March 2003.

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NICHOLAS APONTE,
    PLAINTIFF,

v.

EDWARD ARRINGTON, ET AL.
    DEFENDANTS

CIV. NO. 3:99CV847 (WWE)

## ORDER RE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants move for judgment on the pleadings on the ground that plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [See Def.s' Mot. (doc. # 65).] Plaintiff objects on the ground that no administrative remedies were available to plaintiff. [See Pl.'s Opp. (doc. # 69) at p.2.] Plaintiff's objection is based on his allegation that he was not provided with the inmate manual or otherwise informed of grievance procedures until after the expiration of the grievance period. [See generally id.] There is a disputed issue of fact about whether plaintiff was provided with the inmate manual in a timely fashion.

The failure to exhaust administrative remedies under the PLRA is an affirmative defense in the Second Circuit. Torrence v. Pesanti, Order re Defendants' Motion to Dismiss, Jan. 10, 2003 (Fitzsimmons, J.), at p. 2. Thus, the failure to exhaust is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings and/or attachments. Id. at pp. 5-6. If the failure to exhaust is readily apparent, the court should

quickly dismiss, <u>sua sponte</u>, and without prejudice, so that plaintiff may pursue his or her administrative remedies before any applicable statute of limitations runs. <u>Id.</u> at p. 6. However, when the failure to exhaust administrative remedies under the PLRA is suggested, but not unambiguously established, by way of a motion to dismiss, the court can and should convert the motion to dismiss into a motion for summary judgment and order further briefing and/or evidence. <u>Id.</u> <u>See also</u> Fed. R. Civ. P. 12, 56.

In this case, the parties dispute whether plaintiff was timely provided with the inmate manual that explained grievance procedures, and, thus, whether administrative remedies were actually "available" to plaintiff. Plaintiff argues that, if a prisoner is not provided with information about relevant grievance procedures before the time to file a grievance ends, then those procedures were not "available" to him for purposes of administrative exhaustion. Defendants do not dispute that legal argument,[1] but rather argue that plaintiff admitted being provided with the inmate manual upon admission to the institution. The deposition transcript on which defendants rely,

---

[1] Defendants attached a copy of the relevant administrative directives to their reply brief. Those directives provide, among other things, that: each inmate shall be issued a written summary of the Inmate Grievance Procedure upon initial contact with the Department; copies shall also be in the library and available to an inmate upon request; upon transfer, an inmate shall be informed of the Inmate Grievance Procedure at the receiving unit; and each inmate in the Department's custody shall have access to the Inmate Grievance Procedure. [Defs.' Reply, Ex. A (Administrative Directive, effective August 12, 1994), at §§ 4, 5.]

2

however, contains several inconsistencies about notice and access to the relevant grievance procedures.[2] If the parties' dispute about the availability of grievance procedures is real, that factual dispute would be material, and thus would preclude entry of summary judgment. See Fed. R. Civ. P. 56(c).

Because it is unclear from the deposition transcript whether plaintiff was provided notice of and access to the relevant grievance procedures, and because both parties have the right to a "reasonable opportunity to present all [pertinent] material" once the court decides to consider matters outside the pleadings, Fed. R. Civ. P. 12(c), **the court will hold an evidentiary hearing** on the availability of grievance procedures and instructions before converting defendants' motion into a motion for summary judgment and ruling on that motion. See Torrence at pp. 7-8. The **hearing** will be held **February 18, 2003, at 10:00 a.m.** The court will issue a writ of habeas corpus ad testificandum simultaneously with this order, so that plaintiff may appear and testify.

SO ORDERED at Bridgeport this ___ day of January 2003.

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[2] Indeed, plaintiff and defendants both rely on the same transcript to show that plaintiff was unaware and aware, respectively.

3