UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEITH BARILE | : |
| | : PRISONER |
| Plaintiff, | : CIVIL NO. 3:00CV2253 (JCH)(HBF) |
| | : |
| v. | : |
| | : |
| C.O. DRUMMOND, ET AL., | : NOVEMBER 5, 2004 |
| | : |
| Defendant. | : |

**MOTION FOR LEAVE TO RE-OPEN DEPOSITIONS
OF DEFENDANTS MACIAG AND VILLARINI**

Plaintiff Keith Barile ("Plaintiff"), by his attorneys Pillsbury Winthrop LLP, hereby respectfully submits this motion for leave pursuant to Federal Rule of Civil Procedure 30(a)(2) to continue the depositions of defendants Robin Maciag ("Maciag") and Anthony Villarini ("Villarini").[1] Both Maciag and Villarini were deposed for less than seven (7) hours and the additional testimony is expected to take less than one hour, which should not inconvenience the Defendants. Plaintiff seeks to conduct limited examination regarding documents highly relevant to Plaintiff's claims that were provided for the first time during a deposition on September 27, 2004.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.   **Initiation of Action and Initial Discovery**

On March 13, 1999, Plaintiff was assaulted by another inmate at Hartford Correctional Center, and suffered a broken arm in the attack. This assault occurred because defendant

---

[1] Maciag and Villarini are listed on the complaint as "Nurse Robin" and "Nurse Tony."

110165100v2

Drummond acted with deliberate indifference. Not until March 18, 1999 was Plaintiff examined by a doctor and was his arm was placed in a cast. In connection with these events, Plaintiff initiated this civil rights action *pro se* on or about November 27, 2000. During discovery in this action, counsel for Defendants provided Plaintiff with a 12 page document which was certified to be "true copies" of "[a]ll medical records dealing with the alleged incident of March 13, 1999 to the present." ("Medical Records," attached to the Declaration of Daniel J. Richert as Exhibit A).[2] The Medical Records contain facsimile transmission information on the top of each page, and pages are consecutively numbered from 002 through 013 -- it is not evident from the Medical Records that any material was omitted.

### B. Appointment of Pro Bono Counsel

On December 9, 2003, Pillsbury Winthrop LLP was appointed pro bono counsel for Plaintiff. In order for pro bono counsel to prepare this case for trial, Plaintiff was granted permission to undertake additional discovery, including the depositions of defendants Maciag and Villarini. (Richert Dec. at 2.) Prior to the depositions of Maciag and Villarini, Plaintiff provided his counsel with all documents in his possession that were produced by Defendants, including the Medical Records. (Richert Dec. at 3.)

### C. Depositions of Maciag and Villarini

On April 8, 2004, Plaintiff took the deposition of Maciag. (Richert Dec. at 4, Ex. B.) The deposition of Maciag lasted approximately 2 hours, 13 minutes. (Richert Dec. at 5, Ex. B.) At the conclusion of Maciag's deposition counsel for Plaintiff stated on the record the intention to preserve Plaintiff's right to continue the deposition if necessary. (Richert Dec. at 6, Ex. B at 70-71.) Also on April 8, 2004, Plaintiff took the deposition of Villarini. (Richert Dec. at 7, Ex.

---

[2] Submitted herewith is the Declaration of Daniel J. Richert in Support of Motion for Leave, dated November 5, 2004 ("Richert Dec.").

C.) The deposition of Villarini lasted approximately 50 minutes. (Richert Dec. at 8, Ex. C.) At the conclusion of Villarini's deposition counsel for Plaintiff again stated on the record the intention to preserve Plaintiff's right to continue the deposition if necessary. (Richert Dec. at 9, Ex. C at 33.)

### D.    Production of Previously Undisclosed Medical Records

On September 27, 2004, Plaintiff deposed his treating physician, Dr. James McKenna. (Richert Dec. at 10.) Dr. McKenna brought to the deposition hundreds of pages of Plaintiff's medical file ("McKenna Documents"). (Richert Dec. at 11.) The McKenna Documents included many documents that were not included in the Medical Records previously produced to the Plaintiff. (Richert Dec. at 12.) Among the McKenna Documents were previously undisclosed records related to the medical treatment of Plaintiff's broken arm. (Richert Dec. at 13.) Specifically, among the McKenna Documents were medication charts that appear to be prepared and/or signed by Defendants Maciag and Villarini (the "Charts", attached to the Richert Dec. as Exhibit D). (Richert Dec. at 14.) These Charts had not been previously provided to Plaintiff and were not included in the Medical Records. (Richert Dec. at 15.) Importantly, the Charts differ in manner of recording and style (i.e. handwritten or typed) and accordingly, Plaintiff should have the opportunity to examine Maciag and Villarini regarding these documents.

### E.    Communications Regarding Re-Opening of Depositions

On November 2, 2004, through counsel, Plaintiff advised Defendants of his intention to re-open the depositions of Maciag and Villarini. (Richert Dec. at 16.) Plaintiff advised Defendants that the continued examination period would be short for each witness and for the convenience of Defendants the deposition would take place at the offices of counsel for Defendants. (Richert Dec. at 17.) On November 4, 2004, counsel for Defendants contacted

counsel for Plaintiff and indicated that Defendants would not consent to the re-opening of the depositions of Maciag and Villarini. (Richert Dec. at 18.)

## ARGUMENT

The decision to grant discovery requests lies within a district court's discretion. *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 474 (2d Cir. 1995) (finding trial court's refusal to compel additional discovery an abuse of discretion because the information sought was "highly relevant" to issues in the case); *see also Villante v. Dep't of Corrections*, 786 F.2d 516, 521 (2d Cir. 1986) (reversing summary judgment for defendant on 42 U.S.C. § 1983 claim because district court failed to order deposition discovery that would have established whether defendant had notice of on-going assaults upon plaintiff). Furthermore, like most discovery disputes, the availability of a second deposition is left to the discretion of the trial court. *Keck v. Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *1 (S.D.N.Y. Jul. 22, 1997) ("[i]n deciding whether to grant leave, a court must look to the standards set forth in Rule 26(b)(2).")[3]; Fed. R. Civ. P. 30(a)(2)(B).[4]

Under Rule 26(b)(2), a court may limit discovery where (1) the discovery sought is cumulative or can be obtained more conveniently from some other source; (2) the party seeking discovery has already had a full opportunity to obtain the information; or (3) the burden or expense of the proposed discovery outweigh its likely benefit. *See* Fed.R.Civ.P. 26(b)(2). Here, the discovery is not cumulative. Plaintiff was not aware the Charts existed at the first depositions of Maciag and Villarini and consequently Plaintiff could not question Maciag and Villarini about the Charts. In fact, Plaintiff (*pro se* at the time) was given what was certified to

---

[3] A copy of the *Keck* opinion is attached to the Richert Dec. as Exhibit F.
[4] Continuing depositions of the same party are governed by Rule 30(a)(2)(B) which provides that: "A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2) ... if, without the written stipulation of the parties, the person to be examined has been deposed in the case[.]"

4

be all relevant medical records -- he had no reason to believe other documents existed. Plaintiff does not seek reopen the depositions merely to attempt to refresh the recollections of the nurses based on these documents. *Cf. Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693, 732-33 (S.D.N.Y. 1996) (second deposition denied where deposing party sought only to refresh nonparty witness' recollection based on newly discovered document). Rather, Plaintiff should be entitled to examine the accuracy and legitimacy of these Charts by questioning the individuals who signed them. This is not a rehashing of old testimony since the nurses have yet to provide any testimony regarding their treatment of Plaintiff in this case.[5]

Lastly, there is little burden to the proposed discovery, Plaintiff only seeks inquiry related to the Charts, and estimates examination to be one hour or less. Conversely, the examination sought offers the potential for great benefits. The Charts purport to detail the medication given to Plaintiff during the time period relevant to his claim for denial of medical care. Whether or not Plaintiff actually received medication is an issue highly relevant to Plaintiff's claims. Moreover, while the nurses were previously questioned about Plaintiff and what medical care, if any, they provided to Plaintiff, they did not recall him or recall providing him with any medical treatment. (Richert Dec., Ex. B at 56, 70; Ex. C at 30.) These Charts, produced at the eleventh hour and on the eve of trial, purport to show that these nurses indeed did provide medical treatment to Plaintiff. It is clear the benefit to Plaintiff in obtaining additional testimony on these issues clearly outweighs the burden on Defendants.

*Keck, supra*, is instructive here. In *Keck*, the defendant filed a motion to reopen the depositions of the plaintiff's former in-house counsel and another plaintiff employee. *Keck*, 1997

---

[5] Further, Defendants cannot credibly claim that Plaintiff had a "full opportunity" to obtain this information earlier when Plaintiff, proceeding *pro se*, was falsely provided with documents purported to be true copies of <u>all medical records</u> dealing with the March 13 incident months, if not years, before the nurses were deposed. (Richert Dec. at Ex A.)

5

110165100v2

WL 411931 at *1. The court found that two of the allegations that plaintiff's former in-house counsel made in a related California action warranted the re-opening of his deposition. *Keck*, 1997 WL 411931 at *2. The court recognized that "a second deposition is often permitted, where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck*, 1997 WL 411931 at *1. If he knew of their existence, Plaintiff certainly would have asked questions about the Charts at the first depositions of Maciag and Villarini. Since the Charts are relevant to Plaintiff's claim that Defendants denied Plaintiff medical care. Here, as in *Keck*, "[t]he discovery is not cumulative, and the burden of redeposing these two witnesses is outstripped by the potential importance of the issue." *Keck*, 1997 WL 411931 at *2. Accordingly, this Court should permit Plaintiff to re-open the depositions of Maciag and Villarini for the limited purpose of questions regarding the Charts.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his Motion for Leave to Re-Open Depositions of Defendants Maciag and Villarini be granted.

Respectfully submitted,

PLAINTIFF
KEITH BARILE

By: _____
Henry K. Snyder (ct 17242)
Daniel J. Richert (ct 25302)
Kenneth A. Newby (ct 26319)
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT 06904
Tel. 203-348-2300
Fax. 203-965-8226
hsnyder@pillsburywinthrop.com
drichert@pillsburywinthrop.com
knewby@pillsburywinthrop.com

110165100v2

## CERTIFICATE OF SERVICE

I certify that on this 5th day of November, 2004, I caused an original copy of the attached Motion for Leave to Re-Open Depositions of Defendants Maciag and Villarini to be served by First Class U.S. Mail and facsimile upon the following counsel for Defendants:

Steven R. Strom, Esq.
Lynn D. Wittenbrink, Esq.
Attorney General's Office
110 Sherman Street
Hartford, CT  06105

_____
Daniel J. Richert (ct 25302)