UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEITH BARILE                             :

                          Plaintiff,     :        CIVIL NO. 3:00CV2253 (HBF)

           v.                            :

                                         :

C.O. DRUMMOND, ET AL.,                   :        JANUARY 4, 2005

                          Defendant.     :

                                         :

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KEITH BARILE'S
MOTION IN LIMINE TO PRECLUDE EVIDENCE OF
VIRGINIA LAWSUIT AND OTHER LITIGATION**

Plaintiff Keith Barile ("Plaintiff"), by his attorneys Pillsbury Winthrop LLP, hereby

respectfully submits this memorandum of law in support of his Motion in Limine to Preclude

Evidence of Virginia Lawsuit and Other Litigation.  As set forth herein, Defendants should be

precluded from introducing evidence of Plaintiff's involvement in a certain lawsuit and appeal in

Federal Court in Virginia, or any other civil litigation, on the grounds that (i) such evidence is

not relevant pursuant to Fed. R. Evid. 401, and (ii) any probative value of such evidence is

substantially outweighed by the danger of unfair prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Facts Related to Case at Bar**

On March 13, 1999, while an inmate at Hartford Correctional Center, Plaintiff was

assaulted by another inmate, and Plaintiff sustained a broken arm in the attack.  Despite

Plaintiff's repeated requests, prison personnel denied Plaintiff access to a doctor until March 18,

1999. On March 18, 1999, Plaintiff was examined by Dr. James McKenna. Dr. McKenna

discovered that Plaintiff's arm was broken and it was placed in a cast. After the incident,

Plaintiff followed the inmate grievance procedure and filed grievances related to the attack and

his denial of medical care. Because no receipts were provided for the submission of grievances

and because it was difficult, and perhaps not possible, to obtain photocopies in a timely manner,

Plaintiff handwrote copies of his grievances. The Hartford Correctional Center Inmate

Handbook from the time in question (a copy of which was produced by Defendants during

discovery) states the following:

> **PHOTOCOPYING**. Photocopying for inmates shall be restricted
> to exhibits for the courts. Requests for exceptions shall require the
> Warden's approval. Inmates shall be charged (25) twenty-five cents per
> copy. The funds shall be deducted from your inmate account prior to
> providing the copies. [1]

Accordingly, it was uncertain whether the Warden would even grant an exception to this policy,

and whether copies could have been obtained in a timely manner.

## B.    The Virginia Lawsuit

In early 2000, Plaintiff was transferred from Hartford Correctional Center to Wallens

Ridge State Prison in Virginia. On or about September 8, 2000, Plaintiff initiated a Section 1983

lawsuit in the Western District of Virginia related to denial of medical care while at Wallens

Ridge. The Virginia lawsuit was dismissed on or about July 24, 2001, on the grounds that

Plaintiff failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e. Plaintiff

appealed this decision to the Fourth Circuit Court of Appeals. On or about February 27, 2002

the Court of Appeals affirmed the judgment of the trial court.

---

[1]    A copy of the relevant page is attached hereto as Exhibit A.

110164965v1

### C.   Plaintiff Was Aware of Exhaustion Issues Prior to Virginia Lawsuit

During the course of this litigation Defendants have alleged -- without any basis in fact -- that Plaintiff fabricated the handwritten copies of his Connecticut grievances after his Virginia lawsuit was dismissed for failure to exhaust administrative remedies. This argument would assume that prior to the dismissal of the Virginia action, Plaintiff was unaware of the need to exhaust administrative remedies prior to commencing litigation. Plaintiff has previously submitted evidence that shows the futility of Defendants' argument -- a letter from Plaintiff to the Connecticut Claims Commissioner, dated August 24, 1999 and stamped "RECEIVED AUG. 26 1999 OFFICE OF CLAIMS COMMISSIONER STATE OF CONNECTICUT", that specifically mentions Plaintiff's desire to exhaust administrative remedies.[2] As detailed more fully below, any questioning regarding the Plaintiff's lawsuit in the Western District of Virginia and subsequent appeal should be precluded on the grounds that such questioning is both irrelevant and unduly prejudicial.

## ARGUMENT

### A.   Evidence of Other Litigation is Not Relevant to this Action

It is hornbook law that in order to be admissible, evidence must be relevant. *See* Fed. R. Evid. 402. Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Here, any evidence of the Virginia lawsuits will not make the existence of Plaintiff's filing administrative remedies more probable or less probable -- and would only serve to confuse

---

[2] This document was previously filed on November 26, 2002 as an attachment to Plaintiff's Answer to Defendant's Supplemental Memorandum of Law in Support of Motion to Dismiss (Docket No. 52), and is attached hereto as Exhibit B.

110164965v1

the jury. Plaintiff has already clearly refuted the unfounded argument that the Virginia lawsuits

caused Plaintiff to fabricate his Connecticut grievances -- Plaintiff has provided uncontroverted

documentary evidence that he was aware of the need to exhaust administrative remedies well

before the Virginia lawsuits. *See* Ex. B. As the Virginia lawsuits are completely unrelated to the

case at bar and irrelevant under the Federal Rules of Evidence, this evidence must be precluded

from use at trial.

**B.      Probative Value of Such Evidence is Substantially Outweighed by Danger of Unfair Prejudice**

Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be

excluded if its probative value is substantially outweighed by the danger of unfair prejudice... ."

Even if evidence of other lawsuits is relevant -- which it is not -- any probative value of such

evidence is substantially outweighed by the danger of unfair prejudice.

Courts in the Second Circuit have held that allowing the use of evidence of previous

lawsuits "would potentially unfairly prejudice the jury against Plaintiff by painting him as a

litigious character who lacks validity." *Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993)

(finding evidence inadmissible under Rules 403 and 404). Here, allowing use of evidence of the

Virginia lawsuits, or any other civil litigation, would unfairly prejudice the jury against Plaintiff.

Accordingly, Plaintiff's Motion in Limine must be granted.

110164965v1

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that his Motion in Limine to Preclude Evidence of Virginia Lawsuit and Other Litigation be granted.

Respectfully submitted,

PLAINTIFF
KEITH BARILE

By: _____
        Henry K. Snyder (ct 17242)
        Daniel J. Richert (ct 25302)
        Kenneth A. Newby (ct 26319)
        Pillsbury Winthrop LLP
        695 East Main Street
        Stamford, CT  06904
        Tel. 203-348-2300
        Fax. 203-965-8226
        hsnyder@pillsburywinthrop.com
        drichert@pillsburywinthrop.com
        knewby@pillsbuywinthrop.com

110164965v1

## CERTIFICATE OF SERVICE

I certify that on this 4th day of January, 2005, I caused an original copy of the attached

Memorandum of Law in Support of Plaintiff Keith Barile's Motion in Limine to Preclude

Evidence of Virginia Lawsuit and Other Litigation to be served by First Class U.S. Mail upon the

following counsel for Defendants:


Steven R. Strom, Esq.
Lynn D. Wittenbrink, Esq.
Attorney General's Office
110 Sherman Street
Hartford, CT  06105


Daniel J. Richert (ct 25302)

6

Exhibit A

(c)    it depicts describes procedures for the brewing ●lcoholic beverages, or the manufacture of drugs;

    (d)    it is written in code;

    (e)    it depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;

    (f)    it encourages or instructs in the commission of criminal activity; or

    (g)    it is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the facility, or facilitates criminal activity.

The Publication Review Committee shall recommend to the Warden that sexually explicit material of the following types is to be excluded: (1) sado-masochistic; (2) bestiality; (3) involving children; or (e) materials depicting sexual activity which involves use of force or without out the consent of one or more parties. Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it. The inmate shall be allowed to appeal to the Commissioner or designee within fifteen (15) days of receipt of the rejection letter.

15.    **PHOTOCOPYING.** Photocopying for inmates shall be restricted to exhibits for the courts. Requests for exceptions shall require the Warden's approval. Inmates shall be charged (25) twenty-five cents per copy. The funds shall be deducted from your inmate account prior to providing the copies.

16.    **NOTARY PUBLIC.** Services of a notary public are available. See your counselor. The function of a notary public is to verify that the signature that appears on the document is the signature of the person who is named in the document as the signatory. Some legal documents have to be notarized.

17.    **INMATE NEWSPAPER.** The facility will publish a newspaper for inmates.
    A. Newspaper Staff. Assignment to work on the paper is made by the Classification Committee. If you are interested, contact your counselor
    B. Submitting Articles. If you want to submit an article or feature for inclusion in the newspaper, submit your article to the School. All articles are subjected to the review of the Unit Administrator or designee.

18.    **RELEASE ON BOND.** The Warden of the facility is authorized to accept the bail of any inmate held in lieu of bond and release such inmate provided the sole basis of confinement is the bond which is posted. [Reference: C.G.S. Sec. 54;53]
    A. Bondsman. A list of licensed bondsmen (including their telephone numbers) that serve this area is available from your counselor.

Exhibit B

August 24, 1999


Keith Barile
No. 237196
MacDugall Correctional Institute
1153 East Street South
Suffield, CT 06080


James R. Smith, Commissioner
Office of the Claims Commissioner
239 Washington Street
Hartford, CT 06106

Re: Request for forms and Instructions

Dear Commissioner Smith:

Please be advised that I am a Connecticut prisoner (#237196) serving a lengthy sentence.  While I was
incarcerated at the Hartford Correctional Center I suffered serious physical injury as a result of prison
official's deliberate indifference.

I wish to notify the State of Connecticut via this letter that I will sue the state for injuries suffered.

I wish to ask for any and all forms to exhaust administrative remedies.

Yours truly,


Keith L. Barile


*August 27, 1999*
*We do not have any*
*forms only the attached procedure.*
*Ask your counselor at the institution*
*for a personal injury form and a*
*waiver form if you have no funds.*



RECEIVED
AUG 26 1999
OFFICE OF CLAIMS COMMISSIONER
STATE OF CONNECTICUT

EXHIBIT
7
_____ 9/18/02