UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2005 JAN -4  P 4: 01

U.S. DISTRICT COURT
BRIDGEPORT, CONN.

| | |
|---|---|
| KEITH BARILE | : |
| | : |
| Plaintiff, | : CIVIL NO. 3:00CV2253 (HBF) |
| | : |
| v. | : |
| | : |
| C.O. DRUMMOND, ET AL., | : JANUARY 4, 2005 |
| | : |
| Defendant. | : |

## DECLARATION OF DANIEL J. RICHERT IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE FOR AN ORDER PRECLUDING EVIDENCE OF THE CRIMINAL HISTORIES OF KEITH BARILE AND ANTHONY CRUMP

I, Daniel J. Richert, declare and say as follows:

1.    I am an attorney licensed to practice law in the State of Connecticut and the District of Connecticut, and am an associate in the law firm of Pillsbury Winthrop LLP, counsel of record for plaintiff Keith Barile ("Plaintiff") in this case.  I submit this declaration in support of Plaintiff Keith Barile's Motion In Limine for an Order Precluding Evidence of the Criminal Histories of Keith Barile and Anthony Crump. Except where expressly noted, I have personal knowledge of the facts set forth in this declaration.

2.    A true and correct copy of relevant excerpts from the transcript of the deposition testimony of Keith Barile, dated September 10, 2002, is attached hereto as Exhibit A.

3.    A true and correct copy of relevant excerpts from the transcript of the deposition testimony of Anthony Crump, dated September 27, 2004, is attached hereto as Exhibit B.

4.    A true and correct copy of an Inmate Information print out from the Connecticut Department of Corrections website printed on January 4, 2005 and available at

110166088v1

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=237196, is attached hereto as Exhibit C.

5.    A true and correct copy of an Investigation Report reflecting Plaintiff Keith Barile's criminal history provided to Pillsbury Winthrop LLP by Keith Barile, is attached hereto as Exhibit D.

6.    A true and correct copy of *Jolly v. Troisi*, No. 92 Civ. 5332 (DAB), 2000 U.S. Dist. LEXIS 6479 (May 9, 2000) is attached hereto as Exhibit E.

7.    Pillsbury Winthrop made several unsuccessful attempts to obtain a copy of a similar Investigation Report from Mr. Anthony Crump reflecting Mr. Crump's criminal history.

I, Daniel J. Richert, declare under penalty of perjury that the foregoing is true and correct. Executed on January 4, 2005.

_____
Daniel J. Richert

## CERTIFICATE OF SERVICE

I certify that on this 4th day of January, 2005, I caused an original copy of the attached

Declaration of Daniel J. Richert in Support of Plaintiff's Motion in Limine for an Order

Precluding Evidence of the Criminal Histories of Keith Barile and Anthony Crump to be served

by First Class U.S. Mail upon the following counsel for Defendants:

> Steven R. Strom, Esq.
> Lynn D. Wittenbrink, Esq.
> Attorney General's Office
> 110 Sherman Street
> Hartford, CT  06105

Daniel J. Richert (ct 25302)

EX A

Barile vs C/O Drummond, et al

9/10/2002                                                                Keith Barile

                                                                        Page 1

1                    UNITED STATES DISTRICT COURT

                        DISTRICT OF CONNECTICUT

2

3

         * * * * * * * * * * * * * *

4                                            *

    KEITH BARILE,                            *

5            PLAINTIFF,                       *

                                             *   PRISONER

6    VS.                                      *   CIVIL NO. 3:00CV2253

                                             *

7    C/O DRUMMOND, ET AL.,                    *

                                             *

8            DEFENDANTS.                      *

                                             *

9    * * * * * * * * * * * * * *    **COPY**

10

11

12   ------------------------------------------------------------

                      DEPOSITION OF:   KEITH BARILE

13   ------------------------------------------------------------

14

15

16          Taken before Dawn Kent, Stenographer and Notary

    Public in and for the State of Connecticut, pursuant to the

17  Federal Rules of Civil Procedure, at MacDougall Correctional

    Institution, 1153 East Street South, Suffield, Connecticut,

18  on September 10, 2002, commencing at 10:30 a.m.

19

20

21

22               Brandon Smith Reporting Service

                      11-A Capitol Avenue

23               Hartford, Connecticut  06106

                  Phone:   (860) 549-1850

24                Fax:   (860) 549-1537

25

521b016f-3742-4557-b148-4934646776d1

Barile vs C/O Drummond, et al

9/10/2002

Keith Barile

Page 58

1    A.    No.  I won't refuse to answer how many I've

2    helped.

3    Q.    Okay.  Why don't you answer that one.

4    A.    That's fine.  Probably eight or nine.

5    Q.    Do you have some specific knowledge that helps you

6    help other inmates with legal problems?

7    A.    Probably an ability to articulate their concerns

8    better than theirs.

9    Q.    What's the level of your schooling?

10   A.    A high school graduate.

11   Q.    What did you do after high school?

12   A.    I ran restaurants and hotels.

13   Q.    For how many years?

14   A.    Twenty.

15   Q.    And what are you convicted of, sir?

16   A.    Robbery in the first, kidnapping first with a

17   firearm, and assault second.

18   Q.    Do you have a drug problem?

19   A.    Yes, I do.

20   Q.    What drug?

21   A.    Cocaine.

22   Q.    Any others?

23   A.    No.

24   Q.    Alcohol problem?

25   A.    No.  You can put marijuana down, too, I guess.

521b016f-3742-4557-b148-4934646776d1

Barile vs C/O Drummond, et al

| | | |
|---|---|---|
| 1 | Q. | When were you convicted? |
| 2 | A. | In April, I believe, of that year. |
| 3 | Q. | April of '99? |
| 4 | A. | Yes. |
| 5 | Q. | And what is the length of your sentence? |
| 6 | A. | Eighteen years. |

7    Q.    All right.  So had you been at Hartford C.C. the

8  entire time that you were incarcerated on the latter?

9    A.    Except for about two weeks where they sent me to

10  Walker because they had some sort of a mix up in the

11  paperwork and thought my bond was higher than it was and

12  they sent me to Walker.  And my lawyer took care of it and I

13  got sent back to H.C.C.

14    Q.    And had you been in the same cell the entire time?

15    A.    No.  I think I was moved from a two-man cell to a

16  one-man cell.

17    Q.    Why was that?

18    A.    Because it was preferable to me not to have

19  someone else in the cell with me.

20    Q.    And so did you make a request for a one-man cell?

21    A.    I don't know whether I wrote a request or whether

22  I made a verbal request.  I don't remember.  I may have made

23  a written request for it.

24    Q.    But you made a request?

25    A.    Correct.

521b016f-3742-4557-b148-4934646776d1

Barile vs C/O Drummond, et al

9/10/2002

Keith Barile

Page 112

1                    CERTIFICATE OF REPORTER

2        I, Dawn M. Kent, a Notary Public duly commissioned and

3    qualified in and for the State of Connecticut, do hereby

4    certify that pursuant to Notice, there came before me, on

5    the 10th day of September, 2002, the following named person,

6    to wit:  KEITH BARILE, who was by me duly sworn to testify

7    to the truth and nothing but the truth; that he was

8    thereupon carefully examined upon his oath and his

9    examination reduced to writing under my supervision; that

10   this deposition is a true record of the testimony given by

11   the witness.

12       I further certify that I am neither attorney nor

13   counsel for, nor related to, nor employed by any of the

14   parties to the action in which this deposition is taken and

15   further that I am not a relative or employee of any attorney

16   or counsel employed by the parties hereto, or financially

17   interested in the action.

18       IN WITNESS THEREOF, I have hereunto set my hand and

19   affixed my seal this 3rd day of October, 2002.

20                         _____

                                 Dawn M. Kent, LSR

21                               Notary Public

22

23

24   My commission expires:  June 30, 2006.

25

521b016f-3742-4557-b148-4934646776d1

EX B

Page 1

1                 UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
2

                                                COPY
3
     * * * * * * * * * * * * * * *
4    KEITH BARILE,                    )
                                      )
5                    Plaintiff,       )
                                      )    Civil Action No.
6        -vs-                         )    3:00CV2253 (JCH) (HBF)
     C.O. DRUMMOND, et al.,           )
7                                     )
                     Defendants.      )
8    * * * * * * * * * * * * * * *

9

10

11

12

13            Deposition of ANTHONY CRUMP, taken before
     Bethany A. Carrier, a Court Reporter and Notary Public
14   within and for the State of Connecticut, pursuant to
     Notice, Subpoena, and the Federal Rules of Civil
15   Procedure, taken at the Offices of the Attorney
     General, 110 Sherman Street, Hartford, Connecticut, on
16   September 27, 2004, commencing at 1:40 p.m.

17

18

19

20

21

22

23                  Bethany A. Carrier, LSR 071
24             Brandon Smith Reporting Service
                     44 Capitol Avenue
25             Hartford, Connecticut  06106
                    (860) 549-1850

0e32c0e1-60af-4c8d-b58d-2ed81ca2f210

Barile v. C.O. Drummond

9/27/2004                                                    Anthony Crump

Page 47

1    at all?

2        A    No.  Never.

3        Q    I have to go through your convictions real

4    quick, sir.

5        A    No problem.

6        Q    You have Virginia felonies?

7        A    Yes.

8        Q    1992 just -- I'm going to ask you to say yes

9    if it was a conviction, okay?

10       A    Yes.  Okay.

11       Q    1992, possession of heroin with intent to

12   distribute?

13       A    Yes.

14       Q    Possession of -- these are Virginia still --

15   possession of cocaine with intent to distribute, two

16   counts in 1992?

17       A    Yes.

18       Q    Possession of cocaine with intent to

19   distribute in a school zone, one count?

20       A    Yes.

21       Q    Possession of heroin with an intent to

22   distribute in a school zone, one count, '92?

23       A    Yes.

24       Q    Misdemeanor assault in '92 in Virginia?

25       A    No.

0e32c0e1-60af-4c8d-b58d-2ed81ca2f210

Barile v. C.O. Drummond

9/27/2004                                                    Anthony Crump

Page 48

```
 1       Q       No?   Okay.   Possession of heroin --

 2       A       In Virginia?   What year?

 3       Q       Virginia in '92.

 4       A       Yes.

 5       Q       And you have a federal conviction for

 6    possession of a firearm?

 7       A       Yes.

 8       Q       As a convicted felon?

 9       A       Yes.

10       Q       Did you talk to anyone about your deposition

11    today?

12       A       No.

13       Q       Did anyone promise you anything in connection

14    with your testimony?

15       A       No.

16       Q       Are you going to be around in the next couple

17    of months to testify in court?

18       A       Yes.

19       Q       Okay.   These are the Connecticut felonies.

20    '95, possession of narcotics?

21       A       Yes.

22       Q       Okay.   '95, reckless endangerment?

23       A       That was a misdemeanor.

24       Q       Misdemeanor, reckless endangerment?

25       A       Yes.
```

0e32c0e1-60af-4c8d-b58d-2ed81ca2f210

Barile v. C.O. Drummond

Anthony Crump

Page 49

1       Q    '95, possession of narcotics?

2       A    Yes.

3       Q    Two counts?

4       A    Yes.

5       Q    '91, possession of narcotics?

6       A    Yes.

7       Q    And misdemeanor, failure to appear?

8       A    Yes.

9       Q    '90, possession of narcotics?

10      A    Yes.

11      Q    '88, sale of controlled substance?

12      A    Yes.

13      Q    Any other felony convictions in any

14   jurisdictions?

15      A    No.  That's it.  That's enough.

16      Q    Are you under arrest right now or out on bond

17   or nothing?

18      A    No.  I in no trouble and I ain't plan on

19   getting in any either.

20      Q    Did you ever file any inmate request forms?

21      A    Yes, I did.

22      Q    How many?

23      A    I can't recall.

24      Q    Were they resolved to your satisfaction?

25      A    Some of them was, some of them wasn't.

Brandon Smith Reporting

0e32c0e1-60af-4c8d-b58d-2ed81ca2f210

EX C

 

## CONNECTICUT
## DEPARTMENT OF CORRECTION

STATE OF CONNECTICUT    ABOUT US    PROGRAMS AND SERVICES    PUBLICATIONS    FORMS    CONTACT US    H

# Inmate Information

| | |
|---|---|
| **Inmate Number:** | 237196 |
| **Inmate Name:** | BARILE,KEITH LAWRENCE |
| **Date of Birth:** | 11/29/1956 |
| **Latest Admission Date:** | 10/20/1998 |
| **Current Location:** | CHESHIRE CENTER |
| **Status:** | SENTENCED |
| **Bond Amount:** | 0 |
| **Controlling Offense:** | ROBBERY, FIRST DEGREE BF |
| **Date of Sentence:** | 5/28/1999 |
| **Maximum Sentence:** | 18 Year(s) 0 Month(s) 0 Day(s) |
| **Maximum Release Date:** | 10/18/2016 |
| **Estimated Release Date:** | Not Applicable |
| **Detainer:** | NONE |

Home | CT.gov Home | Send Feedback

State of Connecticut Disclaimer and Privacy Policy  Copyright © 2002, 2003 State of Connecticut

EX D

| P.B.I. NUMBER | F.B.I. FILE NUMBER |
|---|---|
| 379613 | 105887X4 |

**CRIMINAL RECORD**

| DATE | LOCATION | OFFENSE | DISPOSITION |
|---|---|---|---|
| 8/19/82 | Manchester, CT | BOP<br>Poss. of Marijuana | nolle<br>30 days e.s. CD |
| 7/21/84 | Manchester, CT | Crim. Impers. | 8/27/84 $150 fine |
| 1/6/90 | Manchester, CT | Issuing a Bad Ck<br>FTA 2nd | 4/6/90 $50 fine<br>nolle |
| 2/21/92 | Hamden, CT | Larceny 6th | 3/5/92 30 days e.s.<br>Cond. Disch. 1 yr. |
| 12/17/93 | Manchester, CT | SI: Crim. Misch.2nd | 8/17/94 6 mos. e.s.<br>probation 1 year |

On September 16, 1993, the offender entered an unlocked residence on Dougherty Street in Manchester and took a leather jacket and approximately $40.00 in change from one of the bedrooms. The offender and the victim were acquainted, and the offender had previously resided at the residence for a period of nine months. The leather jacket apparently did belong to Keith Barile, but was being held by the victim until Barile paid him $600.00 that was owed.

The only special condition of probation was no contact with the victim. While on this probation the offender committed a series of burglaries for which he was subsequently convicted. As a result, he admitted a Violation of Probation and probation was terminated.

| 9/2/94 | Manchester, CT | Burglary 3rd<br><br>Larceny 4th | 7/5/95 5 yrs. e.s.a.<br>TS prob. 5 years<br>nolle |

On August 9, 1994, the offender burglarized the office at the Whole Donut in Manchester. Barile had used force to splinter an office door that had been secured with a hasp/pad_lock assembly. Employees working at the donut shop had reported hearing a loud crash between 6:30 and 7:00 p.m. He went directly to a file cabinet and stole approximately $850.00 in cash. He also removed a video tape from the surveillance camera system. Barile was an employee at the Whole Donut.

| 9/19/94 | Manchester, CT | Larceny 6th<br>Larceny 6th (3cts)<br>Larceny 4th | 7/5/95 Uncond. disc.<br>nolle<br>nolle |

While employed at the Whole Donut, Barile engaged in a series of cash thefts from the register totalling $230.00.

| 3/5/95 | Manchester, CT | Burglary 3rd<br><br>Crim. Misch. 1st<br>Larceny 6th<br>Burglar Tools | 7/5/95 5 yrs. e.s.a.<br>TS prob. 5 years<br>nolle<br>nolle<br>nolle |

AP-36b Rev. 6-81

| Name | State No. |
|------|-----------|
| Barile, Keith | 102-TTB-99-35910-S |

| B.I. NUMBER | F.B.I. FILE NUMBER |
|-------------|--------------------|
| 379613 | 105887X4 |

| DATE | LOCATION | OFFENSE | DISPOSITION |
|------|----------|---------|-------------|

**CRIMINAL RECORD**

On March 5, 1995, Keith Barile was stopped by Manchester Police after he was seen leaving the parking lot of D&J Car Care at a high rate of speed. On the front passenger's seat, police observed a leather glove, a black lug wrench/pry bar, and a hat containing a large amount of loose and rolled change. Given that Barile was a suspect in a series of burglaries, an officer was dispatched to check the building where Barile had first been observed. Police found that the front door had been pried open, and that the cash register had also been damaged and pried open. A leather work glove was found on a car outside the front door, matching the other glove found in Barile's car. Damage to the front door of the building was $2,500.00, and the damage to the cash register was about $1,200.00. The amount of change taken from the register was unknown. Barile subsequently admitted this burglary, as well as several others. He said that he was committing all of the burglaries for money for his cocaine habit.

| DATE | LOCATION | OFFENSE | DISPOSITION |
|------|----------|---------|-------------|
| 3/20/95 | Manchester, CT | Burglary 3rd | 7/5/95 5 yrs. e.s.a. TS prob. 5 yrs. |
| | | Larceny 6th | nolle |

During the nighttime hours of November 25, 1994, the offender committed a commercial burglary at the Fast Go Station on Main Street in Manchester. Entry was gained by removing an air conditioner unit from a window on the ground level. Upon entry, the offender proceeded to the customer service counter, pried open the cash drawer and removed approximately $110.00.

| DATE | LOCATION | OFFENSE | DISPOSITION |
|------|----------|---------|-------------|
| 3/20/95 | Manchester, CT | Burglary 3rd | 7/5/95 5 yrs. e.s.a. TS prob. 5 years. |
| | | Larceny 4th | nolle |
| | | Crim. Misch. 3rd | nolle |

During the evening hours of February 21, 1995, the offender burglarized Creative Mobile Systems, Inc. on Chapel Road in Manchester. Entry was gained by prying open two exterior doors, then prying open the office door. $800.00 was stolen from an envelope in the owner's desk. The day before the burglary, Keith Barile had been in

the building along with his boss. At that time, Barile observed his boss pay the owner of Creative Mobile Systems $500.00 in cash and saw that the money was placed in the desk drawer. Barile subsequently admitted to this burglary.

| DATE | LOCATION | OFFENSE | DISPOSITION |
|------|----------|---------|-------------|
| 4/5/95 | Windsor, CT | Larceny 6th | 4/20/95 Uncond. Dis. |

On 3/4/95, the offender stole a cellular telephone from a vehicle in Windsor.

| DATE | LOCATION | OFFENSE | DISPOSITION |
|------|----------|---------|-------------|
| 4/19/95 | Manchester, CT | Burglary 3rd | 7/5/95 5 yrs. e.s.a. TS prob. 5 yrs. |
| | | Larceny 2nd | nolle |
| | | Crim. Misch. 3rd | nolle |

JUDGE

Name    Barile, Keith    State No. 02-TTD-99-35910-S

.B.I. NUMBER    379613    F.B.I. FILE NUMBER    105887X4

| | DATE | LOCATION | OFFENSE | DISPOSITION |
|---|---|---|---|---|

CRIMINAL RECORD

On December 8, 1994, the offender burglarized the Main Pub in Manchester. He pried open the rear door and the office door with a screw driver. He stole $3,100.00 in cash from the safe, which he claimed had been unlocked and open. Barile was a former employee of the Main Pub.

| | | | |
|---|---|---|---|
| 4/19/95 | Manchester, CT | Burglary 3rd | 7/5/95 2 yrs. e.s.a. TS Prob. 5yrs |
| | | Larceny 5th | nolle |

During the evening hours of January 20, 1995, the offender burglarized the Fast Go Station on Main Street in Manchester. Entry had been gained through a broken window on the side of the building. The cash register was found outside the gas station, along with the cash drawer and a coffee pot. Approximately $300.00 in cash was missing. Barile subsequently admitted to this burglary. An employee of the Fast Go station said that Barile had been coming to the gas station on a frequent basis. It was noted that in most of the burglaries the offender committed, he had either worked at the business or frequented the business.

The total effective sentence for the six dockets on which the offender was sentenced at Manchester Superior Court on July 5, 1995 was 12 years execution suspended after time served and 5 years probation.

| | | | |
|---|---|---|---|
| 7/5/95 | Manchester, CT | VOP | 7/5/95 Prob. Term. |
| 2/18/97 | Manchester, CT | VOP (6 cts) | 7/30/97 Prob. cont. on all 6 dockets |

In February, 1997, Violation of Probation warrants were issued based on the following: Between November, 1995 and October, 1996 the offender submitted three urines which were positive for cocaine, the last of which was also positive for marijuana; the offender repeatedly failed to attend aftercare substance abuse counseling as directed by the probation officer (the offender claimed to have completed treatment at Manchester Memorial Hospital, which was untrue; failed to attend AA/NA meetings as instructed; and entered but failed to complete counseling at Community Health Services); and the offender had failed to comply with the restitution as ordered by the court (he had paid only $1,140.00 total while on probation, and the restitution was ordered at $2,500.00 per year). The offender was continued on probation on July 30, 1997 with the added condition that he complete four months of residential treatment at Project Green.

| | | | |
|---|---|---|---|
| 6/11/97 | West Hartford, CT | Larceny 6th | 12/10/97 90 days e.s. 1 yr. cond. disch. |
| | | FTA 2nd | nolle |

At the time of this arrest, the offender was out on bond while his Violation of Probation charges were pending. The police report reflects that Barile stole $240.00 worth of merchandise from Filene's in Westfarms Mall. He was apprehended after leaving the store.

JUDGE



LEXSEE

**PAUL JOLLY, Plaintiff, - against - C.O. TROISI, et al., Defendants.**

**92 Civ. 5332 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2000 U.S. Dist. LEXIS 6479*

**May 9, 2000, Decided**
**May 11, 2000, Filed**

**DISPOSITION:** [*1] Plaintiff's motion to dismiss retaliation claim as a matter of law GRANTED in part and DENIED in part. Defendants' motion DENIED in its entirety.

**LexisNexis(R) Headnotes**

**COUNSEL:** For PAUL JOLLY, plaintiff: Jonathan A. Damon, LeBouef Lamb Greene & MacRae, New York, NY.

PAUL JOLLY, plaintiff, Pro se, Pine City, NY.

For C.O. J. TROISI, C.O. J. FLORES, C.O. P. HARRIS, C.O. E. MEJIA, C.O. GONZALEZ, SGT. D. SHERROD, M.D. DR. S. KAPOOR, defendants: Laura M. Nath, Robert Abrams, New York, NY.

**JUDGES:** Deborah A. Batts, United States District Judge.

**OPINIONBY:** Deborah A. Batts

**OPINION:**

MEMORANDUM AND ORDER

DEBORAH A. BATTS, United States District Judge.

Plaintiff Paul Jolly moves this Court for leave to amend his Complaint and to compel document production. Plaintiff also filed a motion in limine to preclude introduction of certain evidence at trial. Defendants filed a cross-motion in limine to prevent alleged relitigation as against Defendant Dr. Kapoor, to preclude introduction of

evidence concerning the Department of Correctional Services ("DOCS") tuberculosis medical keeplock policy and dismissing Plaintiff's retaliation claim as a matter of law. For the foregoing reasons, Plaintiff's motion is GRANTED [*2] in part, and DENIED in part. Defendants' cross-motion is DENIED.

I. BACKGROUND

Plaintiff Paul Jolly ("Jolly") is an inmate incarcerated within the New York State Department of Corrections system. (JPTO P g1). Jolly alleges in his Complaint, initially filed pro se, that between 1991 and 1992, while an inmate at Sing Sing Correctional Facility, he was subject to intentional violation of his civil rights, physical abuse, and retaliation at the hands of certain named Corrections Officers. (Compl. at 2-3; JPTO PP a, e1-12, f1-13), On June 24, 1992, after an alleged attack by the Officers, Plaintiff contends that Defendant Dr. Kapoor refused to provide him medical attention because of Jolly's refusal to submit to a tuberculosis test on religious grounds. (Compl. at 4; JPTO PP 13, 15).

In previous litigation, a jury found that the DOCS policy of placing inmates who refused tuberculosis tests on 24 hour medical keeplock violated Plaintiff's civil rights. See *Jolly v. Coughlin, 1999 U.S. Dist. LEXIS 349, No. 92 Civ. 9026 (JGK), 1999 WL 20895* (S.D.N.Y. Jan. 19, 1999). While two Defendants were found liable for violating Jolly's rights for over three years of medical keeplock confinement, Defendant [*3] Dr. Kapoor, named in both actions, was not found liable. Id., at *1-*2. Plaintiff's Complaint in the earlier litigation concerned his medical confinement which began and continued from December 10, 1991, the date he initially refused to take a tuberculosis test. See Compl. PP 33-34, Jolly v. Coughlin, No. 92 Civ. 9026 (Def's Motion in Limine, Ex. A).

2000 U.S. Dist. LEXIS 6479, *

## II. DISCUSSION

### A. Plaintiff's Motion to Amend the Complaint

Plaintiff seeks leave to amend his Complaint to add a demand for punitive damages. Punitive damages may be recovered in Section 1983 actions. *Stolberg v. Members of Bd. of Trustees, 474 F.2d 485 (2d Cir. 1973).* Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a).* Defendants do not oppose the proposed amendment on procedural grounds, but allege on the merits punitive damages are unwarranted. The Court notes that Plaintiff initially proceeded pro se and apparently served his motion to amend in October 1992; he should be afforded a reasonable opportunity to reach the merits of his legal claims. See *Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)* ("Implicit [*4] in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."). Accordingly, Plaintiff's motion for leave to amend his Complaint to add a demand for punitive damages is GRANTED.

### B. Plaintiff's Motion to Compel Production of Tapes and Documents

More than four years after the close of discovery, Defendants have still failed to produce all of Plaintiff's requested documents and tapes. n1 According to the Court's records, Plaintiff's Motion to Compel Production of Documents and Tapes is unopposed. Accordingly, Plaintiff's motion is GRANTED in its entirety.

> n1 This Court has once before remarked on the cavalier attitude with which the Attorney General's Office appears to approach its obligations before this Court. See Order Jan. 23, 1998.

Defendants are directed to provide all of the requested documents and tapes, as outlined in Plaintiff's Memorandum [*5] and the Affidavit of Jonathan A. Damon PP 8-12, 16-17. Defendants shall produce the above referenced documents and tapes by Friday, May 12, 2000.

### C. Plaintiff's First Through Eighth Motions in Limine

Plaintiff seeks an Order precluding introduction of certain evidence at trial. The Court notes that most of the proposed evidence raises questions of relevance. Further, *Rule 403 of the Federal Rules of Evidence* provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*FRE 403.* Finally, the Court notes that this action concerns events between 1991 and 1992.

### 1. Plaintiff's Prior Criminal History

According to Defendants, Plaintiff's prior criminal history includes arrests for, inter alia forgery and murder. Defs' Mem. Oppose at 2. Defendants have failed to cite to the record or indicate the disposition of each arrest. Upon the Court's review of what appears to be Plaintiff's Criminal History record, it appears Jolly was convicted [*6] of disorderly conduct in 1998, and burglary and murder in 1991. (McGinley Aff, Ex. A at 1-2).

Evidence of Plaintiff's prior convictions for disorderly conduct, murder, and burglary are not relevant to his claim that Defendants violated his constitutional rights. Accordingly, Defendants are hereby precluded from offering evidence concerning Plaintiff's prior criminal history.

Further, pursuant to *FRE 403* and *609*, Jolly's prior murder conviction is inadmissible for impeachment purposes. "Murder is not necessarily indicative of truthfulness, and the probative value of a murder conviction is substantially outweighed by the danger of unfair prejudice." *Eng v. Scully, 146 F.R.D. 74 (S.D.N.Y. 1993).* However, the above ruling does not preclude use of Plaintiff's prior criminal history for impeachment in the event that Plaintiff falsely states his criminal history while testifying.

Finally, it does not appear, and the Defendants have not established, that Plaintiff was convicted of forgery. A prior conviction for forgery may raise a question of Plaintiff's capacity for veracity. See *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories, 37 F.3d 1460 (11th Cir. 1994)* [*7] (finding forgery admissible as an "act probative of untruthfulness" under *FRE 608(b)).* A conviction for a crime involving dishonesty or false statements is admissible for impeachment purposes regardless of the date of conviction. *FRE 609(a)(2).* However, because Defendants have failed to establish an actual conviction for forgery, evidence of an arrest for forgery is insufficient and inadmissible under *FRE 609* and *403* as substantially more prejudicial than probative. Accordingly, Defendants are precluded from offering evidence of Plaintiff's prior arrest on forgery charges.

### 2. Evidence of Sept. 18 and 29, 1995

Defendants are precluded from introducing evidence concerning events occurring on September 18 and 29, 1995. The events at issue in Plaintiff's Complaint occurred between 1991 and 1992. Accordingly, the proposed evidence is excluded as irrelevant and because of its tendency to confuse the jury and prejudice the Plaintiff. See *FRE 403*.

### 3. Defendants' Expert Witness

Defendants seek to admit the testimony and expert report of Dr. Diane M. Sixsmith. Defendants produced the report over three years after the close of discovery in November 1999. The Court notes that [*8] Defendants' explanation for the delay, namely that no Court Order had required its disclosure, clearly misstates the record. See Order dated Oct. 6, 1995 (stating that discovery was reopened and extended until November 21, 1995 and that "there will be absolutely no extensions.").

Having reviewed the report on its merits, the Court finds it to be, at best, cumulative and ineffectual in that it provides no "scientific, technical, or other specialized knowledge" to assist the trier of fact. *FRE 702*. In effect, the report is merely a restatement of Plaintiff's presumed medical records. Accordingly, the report of Dr. Diane Sixsmith is inadmissible under Rule 403 as cumulative and tending to waste time. Defendants may argue at the pre-trial conference on May 16, 2000 whether Dr. Sixsmith should be permitted to testify. The Court is inclined to exclude such testimony if offered, but will reserve ruling until the Defendants can be heard.

### 4. Inmate Refusal to Testify

Defendants seek to admit statements made by other inmates of their refusal to testify in this proceeding. Such statements are not relevant to the proceeding and are thus excluded as a waste of time under *FRE 403*.

### 5 [*9] & 6. Photographs of Weapons

Defendants seek to admit three, as yet unauthenticated photographs of weapons allegedly found in Plaintiffs cell on December 9, 1991, September 18, 1995 and September 29, 1995. For the reasons previously stated, the 1995 photographs are excluded because they are not relevant and further, because their probative value, if any, is outweighed by the substantial likelihood of unfair prejudice. See *FRE 401*; *403*.

As to the photograph of the "shank" allegedly discovered in 1991, the photograph would be relevant and therefore admissible, but only if its authenticity has been established. See *FRE 901(a)*.

### 7. Unusual Incident Report and Other Records

Defendants seek to offer into evidence the "Unusual Incident Reports" dated December 9, 1991 and June 12, 1992. The documents appear to be business records, which fall within a hearsay exception. See *FRE 803(6)*. Defendants will be permitted to offer the above documents if they can establish at the pre-trial conference that both documents were written by individuals with first-hand knowledge. See *FRE 803(6)*.

The "Unusual Incident Report" dated September 18, 1995 is not relevant and is inadmissible [*10] for reasons previously stated.

Defendants have not put forth any arguments justifying the submission of the Memoranda and Employee Accident Report (Ex. W1; X1; Y1; Z1; A2) although Plaintiff has noted his objection. Accordingly, the Court will reserve ruling on these objections pending argument to be entertained at the pre-trial conference.

### 8. Use of Late Discovery

The instant action was filed on July 17, 1992. Judge John S. Martin, Jr., who formerly presided over this matter, considered discovery completed as of July 31, 1993. After this action was transferred to this Court, the Court permitted limited additional discovery to conclude on November 21, 1995. See Order dated Aug. 6, 1995. The Court granted one final extension of discovery, permitting Defendants to produce documents to the Plaintiff no later than January 19, 1996. See Order dated Dec. 19, 1995. By telephone conference with the Court, Defendants were permitted to provide Plaintiff with still more documents on March 13, 1996 on the representation by then Assistant Attorney General Mirabella that he had just received them.

Now six Assistant Attorney Generals have worked on this matter and produced three "Joint [*11] Pre-Trial Orders" ("JPTO") to this Court. Only the most recent JPTO, dated March 18, 1999 was signed by Plaintiff, now represented by counsel. Plaintiff claims that Defendants produced additional discovery material on the eve of submission of the latest JPTO. See Aff. Damon PP 5-9. Plaintiff opposes introduction at trial of all exhibits produced to him after the discovery deadline.

Ultimately, the two Courts presiding over this matter provided almost four years of discovery, for what is, in reality an isolated series of events involving only one prisoner. Consequently, Defendants statement that it provided all of the material available to it as it was received is untenable. However, Plaintiff has had the benefit of notice as to all potential exhibits as of the March 18, 1999 JPTO. Consequently, although the delays are unacceptable, Plaintiff will not be prejudiced by the inclusion of discovery materials produced no later than March 18, 1999. Accordingly, Plaintiffs request for

exclusion of these late documents on this basis alone is DENIED.

D. Defendants' Motions In Limine

1. Res Judicata as to Dr. Kapoor

Defendants move this Court to dismiss Defendant Dr. Satish [*12] Kapoor on the grounds of res judicata. However, the doctrine of res judicata bars relitigation of identical claims and parties after a matter has been settled by a final judgment. See Black's Law Dictionary, 6th Ed. (1990) (emphasis added). See also *Tucker v. Arthur Andersen & Co., 646 F.2d 721, 728 (2d Cir. 1981)* (reversing summary judgment and ruling that prior claim litigated was "similar but not the same").

Defendants mischaracterize Plaintiff's previous litigation against Defendant Kapoor in Jolly v. Coughlin, 92 Civ. 9026 (JGK). In that case, Defendant Kapoor was found not liable for Plaintiff's three year confinement to medical keeplock, which began and continued from December 10, 1991. *Jolly v. Coughlin, 1999 WL 20895,* at *1-*2. The Complaint and Jury Charge make clear that Coughlin addressed Plaintiff's confinement alone. See Compl. (Defs' Mem. Support, Ex. A); Jury Charge (McGinley Aff. Oppose, Ex. D).

By contrast, Plaintiff's cause of action against Defendant Kapoor in the instant action is a deliberate indifference claim based on Dr. Kapoor's alleged failure to treat him on June 24, 1992 for injuries sustained after an alleged [*13] attack. See Compl. at 4. Accordingly, because the claims are not identical and Plaintiff has never reached the merits of his failure to provide medical treatment claim, Defendants motion is DENIED.

2. Exclusion of Medical Keeplock Policy Materials

Plaintiffs may submit evidence concerning Defendants Medical Keeplock Policy. Evidence concerning the keeplock policy may be relevant, inter alia, to explain Jolly's absence from a misbehavior hearing in December 1991.

3. Dismissal of Retaliation Claim

Plaintiff has stated that he was retaliated against for participating in a constitutionally protected activity: the filing of grievances with DOCS personnel. See JPTO PP 7-13. See also *Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)* ("Prisoners . . . have a constitutional right . . . to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."). Each incident of alleged retaliation occurred shortly after Jolly filed grievances. See JPTO PP 7-13. Thus, Plaintiff has stated a cause of action for retaliation. See *Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).* [*14] Accordingly, Defendants' motion to dismiss is DENIED.

III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED, in part, and DENIED, in part. Defendants' motion is DENIED in its entirety. The parties are to appear for a final pre-trial conference on Tuesday, May 16, 2000 at 10:30 a.m. in Courtroom 24B. The parties should be prepared to address the remaining issues raised in this Order.

SO ORDERED.

Dated: New York, New York

    May 9, 2000

    Deborah A. Batts

    United States District Judge