UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH BARILE | : | CIVIL NO. 3:00CV2253 (HBF) |
| | : | |
| v. | : | |
| | : | |
| BARRY DRUMMOND, ET AL. | : | JANUARY 14, 2005 |

## JOINT TRIAL MEMORANDUM

1.    **Trial Counsel**

**Plaintiff's Counsel**
Henry K. Snyder (ct17242)
Daniel J. Richert (ct25302)
Kenneth A. Newby(ct26319)
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT 06904
Tel: (203)348-2300
Fax: (203)965-8226
hsnyder@pillsburywinthrop.com
drichert@pillsburywinthrop.com
knewby@pillsburywinthrop.com

**Defendants' Counsel**
Steven R. Strom
Assistant Attorney General
Federal Bar No. ct01211
e-mail: steven.strom@po.state.ct.us

Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
e-mail: lynn.wittenbrink@po.state.ct.us

110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Fax: (860) 808-5591

2.   **Jurisdiction**

Plaintiff asserts jurisdiction under 28 U.S.C. §§1331, 1343(3) and 1367.  This is an action

brought under 42 U.S.C. §1983.  Defendants deny jurisdiction on the basis that the claims alleged

do not rise to the level of a federal constitutional question, the action is barred by failure to

exhaust under the PLRA, lack of personal involvement and qualified immunity.

3.   **Jury/Non-Jury**

Defendants maintain that Plaintiff is not entitled to a jury on the issue of exhaustion under

the PLRA.  Plaintiff maintains that the Court (Hall, J.) already decided at summary judgment that

the exhaustion issue must be decided by the jury.  Judge Hall wrote that "resolution of this issue

requires a credibility determination by the finder of fact."[1]  The parties agree that all other issues

in this case shall be tried to a jury.  Jury selection is scheduled for February 1, 2005.

4.   **Trial Length**

Plaintiff expects to require two to three days to present his case.  Defendants expect two

to three days to present their case.

5.   **Nature of Case**

This is a prisoner civil rights action under 42 U.S.C. § 1983 claiming (1) deliberate

indifference to Plaintiff's safety as to Defendant Drummond in violation of Plaintiff's

Eighth/Fourteenth amendment right to be free from cruel and unusual punishment and (2)

deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's

Eighth/Fourteenth amendment right to be free from cruel and unusual punishment.  Plaintiff

seeks  compensatory and punitive damages from each of the four Defendants, who are state

---

[1]   *See* Ruling on Defendants' Motion to Dismiss, dated December 13, 2002 (Dkt. No. 53) at 8.

employees of the Department of Correction and UCONN Correctional Managed Health Care, (Drummond, Channer, Villarini, Maciag). Plaintiff also seeks a declaratory judgment that the Defendants violated Plaintiff's civil rights. The Defendants are sued individually. Defendants have asserted several affirmative defenses, including but not limited to Plaintiff's failure to exhaust and qualified immunity. Defendants also claim they lack the requisite personal involvement to be held liable under §1983. Defendants deny all of Plaintiff's allegations of wrongdoing.

6.    **Plaintiff's Contentions**

Deliberate Indifference as to Defendant Drummond

On the morning of March 13, 1999, Plaintiff flushed the toilet in his cell, which caused not only that toilet, but the toilet in the adjoining cell, to overflow. The adjoining cell was occupied by inmate George Streater. Both Plaintiff and Streater's cells were on the East 2 tier of Hartford Correctional Center. Defendant Drummond, the Correction Officer assigned to East 2 at the time in question, investigated the plumbing situation in Barile and Streater's cells. Inmate Streater was enraged and, in the presence of Drummond, outwardly exhibited a hostile demeanor toward Plaintiff and verbally threatened Plaintiff with physical harm. While Plaintiff was locked in his cell, Defendant Drummond stated to George Streater something akin to "I don't care what happens to Barile", which was heard by others on East 2 tier of HCC. Plaintiff asked Drummond if he could be let out of his cell to mop up the overflow. Drummond responded "if I let both of you out at the same time I'm gonna end up carrying you up out of here Barile." Approximately three hours later, acting with deliberate indifference as to Plaintiff's safety and the imminent and substantial risk of serious harm posed by Streater, Defendant Drummond intentionally and unreasonably placed Plaintiff and inmate Streater unsupervised in the locked dayroom. In the

dayroom, Streater attacked Plaintiff after Drummond had walked away from the dayroom, which resulted in, *inter alia*, a broken arm, bruises and abrasions. Drummond's intentional and unreasonable failure to protect Plaintiff from the obvious, foreseeable and substantial risk of serious harm posed by Streater and his failure to supervise the inmates when they were locked in the dayroom was the proximate cause of Plaintiff's injuries.

<u>Deliberate Indifference as to Defendants Channer, Villarini and Maciag</u>

After the attack on March 13, 1999, Plaintiff repeatedly asked Defendants Channer, Villarini and Maciag for pain medication and to see a doctor because he believed his arm was broken. Defendants Channer, Villarini and Maciag, by knowing and disregarding an excessive risk to Plaintiff's health, were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff's injuries were such that: (i) a reasonable doctor or patient would find them important and worthy of comment or treatment; (ii) they significantly affected his daily activities; and (iii) they caused chronic and substantial pain. Plaintiff did not receive medical attention for his broken arm until March 18, 1999.

Plaintiff contends he exhausted his administrative remedies.

**7.**    **Defendants' Contentions**

None of the Defendants in this case violated Plaintiff's constitutional rights at any time. Defendants and their witnesses will testify that Plaintiff did not report being in fear for his safety, and did not report being threatened by any other inmate. In fact, Plaintiff himself will testify that he failed to report being threatened by another inmate, and that he voluntarily left his cell to go to the day room at the Hartford Correctional Center on March 13, 1999. Plaintiff did not himself

know that he was going to be assaulted by another inmate in the day room, and therefore, the Defendant, Correction Officer Barry Drummond, cannot be held liable for failing to have a crystal ball and be able to foresee what was unforeseeable.

Officer Drummond will testify that he did not hear any threats toward Plaintiff, and had no knowledge of any immediate threat of significant injury toward Plaintiff. Officer Drummond had no reason to suspect that Plaintiff was in danger and never perceived any imminent threat to Plaintiff.

Plaintiff is not a credible witness. Neither is Mr. Anthony Crump, another inmate. Plaintiff was convicted of multiple felonies, including robbery in the first degree, assault second degree, kidnapping first degree with a firearm (6 counts), six different convictions for violations of probation for underlying criminal charges of burglary. Plaintiff is serving a twenty-five year sentence suspended after eighteen years for these convictions.

Allegedly Plaintiff was assaulted by another inmate in the day room on March 13, 1999. Officer Drummond was acting lawfully, within the scope of his employment, and without knowledge he was in violation of any clearly established rights of the Plaintiff. He was following his post orders during the meal time and was performing cell checks inside each cell and did not see what had happened. Plaintiff had a broken arm, which was diagnosed after x-ray on March 18, 1999. The attack happened so quickly it was neither observed nor was it preventable.

Plaintiff asserts that Correctional Officer Ossie Channer denied him an opportunity to go to the medical department for pain medication. This allegation is denied. Officer Channer never received any such request. There is no record anywhere of Plaintiff having made any complaints during the time period from March 13, 1999, to March 18, 1999. Defendants further contend that neither Drummond nor Channer knew or should have known that their actions violated any

clearly established law and are entitled to qualified immunity. Officer Channer at no time denied the Plaintiff medical care and the Plaintiff never placed Officer Channer on notice of any need for care.

Plaintiff also asserts that "Nurse Tony," Antonio Villarini, and "Nurse Robin," Robin Maciag, denied him medical care for his arm. Neither Villarini nor Maciag violated Plaintiff's right to adequate medical care at any time. Neither Villarini nor Maciag ever received any notice that Plaintiff required any medical care that he had not received. These Defendants are not authorized to prescribe pain medication and deny Plaintiff's allegation. The proper procedure for Plaintiff would have been to follow the instructions given to him by Nurse Jennifer Johnson on March 13, 1999, which was to sign up for sick call. Maciag and Villarini's duties did not include triage of new patients, signing up patients for sick call, or any other duty to Plaintiff. At all times Channer, Villarini and Maciag, acted lawfully within the scope of their employment, and without knowledge they were in violation of any clearly established rights of the Plaintiff. They are entitled to qualified immunity.

Moreover, Defendants contend that Plaintiff failed to properly file any grievance concerning any of the Defendants alleging "misconduct." Grievances and grievance logs were reviewed and there is no record of Plaintiff ever having filed a grievance on any of the issues raised in his complaint. Accordingly, the action should be dismissed under 42 USC §1997e(a). Plaintiff did not allege in his complaint that he had filed grievances, and for the first time asserted that he had filed grievances only after two other civil rights complaints that he had filed were dismissed for failure to exhaust under the PLRA. Plaintiff's admittedly reconstructed grievances were contrived after the fact and were never submitted in a timely and proper manner during the relevant timeframes in 1999.

8.    **Legal Issues**

A.    Did Defendant Drummond violate Plaintiff's civil rights under 42 U.S.C. § 1983 by knowing of and disregarding an excessive risk to Plaintiff's safety, resulting in an attack on Plaintiff?

B.    Did Defendant Channer violate Plaintiff's civil rights under 42 U.S.C. § 1983 by exhibiting deliberate indifference to any serious medical need of Plaintiff?

C.    Did Defendant Maciag violate Plaintiff's civil rights under 42 U.S.C. § 1983 by exhibiting deliberate indifference to any serious medical need of Plaintiff?

D.    Did Defendant Villarini violate Plaintiff's civil rights under 42 U.S.C. § 1983 by exhibiting deliberate indifference to any serious medical need of Plaintiff?

E.    Did Plaintiff Keith Barile exhaust his administrative remedies as required by 42 U.S.C. § 1997e?

F.    Are Defendants entitled to qualified immunity?[2]

9.    **Stipulated Facts/Contested Issues**

Counsel for Plaintiff and Defendants continue to work in good faith on a written stipulation of uncontroverted facts and contested issues of fact and law.  Counsel for the parties intend to submit their stipulation at the pretrial conference on January 19, 2005.

10.    **List of Witnesses**

**Plaintiff's Witness:**

---

[2] Defendants contend that they are entitled to present the defense of qualified immunity at trial.  Plaintiff contests this assertion.  It is Plaintiff's position that (i) the Court (Hall, J.) denied the defense of qualified immunity in its summary judgment decision and (ii) Defendants are precluded from asserting this defense at trial under the United States Supreme Court's holding in *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability;  and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial") (emphasis in original).

110166198v4

1.      Keith Barile, #237196, Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, CT.   The Plaintiff will testify as to the events of March 13, 1999, his subsequent and repeated requests for medical attention, his filing of grievances related to the attack on March 13, 1999, and the subsequent denial of medical care.

2.      Anthony Crump, 27 Grand Street, Middletown, CT 06457.  Mr. Crump will testify as to the events he witnessed at Hartford Correctional Center involving, *inter alia*, Plaintiff, George Streater, and Defendants Drummond and Channer.  Defendant Drummond's attitude toward Plaintiff, a statement made by Drummond to inmate Streater, and as to the reputations of Drummond and Channer at Hartford Correctional Center.

3.      Lt. Kenneth Olszta, HCC, 177 Weston St., Hartford, CT.  Lt. Olszta will testify as to his investigation of the assault upon the Plaintiff and his incident report regarding same, including the conclusion that George Streater attacked Keith Barile in the dayroom on March 13, 1999.

4.      Jennifer Benjamin-Gavin, RN, BSN, MSN, CCHP, Nurse Consultant, DPH, 410 Capitol Ave., Hartford, CT.  Ms. Benjamin-Gavin will testify regarding her treatment of the Plaintiff after the attack by inmate Streater, and her medical incident report regarding same.

5.      Dr. James McKenna, HCC, 177 Weston St., Hartford, CT.  Dr. McKenna will testify as both a fact and expert witness.  Dr. McKenna will testify as to his treatment of the Plaintiff, that the length of time it took to take an x-ray of Plaintiff's arm was extraordinary and that indeed Plaintiff suffered a broken arm and it was worthy of treatment.  His expert testimony will be based on his knowledge of Hartford Correctional

Center policies, his review of Plaintiff's medical records, and his experience as a medical doctor.

6.     Jacqueline Barile, 302 Green Road, Apt. C, Manchester, CT. Ms. Barile will testify that Plaintiff sent her, for safekeeping, handwritten copies of his grievances in January or February of 2000.

Plaintiff retains the right to call additional witnesses in order to rebut testimony of any of Defendants' witnesses.

**Defendants' Witnesses:**

1.     Theresa C. Lantz, (or designee), Commissioner of the Connecticut Department of Correction, 24 Wolcott Hill Road, Wethersfield. Commissioner Lantz, or her designee, will testify as an expert witness in adult corrections and as a fact witness regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute. She will testify as to the correctional policies and procedures at issue in this case, the conclusions of her investigation, and her opinion that the Defendants acted lawfully, within the policies and procedures of the DOC. The Commissioner's expert opinion will be based in part on her knowledge of Hartford CC, (HCC) agency and facility policy, as well as her review of all evidence in connection with this case, together with her experience training and background. She will deny and defend against any and all allegations of wrongdoing.


Plaintiff objects to all of the anticipated testimony of Ms. Lantz (or any designee) on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of

Civil Procedure 26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony on the grounds that there is no basis for Ms. Lantz as a fact witness.

2.      Director Mary Johnson, and/or her designee, Connecticut Department of Correction, 24 Wolcott Hill Road, Wethersfield. Director Johnson was the warden of the HCC. Director Johnson will testify as an expert and fact witness. She will testify as to her observations and review of Plaintiff's file, the incident report, log books, and the reasonableness of the Defendants' conduct prior to and in response to Plaintiff's reported injury. She will testify as to the correctional policies and procedures at issue in this case, the conclusions of her investigation, and her opinion that the Defendants acted lawfully and within the policies and procedures of the DOC. The Director's expert opinion will be based in part on her knowledge of Hartford CC, (HCC) agency and facility policy, as well as her review of evidence in connection with this case, together with her experience training and background. She will deny and defend against any and all allegations of wrongdoing.

Plaintiff objects to all of the anticipated expert testimony of Ms. Johnson (or any designee) on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony on the grounds that there is no basis for Ms. Johnson as a fact witness.

3.      Warden Charles Lee, HCC, and/or his designee, 177 Weston St., Hartford, CT. Warden Lee will testify as an expert and fact witness regarding Connecticut Department

of Correction correctional policy and procedure as applicable to this dispute. He will testify as to his observations and review of Plaintiff's file, the incident report, log books, and the reasonableness of the Defendants' conduct prior to and in response to Plaintiff's reported injury. He will testify as to the correctional policies and procedures at issue in this case, the conclusions of his investigation, and his opinion that the Defendants acted lawfully, within the policies and procedures of the DOC. The Warden's expert opinion will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience training and background. He will deny and defend against any and all allegations of wrongdoing.

Plaintiff objects to all of the anticipated expert testimony of Mr. Lee (or any designee) on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony on the grounds that there is no basis for Mr. Lee as a fact witness.

4.    Captain Christopher Coutant, HCC, 177 Weston St., Hartford, CT. Captain Coutant will testify as an expert and fact witness regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute. He will testify as to his observations of Plaintiff, and review of Plaintiff's file, the incident report, log books, and other records and the reasonableness of the Defendants' conduct prior to and in response to Plaintiff's reported injury. He will testify as to the correctional policies and procedures at issue in this case, the conclusions of his investigation, and his opinion

110166198v4

that the Defendants acted lawfully, within the policies and procedures of the DOC. The Captain's expert opinion will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience training and background. He will deny and defend against any and all allegations of wrongdoing.

Plaintiff objects to all of the anticipated expert testimony of Mr. Coutant on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C) and that Mr. Coutant is a former party and a key fact witness.

5.     Lt. Kenneth Olszta, HCC, 177 Weston St., Hartford, CT. Lt. Olszta will testify as an expert and fact witness regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute. He will testify as to his observations of Plaintiff, and review of Plaintiff's file, the incident report, log books, and other records, and the reasonableness of the Defendants' response to Plaintiff's reported injury. He will testify as to the correctional policies and procedures at issue in this case, the conclusions of his investigation, and his opinion that the Defendants acted lawfully, within the policies and procedures of the DOC. The lieutenant's expert opinion will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training, and background. He will deny and defend against any and all allegations of wrongdoing. The Lieutenant will testify as to his actions and observations on the dates in question in 1999.

Plaintiff objects to all of the anticipated expert testimony of Mr. Olszta on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C) and that Mr. Olszta is a former party and a key fact witness.

6.     Correction Officer Barry Drummond, HCC, 177 Weston St., Hartford, CT. C/O Drummond will testify as an expert and fact witness regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute. He will testify as to his observations of Plaintiff, as to the correctional policies and procedures at issue in this case, his lack of knowledge of any immediate threat to Plaintiff's safety, his belief that he acted lawfully, within the policies and procedures of the DOC and without knowledge he was in violation of any clearly established constitutional rights of the Plaintiff. He will testify to his incident report, log books, and other records, and the reasonableness of his conduct in response to Plaintiff's reported injury. He will testify as to the correctional policies and procedures at issue in this case, and that he acted lawfully, within the policies and procedures of the DOC. His testimony will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training and background. He will deny and defend against any and all allegations of wrongdoing. The Correction Officer will testify as to his actions and observations on the dates in question in 1999.

Plaintiff objects to all of the anticipated expert testimony of Defendant Drummond on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C) and that Defendant Drummond is a party to this action and a key fact witness.

7.     Correction Officer Ossie Channer, MacDougall/Walker CI, 1153 East St. So., Suffield, CT. C/O Channer will testify as an expert and fact witness regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute.  He will testify as to his lack of knowledge of Plaintiff, his lack of knowledge of Plaintiff's alleged complaint or request to be seen by medical staff,  as to the correctional policies and procedures at issue in this case, his lack of knowledge of any immediate threat to Plaintiff's serious medical needs, his belief that he acted lawfully, within the policies and procedures of the DOC and without knowledge he was in violation of any clearly established constitutional rights of the Plaintiff.  He will testify to his incident report, log books, and other documents, and the reasonableness of his conduct in response to Plaintiff's reported injury.  He will testify as to the correctional policies and procedures at issue in this case,  and that he acted lawfully, within the policies and procedures of the DOC.  His testimony will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training and background.  He will deny and defend against any and all allegations of wrongdoing.  The Correction Officer will testify as to his actions and observations on the dates in question in 1999.

Plaintiff objects to all of the anticipated expert testimony of Defendant Channer on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C) and that Defendant Channer is a party to this action and a key fact witness.

8.      Antonio Villarini, Correction Officer MacDougall/Walker CI, 1153 East St. So., Suffield, CT. He will testify as to his lack of knowledge of Plaintiff, his lack of knowledge of Plaintiff's alleged complaint or request to be seen by medical staff, as to the correctional policies and procedures at issue in this case, his lack of knowledge of any immediate threat to Plaintiff's serious medical needs, his belief that he acted lawfully, within the policies and procedures of the DOC and without knowledge he was in violation of any clearly established constitutional rights of the Plaintiff. He will testify to Plaintiff's medical records, log books, and other documents, and the reasonableness of his conduct. He will testify as to the correctional policies and procedures at issue in this case, and that he acted lawfully, within the policies and procedures of the DOC. His testimony will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training and background. He will deny and defend against any and all allegations of wrongdoing. The Correction Officer will testify as to his actions and observations on the dates in question in 1999.

9.    Robin Maciag, RN, Cheshire CI, 900 Highland Ave., Cheshire CT. She will testify as to her lack of knowledge of Plaintiff, his lack of knowledge of Plaintiff's alleged complaint or request to be seen by medical staff, as to the correctional policies and procedures at issue in this case, her lack of knowledge of any immediate threat to Plaintiff's serious medical needs, her belief that she acted lawfully, within the policies and procedures of the DOC and without knowledge she was in violation of any clearly established constitutional rights of the Plaintiff. She will testify to Plaintiff's medical records, log books, and other documents, and the reasonableness of her conduct. She will testify as to the correctional policies and procedures at issue in this case, and that she acted lawfully, within the policies and procedures of the DOC. Her testimony will be based in part on her knowledge of Hartford CC, (HCC) agency and facility policy, as well as her review of all evidence in connection with this case, together with her experience, training and background. She will deny and defend against any and all allegations of wrongdoing. The Nurse will testify as to her actions and observations on the dates in question in 1999.


10.    Counselor Supervisor Theresa Pemberton, and other designee, York CI, Niantic, CT. She will testify about the grievance process, A.D. 9.6, and the Plaintiff's failure to file an inmate grievance concerning the allegations of the complaint. She will testify as to the lack of authenticity of Plaintiff's reconstructed, fabricated grievances. She will deny and defend against any and all allegations of wrongdoing.

11.    Counselor Supervisor Stacy Smith, and/or her designee, Public Information Officer, 24 Wolcott Hill Road, Wethersfield. She will testify about the grievance process, A.D. 9.6, and the Plaintiff's failure to file an inmate grievance concerning the allegations of the complaint. She will testify as to the lack of authenticity of Plaintiff's reconstructed, fabricated grievances. She will deny and defend against any and all allegations of wrongdoing.

12.    Correctional Nurse Supervisor Sharon Brown, and/or her designee, HCC, 177 Weston St., Hartford, CT. She will testify about the medical grievance process, A.D. 9.6, and the Plaintiff's failure to file an inmate medical grievance or emergency grievance concerning the allegations of the complaint. She will testify as to the lack of authenticity of Plaintiff's reconstructed, fabricated grievances. She will deny and defend against any and all allegations of wrongdoing.

13.    Jennifer Benjamin-Gavin, RN, BSN, MSN, CCHP, Nurse Consultant, DPH, 410 Capitol Ave., Hartford, CT. She will testify as to her knowledge of Plaintiff, her affidavit, medical incident report, the Plaintiff's health records, and as to the correctional policies and procedures at issue in this case. She will testify as to her lack of knowledge of any immediate threat to Plaintiff's serious medical needs, her belief that she and the other Defendants acted lawfully, within the policies and procedures of the DOC and without knowledge she or anyone else was in violation of any clearly established constitutional rights of the Plaintiff. She will testify to Plaintiff's medical records, log books, and other records, and the reasonableness of her and the Defendants' conduct. She

17

will testify as to the correctional policies and procedures at issue in this case, and that the Defendants acted lawfully, within the policies and procedures of the DOC. Her testimony will be based in part on her knowledge of Hartford CC, (HCC) agency and facility policy, as well as her review of all evidence in connection with this case, together with her experience, training and background. She will deny and defend against any and all allegations of wrongdoing. The Nurse will testify as to her actions and observations on the dates in question in 1999.

14.     Dr. James McKenna, HCC, 177 Weston St., Hartford, CT. Dr. McKenna will be qualified and testify as a medical expert, as well as a fact witness. He will testify as to the type of injury Plaintiff sustained. He will testify as to the false claims of serious injury made by Plaintiff. He will further testify that Plaintiff's injuries were minor, transitory and uneventful. He will testify as to the correctional policies and procedures at issue in this case, his belief that staff acted lawfully, within the policies and procedures of the DOC and without knowledge they were in violation of any clearly established constitutional rights of the Plaintiff. He will testify to Plaintiff's medical records, log books, and other documents, and the reasonableness of staff conduct. He will testify as to the correctional policies and procedures at issue in this case, and that staff acted lawfully, within the policies and procedures of the DOC. His testimony will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training and background. He will deny and defend against any and all allegations of wrongdoing. The Doctor will testify as to his actions and observations on the dates in question in 1999.

15.    Dr. Edward Blanchette, and/or his designee, Department of Correction, 24 Wolcott Hill Road, Wethersfield, CT. Dr. Blanchette will be qualified and testify as a medical expert. He will testify as to the type of injury Plaintiff sustained. He will testify as to the false claims of serious injury made by Plaintiff. He will further testify that Plaintiff's injuries were minor, transitory and uneventful. He will testify as to the correctional policies and procedures at issue in this case, his belief that staff acted lawfully, within the policies and procedures of the DOC and without knowledge they were in violation of any clearly established constitutional rights of the Plaintiff. He will testify to Plaintiff's medical records, log books, and other evidence, and the reasonableness of staff conduct. He will testify as to the correctional policies and procedures at issue in this case, and that staff acted lawfully, within the policies and procedures of the DOC. His testimony will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience, training and background. He will deny and defend against any and all allegations of wrongdoing.

Plaintiff objects to all of the anticipated testimony of Dr. Blanchette on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure 26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony on the grounds that there is no basis for Dr. Blanchette as a fact witness.

16.     Fred Kurtz, formerly employed at HCC (now retired) 177 Weston St., Hartford, CT.  Mr. Kurtz will testify as to his duties in March 1999, the relevant log books, policies and procedures of the DOC and HCC, as well as his knowledge of the allegations of the Plaintiff.  Mr. Kurtz will testify along the lines of his affidavit and his deposition, and will testify as to how and in what manner the Plaintiff should have, and could have signed up for sick call to be seen by a facility physician.  He will deny and defend against any and all allegations of wrongdoing.

17.     Fred Levesque, and/or his designee, Director of Offender Classification and Population Management, MacDougall/Walker CI, 1153 East St. So., Suffield, CT.  He will testify as to his observations and review of Plaintiff's file.  He will testify as a classification expert and to the correctional policies and procedures at issue in this case, the conclusions of his review of this case, and his opinion that the Defendants acted lawfully, within the policies and procedures of the DOC and as a regarding Connecticut Department of Correction correctional policy and procedure as applicable to this dispute. The Director's expert opinion will be based in part on his knowledge of Hartford CC, (HCC) agency and facility policy, as well as his review of all evidence in connection with this case, together with his experience training and background.  He will deny and defend against any and all allegations of wrongdoing.

Plaintiff objects to all of the anticipated testimony of Mr. Levesque (or his designee) on the basis that, *inter alia*, this witness was not timely disclosed in violation of Federal Rule

of Civil Procedure 26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony

on the grounds that there is no basis for Mr. Levesque as a fact witness.

18. Dr. Daniel Bannish, DOC, 24 Wolcott Hill Rd., Wethersfield, CT. Dr. Bannish, a

doctoral level mental health expert will be qualified as an expert in correctional mental

health. He will testify as both a fact and expert as to the plaintiff's mental health records,

and that there was no claim of serious emotional distress, or any evidence of

psychological injury to plaintiff. He will testify as to his knowledge of correctional

facilities, inmate behavior, and the claims in the case, and he will refute any claims of the

plaintiff that he was allegedly afraid for his personal safety prior to entering the day room

at Hartford CC. He will explain and testify to the policies and procedures of the DOC as

they relate to the case, and he will deny and defend against any and all allegations of

wrongdoing.

Plaintiff objects to all of the anticipated testimony of Dr. Bannish on the basis that, *inter*

*alia*, this witness was not timely disclosed in violation of Federal Rule of Civil Procedure

26(a)(2)(C). Plaintiff further objects to any anticipated fact testimony on the grounds that

there is no basis for Dr. Bannish as a fact witness.

Defendants retain the right to call additional witnesses in order to rebut Plaintiff's

testimony.

110166198v4

11. **Exhibits**

Plaintiff and Defendants continue to work in good faith on their respective exhibit lists and will submit same to the court at the pretrial hearing on January 19, 2005.

12. **Deposition Testimony**.

The Plaintiff and Defendants will use deposition testimony for any purpose permitted by the Rules of Civil Procedure. Any of the depositions taken by Plaintiff or Defendants may be used for impeachment or if the witness is unavailable, as provided for in the Federal Rules.

13. **Jury Instructions**

The parties are continuing to confer in good faith regarding Proposed Jury Instructions, and will submit same to the Court at the pretrial hearing on Wednesday, January 19, 2005.

14. **Anticipated Evidentiary Problems**

Plaintiff and Defendants have submitted motions in limine on evidentiary issues. Plaintiff and Defendants have also addressed evidentiary issues herein. Further evidentiary issues are unknown at this time.

15. **Further Proceedings**

Argument on pretrial motions is scheduled for January 19, 2005, at which time a final pretrial conference may be necessary to discuss how to narrow down the list of witnesses and exhibits, and to agree to a Stipulation of Facts. This pretrial conference should be held to resolve evidentiary issues, stipulations as to exhibits, and otherwise streamline the trial.

16. **Consent to Magistrate Judge**

The parties have consented to a jury trial before the magistrate Judge with any appeal being taken to the Court of Appeals for the Second Circuit. 28 U.S.C. §636(c).

17.     **Voir Dire Questions**

See Defendants' First Set of Voir Dire Questions, filed separately. See also Plaintiff's

First Set of Voir Dire Questions, filed separately.

Respectfully submitted,

PLAINTIFF
KEITH BARILE

_____

Henry K. Snyder (ct 17242)
Daniel J. Richert (ct 25302)
Kenneth A. Newby (ct 26319)
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT  06904
Tel. 203-348-2300
Fax. 203-965-8226
hsnyder@pillsburywinthrop.com
drichert@pillsburywinthrop.com
knewby@pillsbuywinthrop.com

DEFENDANTS
BARRY DRUMMOND, OSSIE CHANNER,
ROBIN MACIAG AND ANTONIO VILLARINI

_____
Steven R. Strom
Assistant Attorney General
Federal Bar No. ct 01211
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5591

Respectfully submitted,

PLAINTIFF
KEITH BARILE

Henry K. Snyder (ct 17242)
Daniel J. Richert (ct 25302)
Kenneth A. Newby (ct 26319)
Pillsbury Winthrop LLP
695 East Main Street
Stamford, CT  06904
Tel. 203-348-2300
Fax. 203-965-8226
hsnyder@pillsburywinthrop.com
drichert@pillsburywinthrop.com
knewby@pillsbuywinthrop.com


DEFENDANTS
BARRY DRUMMOND, OSSIE CHANNER,
ROBIN MACIAG AND ANTONIO VILLARINI



Steven R. Strom
Assistant Attorney General
Federal Bar No. ct 01211
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford CT 06105
Tel.: (860) 808-5450
Fax: (860) 808-5591