UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH BARILE | : | CIVIL NO. 3:00CV2253 (HBF) |
| | : | |
| v. | : | |
| | : | |
| BARRY DRUMMOND, ET AL. | : | MARCH 3, 2006 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION VACATE ORDER GRANTING COSTS (Doc. #158) AND IN REPLY TO PLAINTIFF'S MOTION AND MEMORANDA IN OPPOSITION TO COSTS (Doc. #161 and Doc. #159)**

**Introduction**

The jury rendered a verdict in favor of all defendants in this prisoner civil rights action under 42 U.S.C. §1983 claiming (1) deliberate indifference to plaintiff's safety as to defendant Drummond and (2) deliberate indifference to plaintiff's serious medical needs in violation of plaintiff's fourteenth amendment right to be free from cruel and unusual punishment as to defendants Channer, Villarini, Maciag. During trial plaintiff was ably represented by court appointed counsel, who have taken the position that they were only appointed for trial purposes, and not to litigate this post-trial motion for costs. The plaintiff has now filed his *pro se* opposition to defendants' motion for costs, after the Court awarded costs in the amount of $2,607.15 (Doc. #158). Plaintiff has also moved to vacate the Court's order, claiming in part, that he is indigent, only earns $21.00 per month in his prison job, and barely has enough money to pay for necessities. He essentially claims that because he is indigent, he should not have to pay for costs. He mistakenly believes that his case had merit, even though it was rejected by the jury, because it was brought in good faith and was not dismissed for being frivolous. Plaintiff's motion to vacate should be denied, and the Order directing payment of costs should be enforced against plaintiff.

**Background , Facts, and Argument**

First, let this memorandum serve to correct misstatements in defendants' memorandum in support of defendants' motion for costs. In the defendants' memorandum, the defendants' counsel, undersigned below, <u>incorrectly</u> asserted the following statement:

> The pending motion only seeks $1,295.08, which should be paid in full by plaintiff, who recently received a two thousand dollar settlement from the state.

This sentence was copied from another document, cut and pasted, and erroneously inserted in this memorandum. Undersigned counsel takes full responsibility for this error. The entire sentence is incorrect and should have been deleted from the memorandum. Defendants now formally withdraw this one sentence, and apologize to the Court and the plaintiff for this proofreading error.

Plaintiff did not receive a prior settlement from the state. The amount claimed by the defendants was not $1,295.08. Similarly, the defendants on page three of their memorandum made this other incorrect statement:

> the defendants could have asked for far more than the $1,295.08, (for example for charging costs for the hundreds of pages of copies given to plaintiff in excess of the 500 pages billed as costs, and the copy of the x-ray films of plaintiff's back)

The amount claimed was $3,160.95, and was set forth in the Bill of Costs (Doc. # 157), and although it is true that costs were reduced, that hundreds of pages of free copies were provided to plaintiff and then a second time to plaintiff's counsel, and that x-rays were provided, also at no cost, the x-rays were of plaintiff's broken arm, not his back. Again defendants' counsel undersigned below, regrets this "cut and paste" error from another document and the error in not properly proofreading the memorandum before filing.

None of this, however, negatively affects the right of the defendants to collect costs from this indigent prisoner in this case. As was first clearly stated in defendants' memorandum filed January

2

26, 2005, (Doc. #135), citing, in part, to <u>Whitfield v. Scully</u>, 241 F.3d 264 (2d Cir. 2001), the Second Circuit has concluded that federal law requiring indigent prisoner litigants to pay costs is <u>mandatory,</u> stating, "When judgment is entered against a prisoner and costs against the prisoner are assessed, <u>§1915(f)(2)(A) now **requires** that the prisoner pay the costs</u> either in full, or in accordance with the payment process set forth in § 1915(b)(2). The prisoner's ability to pay the costs is no longer an issue. . . ." <u>Whitfield v. Scully</u>, supra, at 273. (emphasis added).

The language of 28 U.S.C. §1915(f)(2)(A) and (B) is quite clear, and entirely unambiguous, stating, in mandatory terms as follows:

> (2) (A) If the judgment against a prisoner includes the payment of costs under this subsection, **the prisoner shall be required to pay the full amount of the costs ordered.**
> (B) **The prisoner shall be required to make payments for costs** under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(emphasis added). Congress made it clear that the prisoner's obligation to pay for costs was mandatory by using the word "shall" in both subsection (A) and (B) of §1915(f)(2). The same mandatory "shall" language applies now under the PLRA to the requirement of payment of the full filing fee. The Second Circuit and every other circuit which has considered the mandatory payment of a filing fee has held that it is constitutional and does not deprive a prisoner of his constitutional right of access to court. See <u>Nicholas v. Tucker</u>, 114 F.3d 17, 21 (2d Cir. 1997); <u>see also</u> <u>Tucker v. Branker,</u> 142 F.3d 1294, 1297 (D.C. Cir. 1998); <u>Shabazz v. Parsons</u>, 127 F.3d 1246, 1248-49 (10th Cir. 1997);  <u>Norton v. Dimazana</u>, 122 F.3d 286, 289-91 (5th Cir. 1997);   <u>Roller v. Gunn</u>, 107 F.3d 227, 231-33 (4th Cir. 1997);  <u>Hampton v. Hobbs</u>, 106 F.3d 1281, 1284-86 (6th Cir. 1997).

As the Sixth Circuit has noted, in Talley-Bey v. Knebl,168 F.3d 884, 886-887 (6th Cir. 1999), "When judgment is entered against a prisoner and costs against the prisoner are assessed, § 1915(f)(2)(A) now requires that the prisoner pay the costs either in full, or in accordance with the payment process set forth in § 1915(b)(2). See 28 U.S.C. § 1915(f)(2)(B). The prisoner's ability to pay the costs is no longer an issue. Section 1915(f)(2)(B) mistakenly refers to § 1915(a)(2) as the authoritative subsection for the payment process. However, as we have previously noted, see McGore v. Wrigglesworth, 114 F.3d 601, 603(6th Cir. 1997), § 1915(a)(2) does not contain a payment procedure. The payment process is actually located in § 1915(b)(2)." The relevant sections of 28 U.S.C. §1915(b) (1) and (2) provide:

> (1)…The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of--
>    (A) the average monthly deposits to the prisoner's account; or
>    (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>   (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $ 10 until the filing fees are paid.

Thus, to the extent to Court credits plaintiff's assertion that he makes $21.00 per month, then 20% of that amount, a modest sum of $4.20 should be deducted by DOC to be placed in plaintiff's PLRA escrow account to be paid to the defendants for plaintiff's costs. Plaintiff's claim of indigency is irrelevant as a matter of law because he is required to pay costs notwithstanding his indigency.

Throughout the entire proceedings of this case, undersigned counsel, together with co-counsel, Assistant Attorney General Lynn D. Wittenbrink, consistently advised plaintiff's prior

4

counsel of record that if this case were litigated, the defendants would seek costs. *Pro se* indigent prisoner litigants have to be treated just like any other litigant, and face the same market pressures and forces which apply to any litigant. Thus, having been warned a number of times that costs are warranted, indeed, required by law if the defendants prevail, the plaintiff should be required to pay such costs here. This is especially so, since in defendants' view, plaintiff's court appointed attorneys took a significant number of depositions, and each time they were told by undersigned counsel or co-counsel that defendants would seek the cost of the deposition if defendants prevailed.

It is critical to enforce the purposes of the PLRA, as set forth by the Second Circuit in Nussle v. Willette, 224 F.3d 95, 105 (2d Cir 2000) *rev'd. sub nom* Porter v. Nussle, 534 U.S. 516 (2002), which expressly noted that one purpose of the PLRA was to increase the costs and consequences to prisoners of litigation. The PLRA's sponsors broadly categorized the bill's provisions as being divided into two major sets of provisions, including those aimed at deterring the filing of civil rights by inmates without any costs to the inmate or financial consequences whatsoever (thereby creating a nothing to lose and everything to win situation, which encouraged the needless filing of many prisoner lawsuits), by raising the cost to prisoners of engaging in "inmate litigation fun-and-games" (garnishment procedure in amendment to in forma pauperis provisions; exhaustion provisions; revocation of good-time credits for frivolous suits; prohibition against suing for mental or emotional injury absent showing of physical injury). Like every litigant who is not incarcerated, financial decisions and consequences should factor into plaintiff's decision to try this case to a final jury verdict.

If the plaintiff's lawsuit were completely frivolous, the defendants could move for defendants' attorneys' fees. Tancredi v. Metro. Life Ins. Co. 378 F.3d 220, 228 (2nd Cir. 2004). When the prevailing party is the defendant, as here, attorneys' fees may be recovered if the

underlying action was " frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so."  <u>Davidson v. Keenan</u>, 740 F.2d 129, 132(2nd Cir. 1984)(internal quotation marks omitted). Plaintiff appears to claim that because his case was allowed to proceed to trial, he is immune from costs, since the case was not determined to be frivolous. The defendants, in seeking costs, are not claiming the action was frivolous, but rather, that plaintiff is required to pay the same costs as would be awarded in any other action to a non-prevailing party. Without such a consequence, prisoners would have absolutely no incentive to refrain from filing as many lawsuits as they could imagine, increasing the burden on the courts, and without any financial consequences or costs to them. Recreational litigation would increase and the purposes of the PLRA would be thwarted.

## **CONCLUSION**

For all the foregoing reasons, the plaintiff's motion to vacate the Order directing costs should be denied.

                                      DEFENDANTS
                                      Barry Drummond, et al.

                                      RICHARD BLUMENTHAL
                                      ATTORNEY GENERAL

                                      _____
                                      Steven R. Strom
                                      Assistant Attorney General
                                      110 Sherman Street
                                      Hartford CT 06105
                                      Tel: (860) 808-5450
                                      Fax: (860) 808-5591
                                      Federal Bar No. ct 01211

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 3rd day of March, 2006, to:

Keith Barile, #237196
Cheshire CI
900 Highland Ave,
Cheshire, CT 06410

                                                                                         _____
Steven R. Strom
Assistant Attorney General